## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TELES AG INFORMATIONSTECHNOLOGIEN, | ) ) ) |
| Plaintiff, | ) ) ) C.A. No. 06-197 (SLR) |
| v. | ) ) |
| QUINTUM LLC, | ) |
| Defendant. | ) ) |

## DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO TRANSFER THIS ACTION OR, IN THE ALTERNATIVE, TO STAY THIS ACTION

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com
  *Attorneys for Defendant*
  *Quintum LLC*

OF COUNSEL:

Gerald Levy
Richard H. Brown
John L. Dauer, Jr.
DAY PITNEY LLP
7 Times Square
New York, NY  10036-7311
(212) 297-5800

May 9, 2008

## TABLE OF CONTENTS

**Page**

Table of Authorities                                                                     ii

INTRODUCTION                                                                           1

NATURE AND STAGE OF THE PROCEEDING                                                     3

STATEMENT OF FACTS                                                                    4

    I.   The German Proceedings Between Teles, Cisco and Quintum            4

    II.  The Cisco/Teles Case in the District of Columbia Court                5

    III. The Patent Office Reexaminations of the Patents-in-Suit                 5

    IV. Teles' Suit Against Quintum in this Court                               6

ARGUMENT                                                                              7

    I.   The Court Should Transfer the Case to the District of Columbia       7

        A.  The Interests of Justice and Efficiency Favor Transfer of the Case to the District of Columbia            8

        B.  The Convenience of Parties and Witnesses Also Weighs in Favor of Transfer    9

        C.  The District of Columbia is an Appropriate Venue            10

    II.  The Court Should Stay this Litigation Pending Completion of the Reexamination of the Patents-in-Suit by the Patent Office            10

        A.  A Stay of this Case Will Not Unduly Prejudice or Disadvantage Teles       11

        B.  The Lack of Significant Pretrial Work in this Case Favors a Stay       12

        C.  A Stay Will Simplify Issues and Promote Economy            13

CONCLUSION                                                                           17

## <u>TABLE OF AUTHORITIES</u>

C ASES

*Abbott Diabetes Care, Inc. v. DexCom, Inc.*,
    C.A. No. 05-590-GMS, 2006 WL 2375035 (D. Del. Aug. 16, 2006)      12, 14

*Continental Grain Co. v. The Barge FBL-585,*
    364 U.S. 19 (1960)      7-8

*Ethicon, Inc. v. Quigg,*
    849 F.2d 1422 (Fed. Cir. 1988)      10

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002)      15

*Gioello Enters. Ltd. v. Mattel, Inc.*,
    C.A. No. 99-735-GMS, 2001 WL 125340 (D. Del. Jan. 29, 2001)      11

*Gould v. Control Laser Corp.*,
    705 F.2d 1340 (Fed. Cir. 1983)      13, 16

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995)      8

*KSR Int'l Co. v. Teleflex, Inc.*,
    127 S. Ct. 1727 (2007)      14

*Middleton, Inc. v. Minn. Mining & Mfg. Co.*,
    Civ. No. 03-40493, 2004 WL 1968669 (S.D. Iowa Aug. 24, 2004)      15

*Nilssen v. Osram Sylvania, Inc.*,
    C.A. No. 00-695-JJF, 2001 WL 34368395 (D. Del. May 1, 2001)      10

*Pegasus Dev. Corp. v. DirectTV, Inc.,*
    C.A. No. 00-1020-GMS, 2003 WL 211050773 (D. Del. May 14, 2003)      11-13

*Reiffin v. Microsoft Corp.*,
    104 F. Supp. 2d 48 (D. D.C. 2000)      9

*Rohm & Haas Co. v. Brotech Corp.*,
    Civ. No. 90-109-SLR, 1992 U.S. Dist. LEXIS 3252 (D. Del. May 11, 1992)      11-13, 15

*Softview Comp. Prods. Corp. v. Haworth, Inc*,
    56 U.S.P.Q.2d 1633 (S.D.N.Y. 2000).      11

*Sumito Mitsubishi Silicon Corp. v. MEMC Electronic Materials, Inc.*,
    C.A. No. 04-852-SLR, 2005 U.S. Dist. LEXIS 5174 (D. Del. March 30, 2005)      7-8

*Supco Auto Parts, Inc. v. Triangle Auto Spring Co.*,
    538 F. Supp. 1187 (E.D. Pa. 1982)      9

**OTHER AUTHORITY**

Sarnoff, Joshua D., *Bilcare, KSR, Presumptions of Validity, Preliminary Relief, and
    Obviousness in Patent Law*, 25 Cardozo Arts & Ent. L.J. 995, n.221 (2008)      14

## <u>INTRODUCTION</u>

Defendant Quintum LLC ("Quintum") moves to transfer this case to the United States District Court for the District of Columbia or, in the alternative, to stay further proceedings in this matter pending the outcome of reexaminations pending for claims in the two Patents-in-Suit (U.S. Patent Nos. 6,954,453 ("the '453 Patent") and 7,145,902 ("the '902 Patent")). This matter has been stayed since April 2, 2007, because Plaintiff, Teles AG Informationstechnologien ("Teles"), and Quintum believed they were in a position to settle this matter. Settlement discussions have stalled, and the stay expired on May 7, 2008.

The status of the parties, the Patents-in-Suit and another related litigation present unique circumstances that warrant a transfer or, in the alternative, a stay. In the first instance, the Court should transfer this matter so it can be consolidated, or at least coordinated, with a first-filed patent infringement suit between Teles and Cisco Systems, Inc. ("Cisco") pending before Judge Walton in the District of Columbia. That case involves the same two patents at issue in this case. Indeed, on the '453 Patent, Teles asserts the exact same claims against Quintum as it has asserted against Cisco. On the '902 Patent, Teles is expected to assert at least some portion of the 38 claims of that patent against Quintum.[1]

Judge Walton recently stayed the Cisco case pending the outcome of reexamination proceedings on both patents in the United States Patent and Trademark Office ("the Patent Office"), which were requested by Cisco in August 2007. The reexamination of the '453 Patent covers the same claims that Teles has asserted against Cisco and Quintum, and the

---

[1]    Because this matter was stayed shortly after Teles added the '902 Patent to this case, there has been no discovery on that patent, and Teles has not even indicated which claims of the patent are being asserted against Quintum.

reexamination of the '902 patent covers 38 claims of the '902 Patent, some of which are expected to be asserted against Quintum as well.

Transfer of this matter would permit a court that is already familiar with the subject matter in this suit to adjudicate issues involving claim construction and the validity and enforceability of the Patents-in-Suit, eliminating the possibility of inconsistent results between courts, as well as possible inconsistencies between this court and the Patent Office on the validity issue. Transfer would also dramatically reduce the inefficiencies that come when two courts are forced to expend resources on addressing the same issues. Finally, the convenience of the witnesses and parties also favors transfer. Having the cases proceed in one court will allow coordination of discovery and other proceedings to minimize disruption to witnesses and maximize the convenience to the parties.

In the alternative, Quintum moves for a continued stay pending the outcome of the patent reexaminations. A stay would benefit the Court and the parties in a number of ways. It would almost certainly simplify the issues and promote economies for both the Court and the parties. In addition, it would comport with the decision by Judge Walton to stay the Teles/Cisco matter, and allow the Patent Office to complete the reexaminations.

The most obvious way that a stay would simplify the issues is if the Patent Office narrows or cancels the claims at issue. In the initial office actions, it has rejected all of the Patents-in-Suit's claims asserted in this matter, foreshadowing that the claims are likely to be cancelled or narrowed. In addition, Teles' related European and German patents have been held to be invalid based on some of the prior art at issue in the reexaminations, which reinforces that the claims are likely to be narrowed or cancelled. Either outcome would have a significant effect on the scope of the issues in dispute here.

A stay will thus conserve the Court's and the parties' efforts on fact and expert discovery, claim construction, and summary judgment motions on claims that may not exist (or be narrowed) once the reexamination is complete. A stay would also avoid potentially inconsistent rulings on the validity of claims, as the Court would consider validity only after the Patent Office decided that issue. Finally, a continued stay will not prejudice Teles, as this matter has been stayed for over a year.

<u>**NATURE AND STAGE OF THE PROCEEDING**</u>

On March 24, 2006, Teles filed this action alleging that Quintum infringes U.S. Patent No. 6,954,453. D.I. 1. On May 15, 2006, Quintum answered Teles' complaint denying the infringement allegations, and asserting affirmative defenses and counterclaims, including non-infringement and invalidity of the '453 Patent. D.I. 6.

On December 14, 2006, Teles amended its complaint to add a claim based on Quintum's alleged infringement of U.S. Patent No. 7,145,902, which issued on December 5, 2006. Quintum answered the amended complaint by denying the infringement allegations, and asserting affirmative defenses and counterclaims, including non-infringement and invalidity of the '453 Patent and the '902 Patent. D.I. 31.

Before Teles amended its complaint, the parties had exchanged written initial disclosures, document requests and interrogatories and written objections and responses to those requests regarding the '453 Patent but never updated those responses in view of the '902 Patent. The parties filed a stipulated protective order, which has not yet been ordered by the Court.

Since March 23, 2007, the parties have been jointly requesting that the Court continue to stay the litigation pending the parties' settlement negotiations. The most recent stay expired on May 7, 2008.

## STATEMENT OF FACTS

This lawsuit is a result of Plaintiff Teles', a German company, campaign across two continents to enforce its patents against Cisco, Quintum and other companies. That campaign is based on four patents that Teles claims to own: German Patent No. 196 45 368 ("the German Patent"); European Patent No. 0 929 884 ("the European Patent"); and U.S. Patent Nos. 6,954,453 ("the '453 Patent") and 7,145,902 ("the '902 Patent"). (Exhibits 1, 2, 3 and 4.)[2] This case involves the '453 and '902 Patents (collectively, the "Patents-in-Suit"). All of the patents, including the European Patent and the Patents-in-Suit, are based on, and claim priority to, two German patent applications that Teles filed. *Id.*

## I.    The German Proceedings Between Teles, Cisco and Quintum

In 2004, Teles filed patent infringement actions in the Superior Court of Mannheim, Germany, alleging several companies, including Quintum and Cisco, infringed the German Patent and the European Patent. In March 2006, Quintum and Cisco filed separate actions in the Federal Supreme Court for Patent Matters in Germany ("German Patent Court") to nullify the German and European Patents. The German Patent Court nullified Teles' German and European Patents. (*See* German Patent Court Decisions, Exhibits 5-8.) Teles filed an appeal, which is pending. Although Quintum was found to infringe the German and European Patents in the Mannheim action, Quintum has appealed that decision, but the appeal proceeding was stayed pending the final outcome of the nullity actions.

---

[2]    "Exhibit" refers to the Exhibits attached to the Affidavit of John L. Dauer, Jr. In Support Of Its Motion To Transfer This Action Or, In The Alternative, To Stay This Action filed concurrently with this brief.

## II.     The Cisco/Teles Case in the District of Columbia Court

In October 2005 (shortly after the '453 Patent issued), Cisco filed a declaratory judgment action in the United States District Court for the District of Columbia, seeking a declaration that Cisco does not infringe the '453 Patent and/or that the patent is invalid.  (*See* Cisco complaint, Exhibit 9.)  Teles counterclaimed for infringement.  In February 2007 (after the '902 Patent issued), the parties in the Cisco matter amended the pleadings to add claims of infringement and invalidity of the '902 Patent.   Teles and Cisco have exchanged written discovery requests and responses, claim charts outlining claim construction positions, infringement and invalidity contentions, and other documents; and have briefed a disputed protective order.  (*See, e.g.*, Teles Responses to Cisco Interrogatories, Exhibit 10.)  On March 14, 2008, the Court in that matter granted Cisco's application for a stay pending the results of the Patent Office's reexaminations of the Patents-in-Suit.  (*See* Court Order, Exhibit 11.)

## III.     The Patent Office Reexaminations of the Patents-in-Suit

In August 2007, Cisco filed requests for reexamination with the U.S. Patent Office for both Patents-in-Suit.  The Patent Office granted the requests, and the reexamination proceedings are underway.  (*See* Patent Office Communications, Exhibits 12 and 13.)  Those proceedings involve eight prior art references, multiple claim charts and numerous claim construction issues.  (*See, e.g., id.*)

In the reexamination of the '453 Patent (which is *ex parte*[3]), the Examiner issued an office action on February 13, 2008, rejecting all of the claims under reexamination, *i.e.*, claims 34-38.  (*See* Patent Office Communication, Exhibit 14.)  Those claims are the same

---

[3]     An ex parte reexamination involves the Patent Office and the patent owner, not third parties.  *See* 35 U.S.C. § 305.  In an inter partes reexamination, the requesting third party can participate in the proceedings.  *See* 35 U.S.C. §§ 311, 314.

claims of the '453 Patent that Teles has asserted against Cisco and Quintum. (*See* Teles Responses to Cisco Interrogatories, Exhibit 10, at page 69-81 of Exhibit A, and Teles' Responses to Quintum's Interrogatories, Exhibit 17, at page 5.) In response to the office action, Teles filed responsive documents on April 28 and 30, 2007. (*See* List of Transactions in Reexamination Proceeding, Exhibit 15.)

With regard to the reexamination for the '902 Patent (which is conducted on an *inter partes* basis), the Patent Office is reexamining 38 claims of the '902 Patent. (*See* Patent Office Communications, Exhibit 12.) Those 38 claims include all the claims asserted against Cisco in addition to other claims not asserted against Cisco. (*See* Teles Responses to Cisco Interrogatories, Exhibit 10, at page 69-81 of Exhibit A.) Quintum expects Teles to assert some, if not all, of those 38 claims in this matter.

In November 2007, the Patent Office rejected all 38 claims based on the anticipation arguments made by Cisco. (*See* Patent Office Communication, Exhibit 12.) In February 2008, Teles filed a response. (*See* List of Transactions in Reexamination Proceeding, Exhibit 16.) In March, 2008, Cisco filed comments regarding Teles' response. (*Id.*) The Patent Office, however, rejected Teles' response as improper and gave Teles the options of submitting a re-drafted response or taking other action. (*Id.*) On May 2, 2008, Teles filed a re-drafted response. (*Id.*)

## IV.    Teles' Suit Against Quintum in this Court

Teles filed this case on March 24, 2006, alleging Quintum infringes the '453 Patent. On December 14, 2006, Teles added a claim based on Quintum's alleged infringement of the '902 Patent, which had issued on December 5, 2006.

Before the amendment adding the '902 Patent, there was limited discovery between the parties, consisting of initial disclosures, responses to interrogatories, and written

responses to document requests. In that limited discovery, Teles stated that it is asserting claims 34-38 of the '453 Patent against Quintum. (*See* Teles' Responses to Quintum's Interrogatories, Exhibit 17, at page 5.) Shortly thereafter, the parties began discussing a potential settlement and elected to hold off on all document production and further discovery efforts.

On April 2, 2007, the parties asked the Court for a stay based on the then-promising nature of ongoing settlement discussions. *See* D.I. 37. The parties continued to ask the Court for further stays throughout 2007, and the most recent stay expired on May 7, 2008. *See* D.I. 47.

Given the limited discovery and the length of time this case has been stayed, this case is still in its infancy. If the case were to resume, the parties would have to start from square one, that is, serve new discovery requests, update their existing responses, produce documents, conduct depositions and complete all of the other pretrial work.

## ARGUMENT

### I. The Court Should Transfer the Case to the District of Columbia

Quintum moves for transfer under 28 U.S.C. § 1404(a), which provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district … where it might have been brought." A goal in transfer under this provision is to "prevent the wastefulness of time, energy, and money," and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Continental Grain Co. v. The Barge FBL-585,* 364 U.S. 19, 26-27 (1960). A district court has discretion to decide motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Sumito Mitsubishi Silicon Corp. v. MEMC Electronic Materials, Inc.*, C.A. No. 04-852-SLR, 2005 U.S. Dist. LEXIS 5174, *9-*10 (D. Del. March 30,

2005) (citations omitted) (granting transfer because there was an overlap of patents and issues and because the transferee court had gained knowledge about one of the patents-in-suit).

The factors that courts typically consider in determining whether an action should be transferred include:

> 1)  potential gains in judicial efficiency due to the similarity of the claims pending in the transferee district, each court's knowledge and experience with the issues in dispute, reducing the likelihood of inconsistent judgments,
>
> 2)  convenience of the parties and witnesses, and
>
> 3)  the parties' venue preferences.

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-83 (3d Cir. 1995).  Here, these factors weigh strongly in favor of transfer to the District of Columbia.  *See Sumito Mitsubishi Silicon Corp.*, 2005 U.S. Dist. LEXIS 5174 at *9-*10.

The circumstances surrounding Teles and the various proceedings involving Teles' patents presents a set of unique facts that warrant a transfer based on the above factors.

### A.    The Interests of Justice and Efficiency Favor Transfer of the Case to the District of Columbia

The Patents-in-Suit are identical to those in the District of Columbia matter, and Teles has asserted the same claims of the '453 Patent against Cisco and Quintum.  Further, it can be expected that some of the claims of the '902 Patent being asserted against Cisco will also be asserted against Quintum.  Accordingly, many key issues concerning claim construction, validity, and enforceability will be identical to those in the Teles/Cisco case.  The tremendous inefficiency in having two separate suits on the same patents militates in favor of transferring this case to the District of Columbia.  *See Continental Grain*, 364 U.S. at 26 ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts, leads to the wastefulness of time, energy, and money that § 1404(a) was

designed to prevent.").  That is especially so because the first-filed Cisco case is further along, with the parties having engaged in document discovery and exchanged claim charts with infringement and invalidity contentions.  Judge Walton has heard motions and gained experience and knowledge about the patents and the related technology at issue.  Because of the overlap and similarity of issues between the two cases, the gain in judicial efficiency with a transfer is significant.

A transfer would also avoid any chance of inconsistent rulings or judgments on the same patents.  *See Supco Auto Parts, Inc. v. Triangle Auto Spring Co.*, 538 F. Supp. 1187, 1192 (E.D. Pa. 1982) ("[T]he pendency of a related case in the proposed transferee forum is a powerful reason to grant a motion for a change of venue.") (citations omitted); *see also Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 56 (D. D.C. 2000) (cautioning that "piecemeal litigation in the complex and technical area of patent and trademark law is especially undesirable") (citations omitted).  The benefit of avoiding such inconsistency is underscored by the fact that the District Court for the District of Columbia has elected to stay the Cisco case pending the Patent Office's reexamination, presumably (at least in part) to avoid the problem of inconsistent results on validity for the reasons discussed below.

**B.    The Convenience of Parties and Witnesses Also Weighs in Favor of Transfer**

Having these two matters handled by a single court would promote discovery efficiencies, increasing the convenience to Teles and its witnesses.  Teles chose to sue Quintum in Delaware, and Quintum's headquarters is located in New Jersey.  There would be no appreciable difference in cost or time for either party to litigate in the District of Columbia over the cost and time to litigate here.

However, transfer would result in more convenience for certain witnesses and Teles because coordination of discovery (and other proceedings) in the two cases may lessen the

inconvenience for Teles and its witnesses.  Therefore, the convenience factor favors transfer to the District of Columbia.  *See Nilssen v. Osram Sylvania, Inc.*, C.A. No. 00-695-JJF, 2001 WL 34368395, *2 (D. Del. May 1, 2001) (noting that convenience to witnesses is "the most important factor in the venue transfer analysis") (citation omitted).

### C.    <u>The District of Columbia is an Appropriate Venue</u>

The third factor considered is venue preference, including whether the suit could have been brought in the transferee court.  Teles could have brought this action in the District of Columbia; in fact, it already has a case pending there, which has not been dismissed for lack of personal jurisdiction or improper venue.  Accordingly, with Quintum subject to jurisdiction in that district, venue in the transferee court is appropriate.  *See* 28 U.S.C. §§ 1391, 1400.  Although Teles chose to sue Quintum in the District of Delaware, that choice should not be an impediment to transfer because of the unique and special circumstances present here.  There is a pending case involving the same patents and, on one patent, the exact same claims are being asserted in both cases.  For reasons of consistency and fairness, there is a paramount desire to have one court decide the common issues involving the patents, *i.e.*, the construction of claim terms, and the validity and enforceability of patent.  In addition, there are significant efficiencies in having this matter handled by a nearby court that is already familiar with some of the substantive issues, and which has elected to stay its proceedings pending completion of the reexaminations by the Patent Office.

## II.    **The Court Should Stay this Litigation Pending Completion of the Reexamination of the Patents-in-Suit by the Patent Office**

Quintum moves, in the alternative, to continue to stay the present action.  Courts have the inherent power to manage their dockets, including by staying proceedings.  *See Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426 (Fed. Cir. 1988).  A decision to stay an action rests within the

discretion of a district court. *Rohm & Haas Co. v. Brotech Corp.*, Civ. No. 90-109-SLR, 1992 U.S. Dist. LEXIS 3252, *4 (D. Del. May 11, 1992) (citations omitted). In determining whether to grant a stay, a court typically examines three factors:

> 1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party;
>
> 2) whether discovery is complete and a trial date has been set; and
>
> 3) whether a stay will simplify issues in question for trial;

*See Pegasus Dev. Corp. v. DirectV, Inc.,* C.A. No. 00-1020-GMS, 2003 WL 211050773, at *1 (D. Del. May 14, 2003); *Gioello Enters. Ltd. v. Mattel, Inc.*, C.A. No. 99-735-GMS, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001) (citations omitted).

Once again, the circumstances surrounding Teles and the various proceedings involving Teles' patents present a set of unique facts that warrant a continued stay based on the above factors.

### A.    A Stay of this Case Will Not Unduly Prejudice or Disadvantage Teles

Teles will not be prejudiced or disadvantaged for two important reasons: (1) this case has already been stayed for over one year; and (2) Teles' suit against Cisco has been stayed pending the results of the reexaminations of the Patents-in-Suit. Teles agreed to delay resolution of this action for over a year, most likely hoping for favorable rulings in related matters, which Teles did not obtain. Any protest that Teles now cannot wait until the outcome of reexamination proceedings is hollow and undermined by its previous conduct.[4] Likewise, there is no tactical disadvantage to Teles in continuing to stay this matter, which never progressed very far in the

---

[4]    Notably, Teles has not sought preliminary injunctive relief in this matter. It appears any "injury" for Quintum's conduct could be compensated by money damages. Those factors favor a stay. *See Softview Comp. Prods. Corp. v. Haworth, Inc.*, 56 U.S.P.Q.2d 1633, 1636 (S.D.N.Y. 2000) (granting stay where the patentee did not seek preliminary injunction).

first place.  In staying the Cisco case, Judge Walton impliedly came to the same conclusion.

Furthermore, Teles has to wait for the reexaminations to end before it can resume its claims

against Cisco.  Teles' inability to devote all its time and energy against Cisco, Teles' main target,

is not a reason to allow Teles to reopen its case against Quintum.

Moreover, any complaint that a continued stay would subject Teles to prejudicial

delay should be rejected because the reexamination proceedings are well underway and should

be completed next year.  The average length of *ex parte* and *inter partes* reexamination

proceedings is 24 to 29 months from the filing date of a reexamination request to the end of the

reexamination.  (*See* Exhibits 18, at ¶ 6, and 19 at ¶ 7.)[5]  If this case were reopened, then any

new trial date would be after the resolution of the reexaminations.

### B.    The Lack of Significant Pretrial Work in this Case Favors a Stay

Stays pending reexamination are routinely granted when cases are at their

inception, and this matter is such a case.  *See, e.g., Abbott Diabetes Care*, 2006 WL 2375035 at

*6 (granting stay pending reexamination where discovery was scheduled to be completed more

than five months away and trial was not scheduled for another 14 months); *Pegasus*, 2003 WL

211050773 at *2 (granting stay after the commencement, but before the completion, of

discovery, pending the reexamination of only one out of six patents-in-suit); *Rohm & Haas*, 1992

U.S. Dist LEXIS 3252 at *14 (granting stay in a case where only one out of the four patents-in-

suit was under reexamination where discovery still remained to be completed for months and the

case was not too far along to preclude a stay).  In late 2006, before the stay, the parties

exchanged written discovery and initial responses, but never updated their responses with

---

[5]       The Patent Office must conduct reexaminations with "special dispatch" and gives priority
to reexaminations involving patents in pending litigations.  *See* 35 U.S.C. §§ 305, 314(c);
Manual Of Patent Examining Procedure § 2686.04(1) (2006), Exhibit 20.

information regarding the '902 Patent, which issued in December 2006.  They have not produced documents or conducted any depositions, or otherwise engaged each other on the substantive issues.  Indeed, if the Court reopens this case, the parties will be essentially starting from scratch. Those facts favor maintaining the stay.

### C.     A Stay Will Simplify Issues and Promote Economy

A continued stay will significantly reduce the number of issues for trial and possibly dispose of this matter altogether.  The reexamination process is "an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts."  *Pegasus*, 2003 WL 21105073, at *2 (citation omitted).  "In passing the legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion."  *Id.* at *1 (citation omitted); *see also Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("When a district court stays patent validity proceedings before it until completion of a reexamination proceeding, that stay must be accepted if the purpose of the reexamination statute is to be preserved.").  The legislative history of the reexamination statute suggests that the procedure was created to "provide the federal courts with the expertise of the PTO."  *Rohm & Haas*, 1992 U.S. Dist. LEXIS 3252, at *4 (citations omitted); *see also Pegasus*, 2003 WL 21105073 at *2.

Here, there can be no dispute the reexaminations are likely to narrow the issues for discovery and trial.  As a result of the reexamination, the claims could be amended or cancelled or could remain unchanged.  In granting the reexaminations, the Patent Office concluded that the requests raised substantial new questions of patentability.  (*See* Patent Office Communications, Exhibits 12 and 13.)  Although initial office actions by the Patent Office are not meant to be dispositive, the office actions here suggest that the claims are likely to be cancelled or amended into a narrower form.  (*See* Patent Office Communications, Exhibits 12

and 14.) That conclusion is supported by the German Patent Court's decisions to nullify the counterpart German and European Patents based on the prior art filed in the Patent Office reexamination proceedings. (*See* German Patent Court decisions, Exhibits 5-8.)

Another consideration is that the Supreme Court's decision in *KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727 (2007), has changed the landscape for obviousness under 35 U.S.C. § 103.[6] In response to that decision, the Patent Office has adopted a less restrictive approach to analyzing obviousness that it will employ during reexaminations. *See U.S. Patent Office Examination Guidelines for Determining Obviousness Under 35 U.S.C. § 103 in View of the Supreme Court Decision in KSR International Co. v. Teleflex, Inc.*, 72 Fed. Reg. 57526, 57529-34 (2007). As a result, there is a significant likelihood that the claims will either be cancelled or narrowed as a result of the reexaminations.[7]

In light of the fact that the claims will likely be cancelled or narrowed as a result of the reexaminations, a stay will conserve the Court's limited resources and reduce unnecessary costs to both parties. *See Abbott Diabetes Care, Inc. v. DexCom, Inc.*, C.A. No. 05-590-GMS, 2006 WL 2375035, *6 (D. Del. Aug. 16, 2006) ("[I]t is beyond dispute that the court, as well as the parties, would benefit from a narrowing of the variety of complex issues relating to the numerous claims at issue, which, if clearly defined, would streamline the discovery process and

---

[6]     Some commentators have stated that the U.S. Patent Office recognizes that *KSR* has significantly changed the law of obviousness. *See* Sarnoff, Joshua D., *Bilcare, KSR, Presumptions of Validity, Preliminary Relief, and Obviousness in Patent Law*, 25 Cardozo Arts & Ent. L.J. 995, n.221 (2008) (citations omitted).

[7]     According to the Patent Office, in *inter partes* proceedings, there is an 88% chance of claims being cancelled or changed, and a 12% chance (*i.e.*, one out of eight reexaminations) of claims being confirmed and coming out of the reexamination with no changes. (*See Inter Partes* Reexamination Filing Data, Exhibit 18.) In addition, in *ex parte* proceedings, there is a 64% chance of claims being changed, a 10% chance of claims being cancelled and a 26% chance of claims being confirmed. (*See Ex Parte* Reexamination Filing Data, Exhibit 19.)

the remainder of the litigation."); *Middleton, Inc. v. Minn. Mining & Mfg. Co.*, Civ. No. 03-40493, 2004 WL 1968669, *10 (S.D. Iowa Aug. 24, 2004) (stay pending reexamination was appropriate even though the litigation was eight years old and the case was merely two months away from trial because of "the high likelihood that results of the Patent Office's reexamination would have a dramatic effect on the issue before the Court, up to and including dismissal of the entire action if the patent claims are found to be unpatentable").

If the patent claims are cancelled or narrowed during the reexaminations, many aspects of this litigation will be impacted. Obviously, Teles would have to drop assertions based on cancelled claims and may have do so even for narrowed claims, depending on the limitations added to the changed claims. In either event, the reexaminations will affect claim construction, discovery responses involving claim charts, and invalidity and infringement contentions, and reduce the scope of discovery, expert testimony and otherwise simplify the case. Interpretation of claims after reexamination might also be affected by the arguments and statements made by Teles during the reexamination proceedings.[8] In sum, without a continued stay, the parties, and potentially the Court, face the specter of expending time and effort for work that would be rendered useless or have to be revamped as the result of the outcome of the reexaminations.

Reopening this matter will result in parallel proceedings in the Patent Office and this Court, which would not only be a waste for the Court and the parties, but also create an undesirable "race" between the proceedings in the Patent Office and in this Court on the validity issue, and the possibility of inconsistent rulings. *See Rohm & Haas*, 1992 U.S. Dist.

---

[8] The reexamination proceedings will create additional intrinsic evidence that is potentially relevant to construing the claims of the Patents-in-Suit. Teles' responses to the office actions and other statements may contain such material, and Teles would also be bound by those arguments. *See, e.g., Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733-34 (2002) (confirming that the patentee is subject to prosecutorial estoppel).

LEXIS 3252 at *11 (noting that a stay pending reexamination "prevented a race between the Court and the PTO to determine patent validity"); *see Gould*, 705 F.2d at 1342 ("One purpose of the reexamination procedure is to eliminate trial of [the patent claim validity] issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives reexamination proceeding)").  The Court should avoid unnecessary parallel proceedings by maintaining the stay.

## <u>CONCLUSION</u>

For the foregoing reasons, Quintum respectfully requests the Court grant its motion to transfer this case to the U.S. District Court for the District of Columbia or, in the alternative, to stay this action pending the resolution of the U.S. Patent Office's reexaminations of the Patents-in-Suit.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

———————————————————————
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com
   *Attorneys for Defendant*
   *Quintum LLC*

OF COUNSEL:

Gerald Levy
Richard H. Brown
John L. Dauer, Jr.
PITNEY HARDIN LLP
7 Times Square
New York, NY  10036-7311
(212) 297-5800

May 9, 2008

2321233

## CERTIFICATE OF SERVICE

I, Rodger D. Smith II, hereby certify that on May 9, 2008, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Steven J. Balick
Ashby & Geddes

and that on May 9, 2008 I caused copies to be served upon the following in the manner indicated:

**BY HAND**

Steven J. Balick
Ashby & Geddes
500 Delaware Avenue, 8th Fl.
Wilmington, DE  19801

**BY EMAIL & FEDERAL EXPRESS**

Michael D. Kaminski
Foley & Lardner LLP
3000 K Street, N.W., Suite 500
Washington, DC  20007-5109
mkaminski@foley.com

Andrea M. Augustine
Foley & Lardner LLP
321 North Clark, Suite 2800
Chicago, IL  60610
aaugustine@foley.com

*/s/ Rodger D. Smith II*
_____
Rodger D. Smith II (#3778)
rsmith@mnat.com