# EXHIBIT 7

Mandant hat Original



Markowski & Ninnemann
Eingegangen

0 2. Juni 2006

Frist 02.07.06 / Erledigt:
02.08. 04

# BUNDESPATENTGERICHT

## IM NAMEN DES VOLKES

## URTEIL

Verkündet am
5. April 2006
May
Justizsekretärin
als Urkundsbeamtin
der Geschäftsstelle

4 Ni 61/04 (EU)
hinzuverbunden
4 Ni 41/05 (EU)

_____

(Aktenzeichen)

In der Patentnichtigkeitssache


1. Cisco Systems Inc., vertreten durch den Präsidenten und CEO J. T. Chambers,
170 West Tasman Drive, San Jose, California 95134 (V. St. A.),

Klägerin zu 1 (4 Ni 61/04),


Prozessbevollmächtigter: Patentanwalt Dipl.-Ing. Dipl. CEIPI J. Lang (Bardehle
Pagenberg Dost Altenburg Geissler), Galileiplatz 1, 81679 München,


2. Quintum Technologies Inc., vertreten durch den CEO Cheng T. Chen,
71 James Way, Eatontown, New Jersey 07724 (V. St. A.),

Klägerin zu 2 (4 Ni 41/05),


Prozessbevollmächtigter: Patentanwalt Dipl.-Phys. Dr. D. Heunemann (Vossius
& Partner), Siebertstraße 3, 81675 München,


g e g e n

- 2 -

TELES AG Informationstechnologien, vertreten durch die Vorstandsmitglieder
Prof. Dr. S. Schindler, J. Bastian, A. Krüger, J. Schwarzer, R. Wegener, O. Schulz,
Dovestraße 2-4, 10587 Berlin,

Beklagte,

Prozessbevollmächtigter: Patentanwalt Dipl.-Phys. Dr. W. Müller (Maikowski
& Ninnemann), Kurfürstendamm 54-55, 10707 Berlin,

<u>**betreffend das europäische Patent EP 0 929 884**</u>
(DE 597 00 636)

hat der 4. Senat (Nichtigkeitssenat) des Bundespatentgerichts auf die mündliche
Verhandlung vom 4. April 2006 unter Mitwirkung der Vorsitzenden Richterin
Winkler sowie der Richter Dipl.-Phys. Dr. Hartung, Voit, Dipl.-Phys. Dr. Zehendner
und Dipl.-Ing. (Univ.) Höppler

für Recht erkannt:

  I. Das europäische Patent EP 0 929 884 wird mit Wirkung für
     das Hoheitsgebiet der Bundesrepublik Deutschland für nichtig
     erklärt.

  II. Die Beklagte trägt die Kosten des Rechtsstreits.

  III. Das Urteil ist gegen Sicherheitsleistung in Höhe von 120 %
     des jeweils zu vollstreckenden Betrages vorläufig vollstreck-
     bar.

- 3 -

## Tatbestand

Die Beklagte ist eingetragene Inhaberin des auch mit Wirkung für das Hoheitsge-
biet der Bundesrepublik Deutschland erteilten europäischen Patents EP 0 929 884
(Streitpatent), das am 7. Oktober 1997 unter Inanspruchnahme der Prioritäten der
deutschen Patentanmeldung DE 196 42 063 vom 7. Oktober 1996 und des deut-
schen Patents DE 196 45 368 vom 23. Oktober 1996 angemeldet worden ist. Das
Streitpatent ist in der Verfahrenssprache Deutsch veröffentlicht, wird beim Deut-
schen Patent- und Markenamt unter der Nummer 597 00 636 geführt und umfasst
in der erteilten Fassung 21 Ansprüche, die insgesamt angegriffen sind. Die An-
sprüche 1 und 2 lauten wie folgt:

1. Verfahren zur Übertragung von Daten von einem ersten
   Switch zu einem zweiten Switch, die Teil eines leitungsvermit-
   telten Netzes sind oder Zugang zu einem leitungsvermittelten
   Netz haben, wahlweise per Leitungsvermittlung oder per Pa-
   ketvermittlung, bestehend aus folgenden Schritten:
   a) Aufbau einer Verbindung über das leitungsvermittelte Netz
      vom ersten Switch zu einem Zugangspunkt eines paket-
      vermittelten Netzes,
   b) leitungsvermitteltes Übertragen der Daten vom ersten
      Switch zum Zugangspunkt des paketvermittelten Netzes,
   c) Paketierung der Daten, sofern diese noch nicht als Daten-
      pakete vorliegen, und paketvermitteltes Übertragen der
      Datenpakete über das paketvermittelte Netz vom Zu-
      gangspunkt zum zweiten Switch,
   d) wiederholtes Prüfen, ob ein durch den Nutzer eines End-
      gerätes oder ein Netzwerkmanagement ausgelöstes Steu-
      ersignal zum Übergang auf eine leitungsvermittelte Ver-
      bindung zum zweiten Switch vorliegt,

- 4 -

    e)  Aufbau einer leitungsvermittelten Verbindung vom ersten Switch zum zweiten Switch über das leitungsvermittelte Netz bei Vorliegen eines entsprechenden Steuersignals, sofern diese noch nicht vorhanden ist,

    f)  Wechseln auf eine leitungsvermittelte Datenübertragung während der bestehenden Verbindung und Übertragen der Daten zum zweiten Switch.

2. Verfahren zur Übertragung von Daten von einem ersten Switch zu einem zweiten Switch, die sowohl Teil eines leitungsvermittelten Netzes als auch eines paketvermittelten Netzes sind bzw. Zugang zu solchen Netzen haben, wahlweise per Leitungsvermittlung oder per Paketvermittlung, bestehend aus folgenden Schritten:

    a)  Paketierung der Daten im ersten Switch, sofern die Daten noch nicht als Datenpakete vorliegen,

    b)  paketvermitteltes Übertragen der Datenpakete über das paketvermittelte Netz zum zweiten Switch,

    c)  wiederholtes Prüfen, ob ein durch den Nutzer eines Endgerätes oder ein Netzwerkmanagement ausgelöstes Steuersignal zum Übergang auf eine leitungsvermittelte Verbindung zum zweiten Switch vorliegt,

    d)  Aufbau einer leitungsvermittelten Verbindung über das leitungsvermittelte Netz zum zweiten Switch bei Vorliegen eines entsprechenden Steuersignals, sofern diese noch nicht vorhanden ist,

    e)  Wechseln auf eine leitungsvermittelte Datenübertragung während der bestehenden Verbindung und Übertragen der Daten zum zweiten Switch.

- 5 -

Wegen der übrigen, auf die Ansprüche 1 und 2 unmittelbar oder mittelbar zurück bezogenen Ansprüche 3 bis 21 der erteilten Fassung wird auf die Streitpatentschrift EP 0 929 884 B1 Bezug genommen.

Die Beklagte hat das Streitpatent im Nichtigkeitsverfahren gegenüber der erteilten Fassung nurmehr eingeschränkt im Umfang der Ansprüche 1 bis 16 verteidigt.

Mit der Nichtigkeitsklage machen die Klägerinnen geltend, der Gegenstand des Streitpatents sei auch in der eingeschränkt verteidigten Fassung nicht neu und beruhe nicht auf erfinderischer Tätigkeit. Zur Stützung ihres Vorbringens verweisen die Klägerinnen insbesondere auf folgende schriftliche Beschreibungen, wobei zunächst die Bezifferung der Klägern zu 1 (NK mit laufender Nummer), gegebenenfalls die Bezeichnung der Klägerin zu 2 in Klammern und sodann die Bezifferung der Klägerin zu 2 (K mit laufender Nummer) zugrunde gelegt wird:

NK7   WO 95/31060 A1
NK8   WO 95/25407 A1
NK9   EP 0 732 835 A2
NK10 US 4 903 260
NK11 Low C. et al.: „WEBIN - an Architecture for Fast Deployment of In-Based Personal Services", Workshop Record Intelligent Network, Freedom and Flexibility: Realizing the Promise of Intelligent Network Services, 21. April 1996, S. 1-12
NK12 Rabbage R. et al.: „Internet Phone - Changing the Telephony Paradigm?", in: BT Technology Journal, Bd. 15, Nr. 2, April 1997, S. 145-157
NK13 WO 90/12466 A1 (K5 der Klägerin 2)
NK14 US 5 347 516 (K4 der Klägerin 2)
NK15 Draft ITU-T Recommendation H. 323, 28. Mai 1996, S. 1-75
NK16 Nakamura Y. et al.: „On a Hybrid Network System of Circuit Switching and Packet Switching", in: The Transactions of the IECE of Japan, Vol. E 65, No. 6. S. 679-686
NK17 GB 2 238 154 A

- 6 -

NK20 Standards aus ITU I-Serie

NK22 Pressemitteilung der Firma Lucent Technologies v. 17. September 1996
(http://www.lucent.com/press/0996/960917.bcb.html)

NK23 JP 3-235555 mit englischer Übersetzung (NK23a)

NK24 JP 7-154426 mit englischer Übersetzung (NK24a)

NK25 JP 57-159153 mit englischer Übersetzung (NK25a)

NK26 Ausdruck aus der Internet-Enzyklopädie Wikipedia zum Begriff „Point of Presence"

NK27 Ausdruck aus der Internet-Enzyklopädie Wikipedia zum Begriff „Einwahl-knoten"

NK28 Kopie „Das Mailbox-Jahrbuch '86" v. W. Spindler, Titelblatt-S. 127

NK29 Auszug aus „Computernetzwerke", A. Tanenbaum, S. 54-59

NK30 Erich Stein, Auszug aus „Taschenbuch Rechnernetze und Internet", 2. Aufl., S. 22-27

NK31 Pressemitteilung der Klägerin zu 1 v. 20. November 1995
(http://newsroom.cisco.com/dlls/1995/prod_112095c.html)

NK32 L. Blumenhofer, Der sichere Einstieg in die Datenfernübertragung, 1990, S. 80-91

NK33 „Support of Packet Mode Terminal Equipment by an ISDN", ITU-T Recommendation X.31, 11/1995

NK34 „Zugang zu X.25-Netzen über Euro-ISDN mittels X.31", Stand Dezember 1995

NK36 M. Listani, F. Villani: „An X.25-compatible protocol for packet voice communications", computer communications, Vol. 6, No. 1, Februar 1983

K2 TAXI-System, User Manual Version 2.0, Dezember 1995
(Englische Version)

K3 IDB-64/2, ISDN Dial Backup, Benutzerhandbuch, Software Release 4.11, März 1996

- 7 -

K6      Auszüge aus „Lexikon für Informatik und Datenverarbeitung,
        H.-J. Schneider, 2. Aufl. 1986, S. 151, 338-339, 418-419, 482-483

K8      Malek M.: „Integrated Voice and Data Communications Overview", in:
        IEEE Communications Magazine, Juni 1988, Vol. 26, No. 6, S. 5-15

K9      Wacker C.: „Interconnection of LANs using ISDN", in: Computer Networks
        and ISDN Systems 23, Elsevier Science Publishers, 1991, S. 203-208

K10a    „Vocaltec introduces the internet phone telephony", Herzliya, Israel,
        8. März 1996, S. 1-2

K10b    Ausdruck aus dem Internet (http://www.thedigest.com/71/71-3.html) vom
        4. März 2005: „Vocaltec links phones to web", 2. August 1996

K11     Installation and ISDN Configuration Guide NetWare MultiProtocol Router for
        ISDN 3.1, AVM GmbH Berlin, Juni 1996

K12     „Telefonieren auf dem Novell-Netz", LANline, Februar 1995, S. 44-48

K13     „LAN und TK-Funktionen wachsen zusammen", LANline, Juli 1995,
        S. 110-113

K14     Kötz W.: „Das LAN wird zur Telefonanlage", ntz Heft 4/1995, S. 45-47

K15     Schulthess P. et al.: „Realisierung von LAN-Diensten über TK-Anlagen",
        ntz Heft 12/1992, S. 970-976

K16     Jenny C., Kümmerle K.: „Distributed Processing Within an Integrated Circuit
        Packet-Switching Node", IEEE Transactions on Communication, Vol.
        Com-24, No. 10, Oktober 1976, S. 1089-1100

K17     Coviello G., Lyons R.: „Conceptual Approaches to Switching in Future Mili-
        tary Network", IEEE Transactions on Communication, Vol. Com-28, No. 9,
        September 1980, S. 1491-1498

K18     Bhushan B., Opderbeck H.: „The Evolution of Data Switching for PBX's",
        IEEE Journal on selected areas in Communication, Vol. SAC-3, No. 4, Ju-
        li 1985, S. 569-573

K19     Kohashi T. et al.: „Integrated-Circuit and Packet Switching Applications to a
        Loop System for Local Area Networks", IEEE Journal on selected areas in
        Communication, Vol. SAC-3, No. 4, Juli 1985, S. 574-583

- 8 -

K20   Karol M., Hluchyj M : „Using a Packet Switch for Circuit-Switched Traffic: A Queuing System with Periodic Input Traffic", IEEE Transactions on Communication, Vol. 37, No. 6, Juni 1989, S. 623-625

K21   Stallings W.: „ISDN and Broadband ISDN with Frame Relay and ATM", Prentice Hall, 3. Aufl. 1995, Deckblatt und S. 108

Die Klägerinnen beantragen,

> das europäische Patent EP 0 929 844 mit Wirkung für das Hoheitsgebiet der Bundesrepublik Deutschland für nichtig zu erklären.

Die Beklagte beantragt,

> die Klagen im Umfang der erteilten Ansprüche 1 bis 16 des Streitpatents abzuweisen (Hauptantrag),

> hilfsweise mit der Maßgabe, dass die Patentansprüche 1 und 2 folgende Fassung erhalten und die Ansprüche 3 bis 16 der erteilten Fassung bestehen bleiben (Hilfsantrag 1):

> 1. Verfahren zur Übertragung von Daten von einem ersten Switch zu einem zweiten Switch, die Teil eines leitungsvermittelten Netzes sind oder Zugang zu einem leitungsvermittelten Netz haben, wahlweise per Leitungsvermittlung oder per Paketvermittlung, bestehend aus folgenden Schritten:
>    a) Aufbau einer Verbindung über das leitungsvermittelte Netz vom ersten Switch zu einem Zugangspunkt eines paketvermittelten Netzes, **wobei das paketvermittelte Netz nicht der X.25-Paketvermittlungsteil eines ISDNs ist,**

- 9 -

b) leitungsvermitteltes Übertragen der Daten vom ersten Switch zum Zugangspunkt des paketvermittelten Netzes,

c) Paketierung der Daten, sofern diese noch nicht als Datenpakete vorliegen, und paketvermitteltes Übertragen der Datenpakete über das paketvermittelte Netz vom Zugangspunkt zum zweiten Switch,

d) wiederholtes Prüfen, ob ein durch den Nutzer eines Endgerätes oder ein Netzwerkmanagement ausgelöstes Steuersignal zum Übergang auf eine leitungsvermittelte Verbindung zum zweiten Switch vorliegt,

e) Aufbau einer leitungsvermittelten Verbindung vom ersten Switch zum zweiten Switch über das leitungsvermittelte Netz bei Vorliegen eines entsprechenden Steuersignals, sofern diese noch nicht vorhanden ist,

f) Wechseln auf eine leitungsvermittelte Datenübertragung während der bestehenden Verbindung und Übertragen der Daten zum zweiten Switch.

2. Verfahren zur Übertragung von Daten von einem ersten Switch zu einem zweiten Switch, die sowohl Teil eines leitungsvermittelten Netzes als auch eines paketvermittelten Netzes sind bzw. Zugang zu solchen Netzen haben, **wobei das paketvermittelte Netz nicht der X.25-Paketvermittlungsteil eines ISDNs ist**, wahlweise per Leitungsvermittlung oder per Paketvermittlung, bestehend aus folgenden Schritten:

a) Paketierung der Daten im ersten Switch, sofern die Daten noch nicht als Datenpakete vorliegen,

b) paketvermitteltes Übertragen der Datenpakete über das paketvermittelte Netz zum zweiten Switch,

- 10 -

  c) wiederholtes Prüfen, ob ein durch den Nutzer eines Endgerätes oder ein Netzwerkmanagement ausgelöstes Steuersignal zum Übergang auf eine leitungsvermittelte Verbindung zum zweiten Switch vorliegt,

  d) Aufbau einer leitungsvermittelten Verbindung über das leitungsvermittelte Netz zum zweiten Switch bei Vorliegen eines entsprechenden Steuersignals, sofern diese noch nicht vorhanden ist,

  e) Wechseln auf eine leitungsvermittelte Datenübertragung während der bestehenden Verbindung und Übertragen der Daten zum zweiten Switch.

weiter hilfsweise mit der Maßgabe, dass die Ansprüche 1 und 2 folgende Fassung erhalten und die Ansprüche 3 bis 16 in der erteilten Fassung bestehen bleiben (Hilfsantrag 2):

  1. Verfahren zur Übertragung von Daten **einer Telefonie-Anwendung** von einem ersten Switch zu einem zweiten Switch, die Teil eines leitungsvermittelten Netzes sind oder Zugang zu einem leitungsvermittelten Netz haben, wahlweise per Leitungsvermittlung oder per Paketvermittlung, bestehend aus folgenden Schritten:

  a) Aufbau einer Verbindung über das leitungsvermittelte Netz vom ersten Switch zu einem Zugangspunkt eines paketvermittelten Netzes, **wobei das paketvermittelte Netz nicht der X.25-Paketvermittlungsteil eines ISDNs ist,**

  b) leitungsvermitteltes Übertragen der Daten vom ersten Switch zum Zugangspunkt des paketvermittelten Netzes,

- 11 -

c) Paketierung der Daten, sofern diese noch nicht als Datenpakete vorliegen, und paketvermitteltes Übertragen der Datenpakete über das paketvermittelte Netz vom Zugangspunkt zum zweiten Switch,

d) wiederholtes Prüfen, ob ein durch den Nutzer eines Endgerätes oder ein Netzwerkmanagement ausgelöstes Steuersignal zum Übergang auf eine leitungsvermittelte Verbindung zum zweiten Switch vorliegt,

e) Aufbau einer leitungsvermittelten Verbindung vom ersten Switch zum zweiten Switch über das leitungsvermittelte Netz bei Vorliegen eines entsprechenden Steuersignals, sofern diese noch nicht vorhanden ist,

f) Wechseln auf eine leitungsvermittelte Datenübertragung während der bestehenden Verbindung und Übertragen der Daten zum zweiten Switch.

2. Verfahren zur Übertragung von Daten **einer Telefonie-Anwendung** von einem ersten Switch zu einem zweiten Switch, die sowohl Teil eines leitungsvermittelten Netzes als auch eines paketvermittelten Netzes sind bzw. Zugang zu solchen Netzen haben, **wobei das paketvermittelte Netz nicht der X.25-Paketvermittlungsteil eines ISDNs ist**, wahlweise per Leitungsvermittlung oder per Paketvermittlung, bestehend aus folgenden Schritten:

a) Paketierung der Daten im ersten Switch, sofern die Daten noch nicht als Datenpakete vorliegen,

b) paketvermitteltes Übertragen der Datenpakete über das paketvermittelte Netz zum zweiten Switch,

c) wiederholtes Prüfen, ob ein durch den Nutzer eines Endgerätes oder ein Netzwerkmanagement ausgelöstes Steuersignal zum Übergang auf eine leitungsvermittelte Verbindung zum zweiten Switch vorliegt,

- 12 -

    d) Aufbau einer leitungsvermittelten Verbindung über das leitungsvermittelte Netz zum zweiten Switch bei Vorliegen eines entsprechenden Steuersignals, sofern diese noch nicht vorhanden ist,

    e) Wechseln auf eine leitungsvermittelte Datenübertragung während der bestehenden Verbindung und Übertragen der Daten zum zweiten Switch.

weiter hilfsweise mit der Maßgabe, dass die Ansprüche 1 und 2 folgende Fassung erhalten und die Ansprüche 3 bis 16 in der erteilten Fassung bestehen bleiben (Hilfsantrag 3):

1. Verfahren zur Übertragung von Daten **einer Telefonie-Anwendung** von einem ersten Switch zu einem zweiten Switch, die Teil eines leitungsvermittelten Netzes sind oder Zugang zu einem leitungsvermittelten Netz haben, wahlweise per Leitungsvermittlung oder per Paketvermittlung, bestehend aus folgenden Schritten:

    a) Aufbau einer Verbindung über das leitungsvermittelte Netz vom ersten Switch zu einem Zugangspunkt eines paketvermittelten Netzes, **wobei das paketvermittelte Netz das Internet ist**,

    b) leitungsvermitteltes Übertragen der Daten vom ersten Switch zum Zugangspunkt des paketvermittelten Netzes,

    c) Paketierung der Daten, sofern diese noch nicht als Datenpakete vorliegen, und paketvermitteltes Übertragen der Datenpakete über das paketvermittelte Netz vom Zugangspunkt zum zweiten Switch,

- 13 -

d) wiederholtes Prüfen, ob ein durch den Nutzer eines Endgerätes oder ein Netzwerkmanagement ausgelöstes Steuersignal zum Übergang auf eine leitungsvermittelte Verbindung zum zweiten Switch vorliegt,

e) Aufbau einer leitungsvermittelten Verbindung vom ersten Switch zum zweiten Switch über das leitungsvermittelte Netz bei Vorliegen eines entsprechenden Steuersignals, sofern diese noch nicht vorhanden ist,

f) Wechseln auf eine leitungsvermittelte Datenübertragung während der bestehenden Verbindung und Übertragen der Daten zum zweiten Switch.

2. Verfahren zur Übertragung von Daten **einer Telefonie-Anwendung** von einem ersten Switch zu einem zweiten Switch, die sowohl Teil eines leitungsvermittelten Netzes als auch eines paketvermittelten Netzes sind bzw. Zugang zu solchen Netzen haben, **wobei das paketvermittelte Netz das Internet ist**, wahlweise per Leitungsvermittlung oder per Paketvermittlung, bestehend aus folgenden Schritten:

a) Paketierung der Daten im ersten Switch, sofern die Daten noch nicht als Datenpakete vorliegen,

b) paketvermitteltes Übertragen der Datenpakete über das paketvermittelte Netz zum zweiten Switch,

c) wiederholtes Prüfen, ob ein durch den Nutzer eines Endgerätes oder ein Netzwerkmanagement ausgelöstes Steuersignal zum Übergang auf eine leitungsvermittelte Verbindung zum zweiten Switch vorliegt,

d) Aufbau einer leitungsvermittelten Verbindung über das leitungsvermittelte Netz zum zweiten Switch bei Vorliegen eines entsprechenden Steuersignals, sofern diese noch nicht vorhanden ist,

- 14 -

e) Wechseln auf eine leitungsvermittelte Datenübertragung während der bestehenden Verbindung und Übertragen der Daten zum zweiten Switch.

weiter hilfsweise mit der Maßgabe, dass die Ansprüche 1 und 2 folgende Fassung erhalten und die Ansprüche 3 bis 16 in der erteilten Fassung bestehen bleiben (Hilfsantrag 4):

1. Verfahren zur Übertragung von Daten **einer Telefonie-Anwendung** von einem ersten Switch zu einem zweiten Switch, **wobei die Daten zunächst von mindestens einem Telefon zum ersten Switch übertragen werden** und dabei
    aa) sofern nur ein Telefon Daten zum ersten Switch überträgt, dieses Telefon die Daten als analoge Daten oder als nicht paketierte digitale Daten erzeugt,
    bb) sofern mehrere Telefone Daten zum ersten Switch übertragen, mindestens eines dieser Telefone die Daten als analoge Daten oder als nicht paketierte digitale Daten erzeugt,
    und wobei beide Switches Teil eines leitungsvermittelten Netzes sind oder Zugang zu solchen Netzen haben, wahlweise per Leitungsvermittlung oder per Paketvermittlung, bestehend aus folgenden Schritten:
    a) Aufbau einer Verbindung über das leitungsvermittelte Netz vom ersten Switch zu einem Zugangspunkt eines paketvermittelten Netzes, **wobei das paketvermittelte Netz das Internet ist,**
    b) leitungsvermitteltes Übertragen der Daten vom ersten Switch zum Zugangspunkt des paketvermittelten Netzes,

- 15 -

    c) Paketierung der Daten, sofern diese noch nicht als Datenpakete vorliegen, und paketvermitteltes Übertragen der Datenpakete über das paketvermittelte Netz vom Zugangspunkt zum zweiten Switch,

    d) wiederholtes Prüfen, ob ein durch den Nutzer eines Endgerätes oder ein Netzwerkmanagement ausgelöstes Steuersignal zum Übergang auf eine leitungsvermittelte Verbindung zum zweiten Switch vorliegt,

    e) Aufbau einer leitungsvermittelten Verbindung vom ersten Switch zum zweiten Switch über das leitungsvermittelte Netz bei Vorliegen eines entsprechenden Steuersignals, sofern diese noch nicht vorhanden ist,

    f) Wechseln auf eine leitungsvermittelte Datenübertragung während der bestehenden Verbindung und Übertragen der Daten zum zweiten Switch.

2. Verfahren zur Übertragung von Daten **einer Telefonie-Anwendung** von einem ersten Switch zu einem zweiten Switch, **wobei die Daten zunächst von mindestens einem Telefon zum ersten Switch übertragen werden,** und dabei

    aa) sofern nur ein Telefon Daten zum ersten Switch überträgt, dieses Telefon die Daten als analoge Daten oder als nicht paketierte digitale Daten erzeugt

    bb) sofern mehrere Telefone Daten zum ersten Switch übertragen, mindestens eines dieser Telefone die Daten als analoge Daten oder als nicht paketierte digitale Daten erzeugt,

und wobei **beide Switches** Teil eines leitungsvermittelten Netzes als auch eines paketvermittelten Netzes sind bzw. Zugang zu solchen Netzen haben, **und wobei das paket-**

- 16 -

vermittelte Netz das Internet ist, wahlweise per Leitungsvermittlung oder per Paketvermittlung, bestehend aus folgenden Schritten:

a) Paketierung der Daten im ersten Switch, sofern die Daten noch nicht als Datenpakete vorliegen,

b) paketvermitteltes Übertragen der Datenpakete über das paketvermittelte Netz zum zweiten Switch,

c) wiederholtes Prüfen, ob ein durch den Nutzer eines Endgerätes oder ein Netzwerkmanagement ausgelöstes Steuersignal zum Übergang auf eine leitungsvermittelte Verbindung zum zweiten Switch vorliegt,

d) Aufbau einer leitungsvermittelten Verbindung über das leitungsvermittelte Netz zum zweiten Switch bei Vorliegen eines entsprechenden Steuersignals, sofern diese noch nicht vorhanden ist,

e) Wechseln auf eine leitungsvermittelte Datenübertragung während der bestehenden Verbindung und Übertragen der Daten zum zweiten Switch.

Die Beklagte, die zunächst 6 Hilfsanträge gestellt hatte, hat in der mündlichen Verhandlung vom 4. April 2006 die ursprünglich gestellten Hilfsanträge 4 und 6 nicht mehr aufrechterhalten. Sie hält das Streitpatent im beschränkt verteidigten Umfang, hilfsweise im Umfang der durch die Hilfsanträge vorgegebenen Beschränkungen, für patentfähig.

## Entscheidungsgründe

1. Die zulässigen Klagen führen zunächst insoweit zum Erfolg, als die Beklagte das Streitpatent nicht mehr verteidigt und sich in zulässiger Weise selbst beschränkt hat (vgl. BGH GRUR 1956, 409 - Spritzgussmaschine I; BGH GRUR 1960, 542 - Flugzeugbetankung).

- 17 -

Die Klagen sind auch im Übrigen zulässig und begründet und führen zur Nichtiger-klärung des verteidigten Streitpatents mit Wirkung für das Hoheitsgebiet der Bun-desrepublik, denn es konnte weder in der erteilten Fassung nach Hauptantrag noch in den hilfsweise verteidigten Fassungen Bestand haben, weil deren Gegen-stände nicht patentfähig sind.

2. Als Fachmann ist ein Entwicklungsingenieur der Fachrichtung Nachrichtentech-nik mit Hochschulausbildung anzusehen, mit besonderen Kenntnissen auf dem Gebiet der Datenübertragungstechnik über Netzwerke.

<u>Zum Hauptantrag:</u>

3. Die Patentansprüche 1 und 2 gemäß Hauptantrag beschreiben - nach Merkma-len gegliedert - jeweils ein Verfahren mit folgenden Merkmalen:

<u>Patentanspruch 1:</u>

| 1.1. | 1. | Verfahren zur Übertragung von Daten von einem ersten Switch zu ei-nem zweiten Switch, |
| 1.2. | | die Teil eines leitungsvermittelten Netzes sind oder Zugang zu einem leitungsvermittelten Netz haben, |
| 1.3. | | wahlweise per Leitungsvermittlung oder per Paketvermittlung, beste-hend aus folgenden Schritten: |
| 1.4. | a) | Aufbau einer Verbindung über das leitungsvermittelte Netz vom ersten Switch zu einem Zugangspunkt eines paketvermittelten Netzes, |
| 1.5. | b) | leitungsvermitteltes Übertragen der Daten vom ersten Switch zum Zu-gangspunkt des paketvermittelten Netzes, |
| 1.6. | c) | Paketierung der Daten, sofern diese noch nicht als Datenpakete vorlie-gen, |
| 1.7. | | und paketvermitteltes Übertragen der Datenpakete über das paketver-mittelte Netz vom Zugangspunkt zum zweiten Switch, |

- 18 -

1.8.   d)   wiederholtes Prüfen, ob ein Steuersignal zum Übergang auf eine lei-
tungsvermittelte Verbindung zum zweiten Switch vorliegt,

1.8.1   ausgelöst durch den Nutzer eines Endgerätes oder ein Netzwerkmana-
gement,

1.9.   e)   Aufbau einer leitungsvermittelten Verbindung vom ersten Switch zum
zweiten Switch über das leitungsvermittelte Netz bei Vorliegen eines
entsprechenden Steuersignals, sofern diese noch nicht vorhanden ist,

1.10.   f)   Wechseln auf eine leitungsvermittelte Datenübertragung während der
bestehenden Verbindung

1.11.   und Übertragen der Daten zum zweiten Switch.


Patentanspruch 2:


2.1.   2.   Verfahren zur Übertragung von Daten von einem ersten Switch zu ei-
nem zweiten Switch,

2.2.   die sowohl Teil eines leitungsvermittelten Netzes als auch eines paket-
vermittelten Netzes sind bzw. Zugang zu solchen Netzen haben,

2.3.   wahlweise per Leitungsvermittlung oder per Paketvermittlung, beste-
hend aus folgenden Schritten:

2.4.   a)   Paketierung der Daten im ersten Switch, sofern die Daten noch nicht
als Datenpakete vorliegen,

2.5.   b)   paketvermitteltes Übertragen der Datenpakete über das paketvermittel-
te Netz zum zweiten Switch,

2.6.   c)   wiederholtes Prüfen, ob ein Steuersignal zum Übergang auf eine lei-
tungsvermittelte Verbindung zum zweiten Switch vorliegt,

2.6.1.   ausgelöst durch den Nutzer eines Endgerätes oder ein Netzwerkmana-
gement,

2.7.   d)   Aufbau einer leitungsvermittelten Verbindung über das leitungsvermit-
telte Netz zum zweiten Switch bei Vorliegen eines entsprechenden
Steuersignals, sofern diese noch nicht vorhanden ist,

2.8.   c)   Wechseln auf eine leitungsvermittelte Datenübertragung während der
bestehenden Verbindung

- 19 -

2.9.        und Übertragen der Daten zum zweiten Switch.

4. Der Gegenstand des Patentanspruchs 1 nach Hauptantrag beruht nicht auf einer erfinderischen Tätigkeit. Er ergab sich für den Fachmann in naheliegender Weise aus dem Stand der Technik nach der Pressemitteilung NK22 in Verbindung mit seinem, ebenfalls durch den Stand der Technik belegten Fachwissen.

a) Die Pressemitteilung NK22 betrifft ein Verfahren zum Übertragen von Daten von einem ersten Switch zu einem zweiten Switch (Seite 1 von 2, 1. Absatz des Textkörpers: Internet telephony servers - Switches - zum Routen von Fax -, Voice mail- und Telefon-Daten - Merkmal 1.1), die Teil eines leitungsvermittelten Netzes sind bzw. Zugang zu einem leitungsvermittelten Netz haben (Seite 1 von 2, 6. Absatz des Textkörpers: the server could switch the transmission back to the public network; die Internet telephony server haben somit - neben ihrem Zugang zum Internet - zumindest auch Zugang zu einem leitungsvermittelten Netz, vgl. dazu auch Seite 1 von 2, 2. und 5. Absatz des Textkörpers: Internet oder public networks (traditional telecommunications network) - Merkmal 1.2). Schließlich erfolgt die Übertragung der Daten wahlweise per Leitungsvermittlung oder per Paketvermittlung (Seite 1 von 2, 5. und 6. Absatz des Textkörpers: Eventually, the network management software will be able to transparently route traffic over either Internet or the public network; per Leitungsvermittlung: public network/traditional telecommunications network oder per Paketvermittlung: Internet - Merkmal 1.3).

Da das in der NK22 beschriebene Verfahren den Datenverkehr wahlweise über das leitungsvermittelte Netz oder das paketvermittelte Netz routet (Seite 1 von 2, 6. Absatz des Textkörpers: transparently route traffic over either Internet or the public network) und die Wahl der Route (des Netzes) abhängt von den Kosten und der Qualität der Übertragung (Seite 1 von 2, 2. und 7. Absatz des Textkörpers: cost savings, cost efficiencies, quality, reliability), sieht sich der Fachmann veranlasst, zu prüfen, ob die vorliegende Wahl des Datenübertragungsweges den Anforderungen nach Kostenersparnis und Übertragungsqualität genügt, oder ob ggf ein Wechsel der Datenübertragung vorzunehmen ist. Einen solchen Wechsel auf

- 20 -

eine leitungsvermittelte Datenübertragung (public network, traditional telecommu-
nications network) während der bestehenden (paketvermittelten) Verbindung (In-
ternet) und daran anschließend ein (leitungsvermitteltes) Übertragen der Daten
entnimmt der Fachmann für den Fall einer Überlastung des Internets ebenfalls der
NK22, vgl. Seite 1 von 2, 6. Absatz des Textkörpers: If the Internet was too con-
gested, for instance, the server could switch back to the public network - Merkma-
le 1.10 und 1 11. Nachdem die Wahl der Verbindung - paketvermittelt oder lei-
tungsvermittelt - mittels einer Netzwerkmanagement Software erfolgt (Seite 1 von
2, 6. Absatz des Textkörpers: the network management software will be able to
transparently route traffic over either Internet or the public network), setzt der
Fachmann ein solches Netzwerkmanagement ein, um wiederholt zu prüfen, ob ein
von dem Netzwerkmanagement ausgelöstes Steuersignal zum Übergang auf eine
leitungsvermittelte Verbindung vorliegt (Merkmale 1.8, 1.8.1). Für den Fall, dass
ein entsprechendes Steuersignal für einen Wechsel auf eine leitungsvermittelte
Datenübertragung vorliegt, sieht der Fachmann zwangsläufig den Aufbau einer lei-
tungsvermittelten Verbindung über das leitungsvermittelte Netz vor, sofern diese
noch nicht vorhanden ist (Merkmal 1.9).

Damit sind aus NK22 die Merkmale 1.1 bis 1.3, 1.8, 1.8.1 und 1.9 bis 1.11 des Pa-
tentanspruchs 1 nach Hauptantrag als bekannt entnehmbar oder dem Fachmann
zumindest nahegelegt.

b) Der außerdem von dem Verfahren nach Anspruch 1 geforderte Verbindungs-
aufbau vom ersten Switch zum paketvermittelten Netz unter Einbeziehung eines
Zugangspunktes eines paketvermittelten Netzes und das daran anschließende
Übertragen der Datenpakete gemäß den Merkmalen 1.4 bis 1.7 ist dem Fach-
mann aus seinem Fachwissen heraus geläufig, er richtet den Zugang zu dem in
NK22 beschriebenen paketvermittelten Netz (Internet) gemäß den gegebenen und
ihm wohlbekannten Zugangsmöglichkeiten zum Internet ein, wie dies implizit be-
reits in der NK22 angesprochen ist (vgl. Seite 1 von 2, 5. Absatz des Textkörpers).
Als Beleg für das hier zur Anwendung gelangende Fachwissen sei beispielhaft die
Abhandlung K8 genannt, die auf Seite 10 in den Figuren 6 und 7 und den zugehö-

- 21 -

rigen Beschreibungsteilen „Integrated Switching" und „Integrated Access"
Switches beschreibt, die zumindest Zugang haben zu einem leitungsvermittelten
Netz. Der Zugang zum paketvermittelten Netz erfolgt durch Aufbau einer Verbin-
dung über ein leitungsvermitteltes Netz und leitungsvermitteltes Übertragen der
Daten zum Zugangspunkt des paketvermittelten Netzes (Fig. 7, re. Sp. 1. Abs.,
ACCESS LINE - Merkmale 1.4 und 1.5). Die Daten werden (zwangsläufig) pake-
tiert, sofern diese noch nicht als Datenpakete vorliegen, und anschließend paket-
vermittelt zu einem zweiten Switch übertragen (S. 10 li. Sp. Abschnitt „Integrated
Switching", 1. Abs. - Merkmale 1.6 und 1.7). Dementsprechend sind dazu ergän-
zend auch in der NK9, vgl. insbesondere die Figuren 1 bis 10, Switches und Zu-
gangspunkte zu paketvermittelten Netzen beschrieben.

Damit ist der Fachmann bereits ohne erfinderische Überlegungen zum Gegen-
stand des Patentanspruchs 1 nach Hauptantrag gelangt.

c) Der Argumentation der Beklagten, dass in der NK22 ein erster und zweiter
Switch und eine Paketiereinrichtung nicht expressis verbis genannt seien, mag
zwar beizupflichten sein, jedoch setzt der Fachmann aufgrund seines Fachwis-
sens die genannten Vorrichtungen zur Durchführung des in der NK22 beschriebe-
nen Verfahrens voraus, wie oben unter Abschnitt 4b) dargelegt wurde.

Die Beklagte hat weiter ausgeführt, das in NK22 pauschal beschriebene Vorge-
hen, insbesondere das dort genannte „Zurückswitchen" der Übertragung auf ein
Telekommunikationsnetzwerk (vgl. NK22, Seite 1 von 2, 6. Absatz des Textkör-
pers: the server could switch the transmission back to the public network) könne
den Fachmann nicht veranlassen zu einem Wechseln auf eine leitungsvermittelte
Datenübertragung während einer bestehenden Verbindung gemäß Merkmal 1.10
des Anspruchs 1. Es werde insbesondere nicht deutlich, wie das Wechseln kon-
kret durchgeführt werde und ob das Wechseln während einer bestehenden Ver-
bindung geschehe. Auch werde nach der NK22 die Art der Datenübertragung be-
reits vor dem Beginn einer Datenübertragung festgelegt. Nun mag zwar die NK22
dem Wortlaut nach nur pauschal ein (Zurück-) Wechseln der (paketvermittelten In-

- 22 -

ternet-) Datenübertragung auf eine leitungsvermittelte Datenübertragung beschrei-
ben. Dieses Wechseln geschieht jedoch während der bestehenden (paketvermit-
telten) Verbindung, weil eine Überlastung des Internets (und damit der bestehen-
den paketvermittelten Verbindung) das Wechseln gemäß NK22 auslöst, mithin ein
Wechseln während der solcherart bestehenden Verbindung erfolgt. Mehr fordert
jedoch auch der Anspruch 1 des Streitpatents in seinem Merkmal 1.10 nicht. Ob
und wie die Art der Datenübertragung vor deren Beginn möglicherweise festgelegt
wird, spielt für das Wechseln während der Verbindung keine Rolle.

Selbst wenn jedoch Merkmal 1.10 weitere Einzelheiten zum Vorgang des Wech-
selns aufzeigen würde, könnten diese das Vorliegen einer erfinderischen Tätigkeit
ebenfalls nicht begründen. Der Fachmann kennt zu einem solchen Vorgang des
Wechselns von einer paketvermittelten auf eine leitungsvermittelte Verbindung
- und auch umgekehrt - verschiedene Vorgehensweisen und diese auch in ihren
Details. Als Beleg für dieses Fachwissen wären aus dem Stand der Technik er-
gänzend zur K8 oder auch K9 zu zitieren u. a. die japanische Druckschrift NK25,
hier die Figuren 3, 4, 7 und 8 und die zugehörigen Beschreibungsteile, aber auch
die mit ISDN befassten Druckschriften NK13 und NK14. Die letztgenannten Druck-
schriften belegen außerdem - wie auch die K8 und K9 - einmal mehr das Fachwis-
sen des Fachmannes betreffs der Begriffe erster und zweiter Switch, Zugangs-
punkt, Leitungs- und Paketvermittlung, Verbindungen allgemein.

5. Das Verfahren gemäß dem nebengeordneten Patentanspruch 2 nach Hauptan-
trag ist mangels erfinderischer Tätigkeit gegenüber dem Stand der Technik nach
NK22 ebenfalls nicht patentfähig.

a) Anspruch 2 nach Hauptantrag unterscheidet sich vom Verfahren nach An-
spruch 1 zunächst dadurch, dass gemäß Merkmal 2.2 der erste und der zweite
Switch sowohl Teil eines leitungsvermittelten als auch eines paketvermittelten Net-
zes sind bzw. Zugang zu solchen Netzen haben. Infolgedessen fehlen im Verfah-
ren gemäß Anspruch 2 die Verfahrensschritte a) und b) nach den Merkmalen 1.4
und 1.5 des Anspruchs 1. In einem ersten Verfahrensschritt a) des Anspruchs 2

- 23 -

(Merkmal 2.4) werden die Daten im ersten Switch paketiert, sofern die Daten noch nicht als Datenpakete vorliegen, und in einem zweiten Schritt b) werden die Datenpakete paketvermittelt über das paketvermittelte Netz zum zweiten Switch übertragen (Merkmal 2.5). Dem Verfahrensschritt b) des Anspruchs 2 schließen sich die Schritte c) bis e) (Merkmale 2.6 bis 2.9) wortgleich zu den Verfahrensschritten d) bis f) nach Anspruch 1 (Merkmale 1.8 bis 1.11) an.

b) Die zu den Merkmalen 1.1 bis 1.3, 1.8, 1.8.1 und 1.9 bis 1.11 des Patentanspruchs 1 nach Hauptantrag unter Abschnitt **4a)** dargelegten Ausführungen gelten in gleicher Weise für die dazu korrespondierenden Merkmale 2.1 bis 2.3 und 2.6, 2.6.1 und 2.7 bis 2.9 des Verfahrens nach Anspruch 2.

Nachdem gemäß dem Verfahren nach Anspruch 2 der erste und der zweite Switch sowohl Teil eines leitungsvermittelten als auch eines paketvermittelten Netzes sind bzw. Zugang zu solchen Netzen haben (Merkmal 2.2), wird von dem Verfahren nach Anspruch 2 ein Zugangspunkt zu einem paketvermittelten Netz und ein leitungsvermitteltes Übertragen der Daten vom ersten Switch zu diesem Zugangspunkt nicht gefordert. Der Fachmann liest die aus der NK22 als bekannt entnehmbaren Server auf den ersten und zweiten Switch nach Anspruch 2. Eine Paketierung der Daten, sofern die Daten noch nicht als Datenpakete vorliegen, sieht der Fachmann selbstverständlich vor, um diese Daten dann paketvermittelt übertragen zu können (Merkmale 2.4 und 2.5), vgl. dazu die Ausführungen unter Abschnitt **4b)**.

Damit ist der Fachmann ohne erfinderische Überlegungen zum Gegenstand des Patentanspruchs 2 nach Hauptantrag gelangt.

c) Zur Argumentation der Beklagten wird auf die Ausführungen unter **4c)** verwiesen, die entsprechend auch für den Gegenstand des Patentanspruchs 2 nach Hauptantrag gelten.

- 24 -

Zum Hilfsantrag 1:

6. Die Gegenstände der Ansprüche 1 und 2 nach Hilfsantrag 1 beruhen nicht auf einer erfinderischen Tätigkeit.

a) Anspruch 1 nach Hilfsantrag 1 - und korrespondierend dazu Anspruch 2 - unterscheiden sich inhaltlich von Anspruch 1 resp. dem Anspruch 2 nach Hauptantrag dadurch, dass die Merkmale 1.4 resp. 2.2 jeweils folgendermaßen lauten (Änderungen hervorgehoben):

Patentanspruch 1:

1.4.  a) Aufbau einer Verbindung über das leitungsvermittelte Netz vom ersten Switch zu einem Zugangspunkt eines paketvermittelten Netzes, **wobei das paketvermittelte Netz nicht der X.25-Paketvermittlungsteil eines ISDNs ist**,

Patentanspruch 2:

2.2.  die sowohl Teil eines leitungsvermittelten Netzes als auch eines paketvermittelten Netzes sind bzw. Zugang zu solchen Netzen haben, **wobei das paketvermittelte Netz nicht der X.25-Paketvermittlungsteil eines ISDNs ist**,

b) Wie oben zum Hauptantrag erörtert - vgl. die Abschnitte **4a)** bis **4c)** und **5a)** bis **5c)** -, handelt es sich bei dem in NK22 (vgl. Seite 1 von 2, Titel und insbesondere den 1. Absatz des Textkörpers) beschriebenen paketvermittelten Netz um das Internet, somit nicht um den X.25-Teil eines ISDNs. Auch die in den als Beleg für das Fachwissen angezogenen Schriften K8, NK9 und NK25 genannten paketvermittelten Netze sind nicht auf den X.25-Paketvermittlungsteil eines ISDNs beschränkt. Das in den Ansprüchen 1 und 2 aufgenommene Merkmal „wobei das paketvermittelte Netz nicht der X.25-Paketvermittlungsteil eines ISDNs ist" kann des-

- 25 -

halb die Patentfähigkeit der Gegenstände der Ansprüche 1 und 2 nach Hilfsantrag 1 nicht begründen.

## Zum Hilfsantrag 2:

7. Auch die Gegenstände der Ansprüche 1 und 2 nach Hilfsantrag 2 beruhen ebenfalls nicht auf einer erfinderischen Tätigkeit.

a) Anspruch 1 nach Hilfsantrag 2 - und korrespondierend dazu der Anspruch 2 - unterscheiden sich inhaltlich von Anspruch 1 resp. dem Anspruch 2 nach Hauptantrag dadurch, dass die Merkmale 1.1 und 1.4 resp. 2.1 und 2.2 jeweils folgendermaßen lauten (Änderungen hervorgehoben):

## Patentanspruch 1:

1.1.    1.    Verfahren zur Übertragung von Daten **einer Telefonie-Anwendung** von einem ersten Switch zu einem zweiten Switch,

1.4.    a)    Aufbau einer Verbindung über das leitungsvermittelte Netz vom ersten Switch zu einem Zugangspunkt eines paketvermittelten Netzes, **wobei das paketvermittelte Netz nicht der X.25-Paketvermittlungsteil eines ISDNs ist,**

## Patentanspruch 2:

2.1    2.    Verfahren zur Übertragung von Daten **einer Telefonie-Anwendung** von einem ersten Switch zu einem zweiten Switch,

2.2.        die sowohl Teil eines leitungsvermittelten Netzes als auch eines paketvermittelten Netzes sind bzw. Zugang zu solchen Netzen haben, **wobei das paketvermittelte Netz nicht der X.25-Paketvermittlungsteil eines ISDNs ist,**

- 26 -

**b)** Auch zu den Gegenständen der Patentansprüche 1 und 2 nach Hilfsantrag 2 gelten die zu Ansprüchen 1 und 2 nach Hauptantrag unter den Abschnitten **4a)** bis **4c** und **5a** bis **5c)** dargelegten Ausführungen in gleicher Weise.

Wie oben zum Hauptantrag erörtert - vgl. die vorgenannten Abschnitte -, werden bei dem aus der NK22 als bekannt entnehmbaren Verfahren zur Übertragung von Daten ebenfalls Daten einer Telefonie-Anwendung übertragen (Seite 1 von 2, 1. Absatz des Textkörpers: Internet telephony servers ... to route (their) faxes, voice mail and phone calls over the Internet). Auch bei den in der als Beleg für das Fachwissen angezogenen Schrift K8 genannten Datenübertragungen werden Daten einer Telefonie-Anwendung übertragen (vgl. K8 S 10 Telefondarstellungen in den Fig. 6 und 7). Auch die mit ISDN-Systemen befassten Druckschriften NK13 und NK14 weisen den Fachmann, schon allein aus der Definition des ISDN heraus, auf eine Übertragung von Daten einer Telefonie-Anwendung hin. Somit kann das in den Ansprüchen 1 und 2 aufgenommene Merkmal „Übertragung von Daten **einer Telefonie-Anwendung**" die Patentfähigkeit der Gegenstände der Ansprüche 1 und 2 nicht begründen.

Das des weiteren in den Ansprüchen 1 und 2 aufgenommene Merkmal „wobei das paketvermittelte Netz nicht der X.25-Paketvermittlungsteil eines ISDNs ist" kann, wie zu den Ansprüchen 1 und 2 nach Hilfsantrag 1 unter den Abschnitten 6a) und 6b) ausgeführt, die Patentfähigkeit der Gegenstände der Ansprüche 1 und 2 nach Hilfsantrag 2 ebenfalls nicht stützen.

<u>Zum Hilfsantrag 3:</u>

**8.** Die Gegenstände der Ansprüche 1 und 2 nach Hilfsantrag 3 beruhen ebenfalls nicht auf einer erfinderischen Tätigkeit.

- 27 -

a) Anspruch 1 nach Hilfsantrag 3 - und korrespondierend dazu der Anspruch 2 - unterscheiden sich inhaltlich von Anspruch 1 resp. dem Anspruch 2 nach Hauptantrag dadurch, dass die Merkmale 1.1 und 1.4 resp. 2.1 und 2.2 jeweils folgendermaßen lauten (Änderungen hervorgehoben):

Patentanspruch 1.

1.1.    1.    Verfahren zur Übertragung von Daten **einer Telefonie-Anwendung** von einem ersten Switch zu einem zweiten Switch,

1.4.    a)    Aufbau einer Verbindung über das leitungsvermittelte Netz vom ersten Switch zu einem Zugangspunkt eines paketvermittelten Netzes, **wobei das paketvermittelte Netz das Internet ist,**

Patentanspruch 2:

2.1.    2.    Verfahren zur Übertragung von Daten **einer Telefonie-Anwendung** von einem ersten Switch zu einem zweiten Switch,

2.2.        die sowohl Teil eines leitungsvermittelten Netzes als auch eines paketvermittelten Netzes sind bzw. Zugang zu solchen Netzen haben, **wobei das paketvermittelte Netz das Internet ist,**

b) Zu den Gegenständen der Patentansprüche 1 und 2 nach Hilfsantrag 3 gelten zunächst ebenfalls die zu Ansprüchen 1 und 2 nach Hauptantrag unter den Abschnitten 4a) bis 4c) und 5a) bis 5c) dargelegten Ausführungen.

Wie vorstehend zum Hilfsantrag 2 erörtert - vgl. dazu die Abschnitte 7a) und 7b) -, werden insbesondere bei dem aus der NK22 als bekannt entnehmbaren Verfahren zur Übertragung von Daten ebenfalls Daten einer Telefonie-Anwendung übertragen (Seite 1 von 2, 1. Absatz des Textkörpers: Internet telephony servers ... to route (their) faxes, voice mail and phone calls over the Internet). Gleiches gilt für die aus den beispielhaft als Beleg für das Fachwissen angezogenen Schriften K8,

- 28 -

NK13, NK14 als bekannt entnehmbaren Datenübertragungen. Somit kann das in den Ansprüchen 1 und 2 aufgenommene Merkmal „Übertragung von Daten **einer Telefonie-Anwendung**" die Patentfähigkeit der Gegenstände der Ansprüche 1 und 2 nach Hilfsantrag 3 nicht stützen.

Wie ebenfalls bereits zum Hauptantrag erörtert - vgl. die Abschnitte **4a)** bis **4c)** und **5a)** bis **5c)** -, handelt es sich bei dem in NK22 beschriebenen paketvermittelten Netz um das Internet (vgl. Seite 1 von 2, Titel und insbesondere den 1. Absatz des Textkörpers). Das in den Ansprüchen 1 und 2 aufgenommene Merkmal „wobei das paketvermittelte Netz das Internet ist" kann deshalb die Patentfähigkeit der Gegenstände der Ansprüche 1 und 2 nach Hilfsantrag 3 ebenfalls nicht begründen.

Zum Hilfsantrag 4:

9. Auch die Gegenstände der Ansprüche 1 und 2 nach Hilfsantrag 4 beruhen nicht auf einer erfinderischen Tätigkeit.

a) Anspruch 1 nach Hilfsantrag 4 - und korrespondierend dazu der Anspruch 2 - unterscheiden sich inhaltlich von Anspruch 1 resp. dem Anspruch 2 nach Hauptantrag dadurch, dass die Merkmale 1.1 bis 1.4 resp. 2.1 bis 2.2 jeweils folgendermaßen lauten (Änderungen hervorgehoben):

Patentanspruch 1:

1.1.    1.    Verfahren zur Übertragung von Daten **einer Telefonie-Anwendung** von einem ersten Switch zu einem zweiten Switch, **wobei die Daten zunächst von mindestens einem Telefon zum ersten Switch übertragen werden, und dabei**

- 29 -

        aa)  sofern nur ein Telefon Daten zum ersten Switch überträgt, dieses Telefon die Daten als analoge Daten oder als nicht paketierte digitale Daten erzeugt,

        bb)  sofern mehrere Telefone Daten zum ersten Switch übertragen, mindestens eines dieser Telefone die Daten als analoge Daten oder als nicht paketierte digitale Daten erzeugt,

1.2.      und wobei beide Switches Teil eines leitungsvermittelten Netzes sind oder Zugang zu einem leitungsvermittelten Netz haben,

1.3.      wahlweise per Leitungsvermittlung oder per Paketvermittlung, bestehend aus folgenden Schritten:

1.4.      a)   Aufbau einer Verbindung über das leitungsvermittelte Netz vom ersten Switch zu einem Zugangspunkt eines paketvermittelten Netzes, wobei das paketvermittelte Netz das Internet ist,

Patentanspruch 2:

2.1.  2.  Verfahren zur Übertragung von Daten einer Telefonie-Anwendung von einem ersten Switch zu einem zweiten Switch, wobei die Daten zunächst von mindestens einem Telefon zum ersten Switch übertragen werden, und dabei

        aa)  sofern nur ein Telefon Daten zum ersten Switch überträgt, dieses Telefon die Daten als analoge Daten oder als nicht paketierte digitale Daten erzeugt,

        bb)  sofern mehrere Telefone Daten zum ersten Switch übertragen, mindestens eines dieser Telefone die Daten als analoge Daten oder als nicht paketierte digitale Daten erzeugt,

2.2.      und wobei beide Switches Teil eines leitungsvermittelten Netzes als auch eines paketvermittelten Netzes sind bzw. Zugang zu solchen Netzen haben, wobei das paketvermittelte Netz das Internet ist,

- 30 -

b) Auch zu den Gegenständen der Patentansprüche 1 und 2 nach Hilfsantrag 4 gelten die zu Ansprüchen 1 und 2 nach Hauptantrag unter den Abschnitten **4a)** bis **4c)** und **5a)** bis **5c)** dargelegten Ausführungen.

Wie außerdem bereits zu den Hilfsanträgen 2 und 3 erörtert - vgl. die Abschnitte **7a)** und **7b)** resp. **8a)** und **8b)** -, werden insbesondere bei dem aus der NK22 als bekannt entnehmbaren Verfahren zur Übertragung von Daten ebenfalls Daten einer Telefonie-Anwendung übertragen (Seite 1 von 2, 1. Absatz des Textkörpers: Internet telephony servers ... to route (their) faxes, voice mail and phone calls over the Internet). Somit kann das in den Ansprüchen 1 und 2 aufgenommene Merkmal „Übertragung von Daten **einer Telefonie-Anwendung**" die Patentfähigkeit der Gegenstände der Ansprüche 1 und 2 nach Hilfsantrag 4 jedenfalls nicht begründen.

Nachdem - wie bekannt, vgl. den vorstehenden Absatz - Daten einer Telefonie-Anwendung übertragen werden, sieht der Fachmann auch mindestens ein Telefon vor, von dem die Daten zum Netzwerk, insbesondere zum ersten Switch, übertragen werden. Ein solches Vorgehen war dem Fachmann durch sein Fachwissen und -können nahegelegt, und überdies auch durch den Stand der Technik belegt, vgl. z. B. die K8, Seite 10, die Figuren 6 und 7. Weiter war es dem Fachmann am Prioritätstag des Streitpatents geläufig, dass Telefone die von ihnen erzeugten Daten als analoge Daten oder als nicht paketierte digitale Daten erzeugten, auch das beschrieben in der K8 (vgl. S. 8 re. Sp. le. Abs.: the PSTN has been designed and optimized primarily to transport voice signals (i. e., continuous signals - also analoge Daten); und weiter S. 9 li. Sp. 2. Abs.: voice is presented to the network over the access media - übertragen zum ersten Switch - as digital data (i. e., a bit stream - d. h. als nicht paketierte digitale Daten mit z. B. 64 kbits/s). Zumindest ein Telefon für eine solcherart ausgestaltete Datenerzeugung und -übertragung vorzusehen, steht im Belieben des Fachmanns. Die Umformulierung „wobei beide Switches Teil ... sind" ergibt sich zwangsläufig und bringt im Vergleich zu den entsprechenden Formulierungen nach Hauptantrag sowie den Hilfsanträgen 1 bis 3 keine neuen Gesichtspunkte. Somit kann auch die hier abgehandelte Merk-

- 31 -

malsgesamtheit „... wobei die Daten zunächst von mindestens einem Telefon zum ersten Switch übertragen werden, und dabei

aa)  sofern nur ein Telefon Daten zum ersten Switch überträgt, dieses Telefon die Daten als analoge Daten oder als nicht paketierte digitale Daten erzeugt,

bb)  sofern mehrere Telefone Daten zum ersten Switch übertragen, mindestens eines dieser Telefone die Daten als analoge Daten oder als nicht paketierte digitale Daten erzeugt,

und wobei beide Switches ..." die Patentfähigkeit der Gegenstände der Ansprüche 1 und 2 nach Hilfsantrag 4 nicht begründen.

Schließlich wurde zu Hilfsantrag 3 - und auch bereits zum Hauptantrag - ausgeführt (vgl. die Abschnitte 8a) und 8b) resp. 4a) bis 4c) und 5a) bis 5c)), dass es sich bei dem in NK22 beschriebenen paketvermittelten Netz um das Internet handelt (vgl. Seite 1 von 2, Titel und insbesondere den 1. Absatz des Textkörpers). Also kann das in den Ansprüchen 1 und 2 vorgesehene Merkmal „wobei das paketvermittelte Netz das Internet ist" die Patentfähigkeit der Gegenstände der Ansprüche 1 und 2 nach Hilfsantrag 4 auch nicht stützen.

**10.** Mit den Patentansprüchen 1 und 2 jeweils nach Hauptantrag und nach den Hilfsanträgen 1 bis 4 fallen auch die von den Klägerinnen angegriffenen Patentansprüche 3 bis 16, die sich gemäß Hauptantrag und den Hilfsanträgen 1 bis 4 jeweils gleichlautend an die jeweiligen Patentansprüche 1 und 2 anschließen.

- 32 -

**11.** Die Kostenentscheidung beruht auf § 84 Abs. 2 PatG i. V. m. § 91 Abs. 1 ZPO. die Entscheidung über die vorläufige Vollstreckbarkeit auf § 99 Abs. 1 PatG i. V. m. § 709 ZPO.

Winkler        Dr. Hartung        Voit        Dr. Zehendner        Höppler

Be

# EXHIBIT 8

Certified Translation of a German Document – Ruling by the Federal Supreme Court
for Patent Matters of 5 April 2006 in the Matter of Cisco Systems Inc vs. Teles AG

---

p.1

Stationery for rulings of the Federal Supreme Court for Patent Matters

(rubber stamp received.... 2 June 2006 ... attorneys Bardehle.....)



(Federal Eagle)

Federal Supreme Court for Patent Matters

IN THE NAME OF THE PEOPLE

Judgment

(docket no.) 4 Ni 61/04(EU)

docket joined with 4 Ni 41/05(EU)

Ordered on 5 April 2006
May
Secretary as
Clerk of the court



In the matter for the nullification of a patent

Parties involved:

1.Cisco Systems Inc, represented by its president and CEO J.T. Chambers, 170 West
Tasman Drive, San Jose, California 95134 ( USA)

    petitioner ( 4 Ni 42/05)

represented by patent attorneys licensed engineer CEIPI J.Lang ( Bardehle Pagenburg
Dost Altenburg Geissler), 1 Galileiplatz, 81679 Muenchen

2.Quintum Technologies Inc. represented by its CEO Cheng T.Chen, 71 James Way, Eatontown, NJ 07724 (USA)

 petitioner ( 4 Ni 42/05)

represented by : patent attorney lic.phys. Dr.H. Heunemann ( Vossius & Partner) 3 Siebertstr., 81675 Muenchen

Vs.

p.2

TELES AG Informationstechnologien, represented by the members of the board Prof.Dr.S.Schindler, J.Bastian, A.Krueger,J.Schwarzer,R.Wegener,O.Schulz, 2-4 Dovestr., 10587 Berlin

 respondent

represented by patent attorney DiplPhys. Dr.W.Mueller ( Maikowski & Ninnemann ) 54-55 Kurfuerstendamm, 10707 Berlin

 regarding the European patent EP 0 929 884 ( DE 597 00 636 )

the 4th chamber of the Federal Supreme Court for Patent Matters has ruled after a hearing of 5 April 2006 acting with the participation of presiding judge Ms Winkler and the following judges DiplPhys. Dr.Hartung, Voit, Dipl.Phys. Dr.Zehendner and Dipl.-Ing(Univ.) Hoeppler as follows:

 I. The European patent EP 0 929 884 is hereby declared void as regards the territory of the Federal Republic of Germany.

 II. Respondent to pay the legal fees of the dispute.

 III... This judgment is enforceable provisionally if a security in the amount of 120 % of the amount to be enforced has been posted.

p.3

Facts of the matter:

The respondent holds by virtue of registration the European patent EP 0 929 884 ( the patent at issue ) which has been issued effective for the territory of the Federal Republic,

which has been registered claiming the priorities of the German patent application DE 196 42 063 of 7 October 1996 and of the German patent DE 196 45 368 of 23 October 1996. The patent at issue has been issued in the procedural language German, and is registered with the German Patent and Trademark Office as no. 597 000 636; it consists in its issued form 21 claims which are attacked in their entirety. The claims 1 and 2 of the patent are defined as follows :

1. Method for the transmission of data from a first switch to a second switch which are part of a line-switching network or which have access to a line-switching network, either by line-switching or by packet-switching, consisting of the following steps :

a) formation of a connection via the line-switching network from the first switch to the access point of a packet-switching network,

b) transmission of data by line-switching network from a first switch to an access point for a packet-switching network,

c) packaging of data if there are not existing as data packages and packet-switching transmission of the data packages via the packet-switching network from the access point to the second switch,

d) repeated checking whether a control signal produced by a user of an end appliance or by network management is existing in order to move to a line-switching connection to a second switch,

p.4

e) formation of a line-switching connection from the first switch to the second switch via the line-switching network if the corresponding control signal exists if this is not already existing,

f) change from a line-switching data transmission during an existing connection and transmission of data to a second switch.

2. Method for the transmission od data from a first switch to a second switch which is as well part of a line-switching network as also of a packet-switching network or which has access to such networks, either by line-switching or by packet-switching, consisting of the following steps:

a) packaging of data in the first switch if the data are not already existing as data packets,

b) transmission by packet-switching via the packet-switching network to the second switch,

c) repeated checking whether a control signal produced by a user of an end appliance or by network management is existing in order to move to a line-switching connection to a second switch,

d) formation of a line-switching connection from the first switch to the second switch via the line-switching network if the corresponding control signal exists if this is not already existing,

e) change from a line-switching data transmission during an existing connection and transmission of data to a second switch

p.5

As regards the other claims, referenced back to claims 1 and 2 either directly or indirectly to claims 3 – thru 21 in the issued form reference is made to the patent document EP 0 929 884 B1.

The respondent has defended the patent at issue in the nullification procedure against the form in which it was issued only in a limited manner in claims 1 thru 16.

With their nullification petition petitioners claim that the object of the patent at issue is not new, even in its limited form as defended and that it is not based on inventor's activity. In order to support their argument petitioners make reference to the following written descriptions; the enumeration as used by petitioner no.1 ( NK with consequent numbering ), if applicable the numbering as used by petitioner no.2 in brackets and finally the enumeration of the petitioner no.2 ( K with subsequent numbers) :

NK 7 – thru K 21 (page 8 of the document translated)

Petitioners ask

that the European patent EP 0 929 844 be declared void effective for the territory of the Federal Republic of Germany.

Respondent ask

that the petitions be dismissed in the extent of the claims 1 thru 16 as issued of the patent at issue ( main petition ),

additional with the proviso that the patent claims 1 and 2 are worded as follows and that the claims 3 thru 16 remain in the form as issued ( additional petition no.1) :

1. Method for the transmission of data from a first switch to a second switch which are part of a line-switching network or have access to a line-switching network, either via line-switching or via packet-switching, consisting of the following steps:

a) formation of a connection via the line-switching network from the first switch to an access point of the packet-switching network *when the packet-switching network is not the X.25 packet-switching part of an ISDN,*

p.9

b) line-switching transmission of data from a first switch to the access point of a packet-switching network,

c) packaging of data if these don't exist yet as data packets and packet-switching transmission of data packets via the packet-switching network from the access point to the second switch,

d) repeated checking whether there is a control signal for transfer to a line-switching connection to the second switch,

e) formation of a line-switching connection from the first switch to the second

f) switch over the line-switching network when there is a corresponding control signal if such a line-switching connection does not already exist,

g) change to a line-switching transmission during an existing connection and transfer of the data to a second switch.

2. A Method for the transfer of data from a first switch to a second switch which are as well part of a line-switching network as of a packet-switching network or have access to such networks *when the packet-switching network is not the X.25 packet-switching part of an ISDN*, either via line-switching or via packet-switching, consisting of the following steps :

a) packaging of data in the first switch if the data are not yet existing as data packets,

b) packet-switching transmission of data packets via the packet-switching network to the second switch,

p.10

c) repeated checking whether there is a control signal for transfer to a line-switching connection to the second switch in case the corresponding control signal is existing if this is not yet existing,

d) formation of a line-switching connection via the line-switching network to the second switch if a corresponding control signal is present, if it has not already been present,

e) change to a line-switching data transmission during an existing connection and transmission of data to the second switch,

further, additionally, contingent upon the main petition being unsuccessful with the proviso that the claims 1 and 2 are worded as follows and that the claims 3 thru 16 remain in the form in which the patent was issued ( additional petition no.2) :

1. Method for the transmission of data *of a telephony application* from a first switch to a second switch which are part of a of a line-switching network or have access to a line-switching network, either via line-switching or via packet-switching, consisting of the following steps:

a)formation of a connection via the line-switching network from the first switch to an access point of the packet-switching network *when the packet-switching network is not the X.25 packet-switching part of an ISDN,*

b)line-switching transmission of data from a first switch to the access point of a packet-switching network,

p.11

c) packaging of data in the first switch if the data are not yet existing as data packets and transmission of the data packets by packet-switching network from the access point to the second switch,

d) repeated checking whether there is a control signal for transfer to a line-switching connection to the second switch in case the corresponding control signal is existing if this is not yet existing,

f)  formation of a line-switching connection from the first switch to the second switch via the line-switching network if a corresponding control signal is existing, unless this is not yet existing,

g)  change to a line-switching data transmission during an existing connection and transmission of data to a second switch.

2.Method for the transmission of data *of a telephony application* from a first switch to a second switch which are as well part of a line-switching network as of a packet-switching network or have access to such networks *when the packet-switching network is not the X.25 packet-switching part of an ISDN,* either via line-switching or via packet-switching, consisting of the following steps:

a) packaging of data in the first switch if the data are not yet existing as data packets,

b)transmission of data packages by packet-switching via the packet-switching network to the second switch,

c) repeated checking whether there is a control signal for transfer to a line-switching connection to the second switch in case the corresponding control signal is existing if this is not yet existing,

p.12

d) formation of a line-switching connection via the line-switching network to the second switch if the corresponding control signal is existing, unless this is not yet existing,

e)change to a line-switching data transmission during an existing connection and transfer of data to a second switch.

Further additionally upon the condition that the main petition is not successful with the proviso that the claims 1 and 2 are worded as follows and that the claims 3 thru 16 remain in the form in which the patent was issued ( additional petition no.3 ) :

1. Method for the transmission of data *of a telephony application* from a first switch to a second switch which are as well part of a line-switching network as of a packet-switching network or have access to such networks *when the packet-switching network is not the X.25 packet-switching part of an ISDN*, either via line-switching or via packet-switching, consisting of the following steps:

a) formation of a connection via the line-switching network from the first switch to an access point of a packet-switching network *when the packet-switching network is the internet,*

b) data transmission by line-switching from the first switch to an access point for  a packet-switching network,

c) packaging of data in so far as these are not yet existing as data packets and transmission of data packets by packet-switching via the packet-switching network from the access point to the second switch,

p.13

d) repeated checking whether there is a control signal for transfer to a line-switching connection to the second switch in case  the corresponding control signal is existing if this is not yet existing,

e) formation of  a line-switching connection via the line-switching network to the second switch if the corresponding control signal is existing, unless this is not yet existing,

f) change to  a line-switching data transmission during an existing connection and transfer of data to a second switch.

2.Method for the data transmission *of a telephony application* from a first switch to a second switch which are as well part of a line-switching network as of a packet-switching network or have access to such networks *when the packet-switching network is not the X.25 packet-switching part of an ISDN*, either via line-switching or via packet-switching, consisting of the following steps:

a) packaging of data in the first switch if the data are not yet existing as data packets,

b) data packet transmission by packet-switching via the packet-switching network to the second switch,

c) repeated checking whether there is a control signal for transfer to a line-switching connection to the second switch in case  the corresponding control signal is existing if this is not yet existing,

d) formation of  a line-switching connection via the line-switching network to the second switch if the corresponding control signal is existing, unless this is not yet existing,

p.14

e) change to a line-switching data transmission during án existing connection and transfer of data to a second switch.

Further additionally upon the condition that the main petition is not successful with the proviso that the claims 1 and 2 are worded as follows and that the claims 3 thru 16 remain in the form in which the patent was issued (additional petition no.4) :

1. Method for the data transmission of *a telephony application* from a first switch to a second switch *when the data firstly are transmitted from at least one telephone to a first switch and when further*
*aa)only one  telephone transmits data to a first switch, and this telephone produces these data as analogue data or as not packaged digital data,*
*bb) if several telephones transmit data to the first switch and if at least one of these telephones produces the data as analogue data or as not packaged  digital data,*
*and when both switches* are part of a line-switching network or have access to such nets, either by line-switching or by packet-switching consisting of the following steps:
*a)* formation of a connection via the line-switching network from the first switch to an access point of a packet-switching network *when the packet-switching network is the internet,*
*b)* data transmission by line-switching from the first switch to the access point of a packet-switching network,

p.15

c) packaging of data if these are not yet existing as data packets and transmission of data packets by packet-switching network from the access point to the second switch,
d) repeated checking whether there is a control signal for transfer to a line-switching connection to the second switch in case  the corresponding control signal is existing if this is not yet existing,
e) formation of a line-switching connection from the first switch to the second switch via the line-switching network if the corresponding control signal is existing, unless it is not yet existing,
f) change from a data transmission by line-switching during an existing connection and data transmission to the second switch.

2. Method for the data transmission *of a telephone application* from a first switch to a second switch *when the data are transmitted from at least one telephone to a first switch and when in this process*
*aa) if only one telephone transmits data to the first switch this telephone produces the data as analogue data or as not packeted digital data*

*bb) if several telephones transmit data to the first switch if at least one of these telephones produces the data as analogue data or as not packaged digital data,*

*and when both switches* are part of a line-switching network as wells of a packet-switching network of have access to such networks *and when the*

*p.15*

*packet-switching network is the internet,*
either via line-switching or via packet-switching consisting of the following steps:
a) packaging of data in the first switch if the data are not existing as data packets,
b) transmission of data packets by packet-switching via the packet-switching network to the second switch,
c) repeated checking whether there is a control signal for transfer to a line-switching connection to the second switch in case the corresponding control signal is existing if this is not yet existing,
d) formation of a line-switching connection from the first switch to the second switch via the line-switching network if the corresponding control signal is existing, unless it is not yet existing,
e) change to a data transmission by line-switching during an existing connection and transfer of data to a second switch.

The respondent having at first filed 6 additional petitions has during the hearing of 4 April 2006 discontinued pursuing the originally filed additional petitions 4 and 6. She maintains that the patent at issue is patentable in the extent in which it is defended, as limited, maintaining additionally dependent upon the main petition being unsuccessful that the patent is patentable in the extent of the limitations delineated in the additional petitions.

## Reasons for the Ruling

1. The suits are admissible and are firstly in so far justified as the respondent did not defend any more the patent at issue and thereby limited herself in a permissible manner ( cf. BGH  GRUR 1956,409 Spritzgussmaschine I ; BGH GRUR 1960,542 – Flugzeugbetankung ( translator's note: these rulings are quoted by key words, it is pointless to translate these key words, nobody would recognize these rulings )

p.17

The petitions are also admissible and justified and as a consequence the defended patent is declared void effective for the territory of the Federal Republic of Germany because

the patent could not be maintained as valid neither in the form in which it was issued according to the main petition nor in the form acc.to the additional petitions because their objects are not patentable.

2. Expert in this sense would be a development engineer in the field of telecommunications with a degree after successful studies at a university or comparable institution, with particular expertise in the field of data transmission technology via networks.

As to the main request:

3. The patent claims 1 and 13 acc. to the main request describe – organized by their characteristics – a procedure with the following specifications:

Patent claim no. 1

1.1.    1.Method for transmitting data from a first switch to a second switch,
1.2.    which are part of a line-switching network or have access to a line-switching
1.3.    either by line-switching or by packet-switching consisting of the following steps:
1.4.    a) formation of a connection by the line-switching network from the first switch to the access point of a packet-switching network
1.5.    b) transmission of data from a first switch to the access point of a  packet-switching network
1.6      c) packaging of data if these are not yet existing as data packets
1.7      and transmission of data packets by packet-switching network via the packet-switching network from the access point to the second switch

p.18

1.8.    d)repeated testing whether there is a control signal to change to a line-switching
        connection to the second switch,
1.8.1   induced by the user of an end appliance or by network management,
1.9      e) formation of a line-switching connection from the first switch to the second
        switch via the line-switching network if the corresponding control signal exists
        unless it is not yet existing,
1.10    f) change to a line-switching data transmission during an existing connection
1.11    and data transfer to the second switch.

Patent claim no.2 :

2.1     2. Method for data transmission from a first switch to a second switch,
2.2     which is as well part of a line-switching network as of a packet-switching network
        or has access to such networks,

2.3    either by line-switching or packet-switching, consisting of the following steps

2.4    a) packaging of data in the first switch, if the data are not yet existing as data packets,

2.5    b) transmission of data packets by packet-switching via the packet-switching network to the second switch,

2.6    c) repeated testing whether there is a control signal to change to a line-switching connection to the second switch,

2.6.1    induced by the user of an end appliance or by network management,

2.7    d) formation of a line-switching connection via the line-switching network to the second switch if the corresponding control signal exists unless it does not yet exists,

2.8    c) change to a line-switching data transmission during an existing connection

p.19

2.9    and transfer of data to the second switch.

4.The object of the patent claim acc. to the main petition is not based on an inventor's activity. This was accessible for an expert in a pretty obvious manner from the state of the art acc. to the press release NK22 in connection with his expert knowledge which is also documented by the state of the art.

a) the press release NK22 concerns a method for the data transfer from a first switch to a second switch ( p.1 of 2, 1st paragraph of the text body: internet telephony servers - switches – for the routing of fax, voice mail and telephone data – spec. 1.1), which are part of a line-switching network or have access to line-switching networks ( p.1 of 2, 6th paragraph of the text body : the server could switch the transmission back to the public network; the internet telephony servers therefore have – apart from their access to the internet – at least also access to a line-switching network, comp. to this also p.1 of 2, 2d and 5th paragraph of the text body : internet and public networks ( traditional telecommunications network) spec. 1.2). Finally the transmission of data is effected either by line-switching or by packet-switching ( p.1 of 2, 5th and 6th paragraph of the text body: Eventually the network management software will be able to transparently route traffic over either internet or the public network; via line-switching : public network/traditional telecommunications network or by package-switching: Internet – spec. 1.3 ).

Because the method described in NK22 routes the data traffic either by a line-switching network or a packet-switching network ( p.1 of 2,6th paragraph of the text body : transparently route traffic over either Internet or the public network ) and since the choice of the route ( of the network ) depends upon the cost and the quality of the transmission ( p. 1of 2, 2d and 7th paragraph of the text body: cost savings, cost efficiencies, quality, reliability ) the expert finds it appropriate to verify ob the choice of the data transmission route made here meets the requirements of cost savings and transmission quality or whether possibly it is necessary to change the data transmission. Such a change

p.20

to a line-switching data transmission ( public network, traditional telecommunications network = during an existing ( packet-switching) connection (Internet) and the subsequent ( line-switching) data transmission is taken by the expert for the case of an overload of the internet from NK22, compare p.1 of 2, 6th paragraph of the text body : If the Internet was too congested, for instance, the server could switch back to public network – specifications 1.10 and 1.11. Since the choice of the connection – packet-switching or line-switching is made by network management software ( p.1 of 2, 6th paragraph of the text body : the network management software will be able to transparently route traffic over either Internet or the public network) the expert deploys such network management in order to check repeatedly whether there is such a control signal for the change to a line-switching connection by a line-switching network emitted by the network management ( specifications 1.8., 1.8.1). In case that there is such a corresponding control signal for a change to a line-switching data transmission the expert will provide by necessity the formation of a line-switching connection by the line-switching network if such a line-switching network is not already existing ( spec. 1.9 ).

Therefore the specs 1.1 thru 1.3,1.8, 1.8.1 and 1.9 thru 1.11 of Claim 1 acc. to the main petition are known or are at least accessible for the expert from NK22.

a)  The expert is because of his technical knowledge familiar with the formation of a connection as required by Claim 1 from the first switch to the packet-switching network including an access point of a packet-switching network and the subsequent transmission of data packets acc. to specs. 1.4 thru 1.7 , he installs access to the packet-switching network ( Internet ) described in NK22 according possibilities of access the internet existing and known to him, as this is described implicitly already in NK22 ( compare p.1 of 2,5[th] paragraph of the text body). As evidence for this expert knowledge which is being applied here reference is made to the treatise K8 which describes switches on p.10 at fig. 6 and 7 and the corresponding text

p.21

referencing "Integrated Switching" and "Integrated Access" which at least have access to a line-switching network Access to a package-switching network is made by the formation of a connection by a line-switching network and by line-switching transfer of data to the access point of a packet-switching network ( Fig.7 right column 1st paragraph ACCESS LINE – specs 1.4 and 1.5 ) Data are ( by necessity ) packaged in so far as they are not yet existing as data packets and are subsequently transmitted by packet-switching to a second switch ( p.10 left column under "Integrated Switching", 1st paragraph – specs 1.6 and 1.7 ). Accordingly there are described switches and access points to packet-switching network in a supplementary manner in NK9, compare particularly figures 1 thru 10.

Thus the expert arrives already without inventor's thinking to the object of patent claim 1 according to the main petition.

b)  The respondent's argument that NK22 does not explicitly a first and second switch as well as a packaging installation may be true, however the expert will apply

because of his expert's knowledge the mentioned installations in order to carry out the method described in NK22, as shown above at 4 b.

The respondent has further argued that the procedure described in NK22, in particular the procedure of "switching back" of a transmission to telecommunications network as mentioned there (compare NK22, p.1 of 2, 6th paragraph of the text body: the server could switch the transmission back to the public network ) would not be able to make an expert to change to a line-switching data transmission during an existing connection acc. to specs. 1.10 of claim 1. In particular it would not become clear how exactly the change would be carried out during an existing connection and whether that change would occur during an existing connection. Also acc. to NK22 the type of data transmission would be determined already before the beginning of the data transmission. Granted that NK22 may - according to its wording – describe only in a wholesale manner a (back-) change of ( packet-switching internet )

p.22

data transmission to a line-switching data transmission. This change however occurs during an existing (packet-switching) connection because an overload of the internet ( and therefore of the existing packet-switching connection ) induces the change acc. to NK22, therefore the change occurs during an existing connection of this kind. Nothing more is required by claim 1 of the patent at issue in spec. 1.10. Whether and how the manner of the data transmission is possibly determined before its beginning does not matter for the change during the existing connection.

Even if however spec. 1.10 would detail further details in regard to the act of changing, the existence of such details would not justify to hold this to be inventor's activity. The expert is aware as regards such a procedure of changing from a line-switching connection to a packet-switching connection – as well as in the case of the reverse procedure – a number of different procedures as well as their details. To document this expert's knowledge one might quote from the state of the art in a supplementary way K8 as well as K9, among others the Japanese print NK25, here fig.3,4,7 and 8 and the corresponding description text, but also the prints dealing with ISDN, namely NK13 and NK14. The last mentioned prints document also – as well as K8 and K9 – the expert's knowledge regarding the terms 'first switch' and 'second switch', access point, line-switching transmission and packet-switching transmission, transmissions in general.

5. The procedure as regards the ancillary patent claim acc. to the main petition is also not suitable for patenting because of a lack of inventor's activity vis-à-vis the state of the art.

a) Claim 2 acc. to the main petition is distinguished from the procedure acc. to claim 1 firstly by the following: acc. to spec. 2.2 the first and second switch are as well a component of a line-switching network as of a packet-switching network or that they have access to such networks. Therefore in this procedure for claim 2 the procedural steps a) and b) acc. to spec. 1.4 and 1.5 of claim 1 are missing. During the first procedural step a) of claim 2

p.23

(spec.2.4) data are packaged in the first switch, in so far as the data-are not present as data packages, and in a second step b) the data packages are transmitted by packet-switching by a packet-switching network to the second switch ( spec. 2.5 ). The procedural step b) of claim 2 is followed by steps c) thru e) ( spec. 2.6 thru 2.9 ) with identical wording to the procedural steps d) thru f) acc. to claim 1 ( spec. 1.8 thru 1.11).

b) All parts of this reasoning as regards spec. 1.1 thru 1.3, 1.8, 1.8.1. and 1.9 thru 11 of patent claim 1 acc. to the main petition as described in paragraph 4 are equally applicable for the corresponding specs 2.1 thru 2.3 and 2.6,2.6.1 and 2.7 thru 2.9 of the procedure as regards claim 2.

Since acc. to the procedure for claim two the first and the second switch are as well part of a line-switching as of a packet-switching network or have access to such networks ( spec.2.2 ) the procedure acc. to claim 2 does not require an access point to a packet-switching network and a data transmission by line-switching from the first switch to this access point. The expert will read those server described in NK22 for the first and second switch acc. to claim 2. A packaging of data in so far as they are not existing as data packages is provided for by the expert naturally in order to be able to transmit these data by packet switching (specs 2.4 and 2.5 ), compare for this the reasoning at paragraph 4b).

Thus the expert has reached without inventor's activity the object of patent claim 2 acc. to the main petition.

c) As regards the respondent's reasoning reference is made to the reasoning at paragraph 4c) which apply accordingly also to the object of patent claim 2 acc. to the main petition.

p.24

### As to the additional petition no.1:

6.The objects of claim 1 and 2 acc. to the additional petition no.1 are not based on inventor's activity.

a) Claim 1 acc to additional petition no.1 – and corresponding to this claim 2 – are distinguished as to the subject matter from claim 1 and claim 2 acc. to the main petition by the fact that spec. 1.4 and 2.2 have the following wording ( modifications are highlighted ):

### Patent claim 1:

1.4    a) formation of a connection thru the line-switching network from the first switch to an access point of a packet-switching network *when the packet-switching network does not constitute the X.25 package-switching part of an ISDN,*

### Patent claim 2:

2.2.    which are as well part of a line-switching network as well of a package-switching network or have access to such networks *when the packet-switching network does not constitute the X.25 package-switching part of an ISDN,*

b) As discussed above in the context of the main petition -- compare paragraph 4a) thru 4c) and 5a) thru 5c) - the described package-switching network described in NK22 ( compare p.1 of 2, header as well as paragraph 1 of the text body ) is the internet, therefore not the X.25 component of the ISDN. Also those packet-switching networks mentioned in the list of docs for the expert knowledge K8, NK9 and NK25are not limited to the X.25 packet-switching part of an ISDN. The characteristic mentioned n claims 1 and 2 "when the packet-switching network does not constitute the X.25 package-switching part of an ISDN" can therefore

p.25

not justify the patentability of objects of claims 1 and 2 acc. to the additional petition no.1.

As to the additional petition no.2:

7.Also the objects of claims claim acc. to the additional petition no.2 are not based on inventor's activity.

   a) claim 1 acc. to additional petition no. 2 -- and correspondingly with this claim 2 -- are distinguished from claim 1 and claim 2 acc. to the main petition by the fact that spec. 1.1 and 1.4 and 2.1 and 2.2. are worded as follows ( modifications are highlighted ):

Patent claim 1:

1.1.    1. procedure for the transmission of data *of a telephony application* from the first switch to the second switch,

1.4.    a) formation of a connection thru a line-switching network from the first switch to an access point of a packet-switching network *when the packet-switching network does not constitute the X.25 package-switching part of an ISDN,*

Patent claim 2:

2.1    2. procedure for the transmission of data *of a telephony application* from the first switch to the second switch,
2.2    which is as well part of a line-switching network as well as of a packet-switching network or has access to such networks *when the packet-switching network does not constitute the X.25 package-switching part of an ISDN,*

p.26

b) Also as regards the object of patent claims 1 and 2 acc. to the additional petition no.2 the reasoning as regards claim 1 and 2 acc. to the main petition at paragraph 4a) thru 4c) and 5a) thru 5c) are applicable in the same manner.

As discussed above as regards the main petition – comp. the mentioned paragraphs – with the procedure for data transmission which is known acc. to NK22 in the same manner data of a telephony application are transmitted ( p.1 of 2, 1st paragraph of the text body : internet telephony servers...to route (their) faxes, voice mail and phone calls over the internet ). Also with the data transmissions mentioned in the docs for the expert knowledge K8 data of a telephony application are transmitted ( comp. K8 .10 telephone descriptions in fig.6 and 7 ). Also those docs NK13 and NK14 dealing with ISDN systems refer the expert - already because of the definition of ISDN – to the data transmission of a telephony application. Therefore the element incorporated into claims 1 and 2 "transmission of data *of a telephony application* cannot be the basis of patentability of the objects of claim 1 and 2.

The further element incorporated into claims 1 and 2 "*when  the packet-switching network does not constitute the X.25 package-switching part of an ISDN*", also does not supply a basis for the patentability of the objects of claims 1 and 2 of the additional petition no.2, as has been shown in the reasoning to claims 1 and 2 of the additional petition no2 at paragraphs 6a) and 6b).

As to the additional petition no.3:

8. The objects of claims 1 and 2 acc. to the additional petition no.3 are also not based on inventor's activity.

p.27

c)  a) Claim 1 acc. to additional petition no.2 – and corresponding with this claim 2 – are distinguished from claim 1 and 2 acc. to the main petition by the by the fact that spec. 1.1 and 1.4 and 2.1 and 2.2. are worded as follows ( modifications are highlighted ):

Patent claim no.1:

1.1    1. procedure for data transmission *of a telephony application* from the first switch to the second switch,

1.4    a) formation of a connection by the line-switching network from the first switch to the access point of a packet-switching network *when the package-switching network is the internet,*

Patent claim no.2:

2.1    2. procedure for the data transmission *of a telephony application* from the first switch to a second switch

1.5    2.3    which is as well part of a line-switching network as part of a packet-switching network or does have access to such networks *when the package-switching network is the internet,*

b) As regards the objects of patent claims 1 and 2 acc. to the additional petition no.3 the reasoning made regarding claims 1 and 2 acc. to the main petition at paragraphs 4a) thru 4c) and 5a) thru 5c).

As discussed above for additional petition no.2 – comp. paragraphs 7a) and 7b) – in particular with the procedure for data transmission evident from NK22 data of a telephony application are transmitted (p.1 of 2, 1st paragraph of the text body: internet telephony servers...to route (their) faxes, voce mail and phone calls over the internet). The same applies for the data transmissions which are quoted as an example in the docs for the expert knowledge K8,

p.28

NK13, NK14 and which thereby are known. Therefore the element incorporated into claims 1 and 2 "transmission of data *of a telephony application* cannot be the base for the patentability of the objects of claims 1 and 2 acc. to the additional petition no.3.

As also reasoned regarding the main petition – comp. paragraphs 4a) thru 4c) and 5a) thru 5c) the packet-switching network described in NK22 is the internet ( comp. p.1 of 2, title and particularly 1st paragraph of the text body). The element incorporated into claims 1 and 2 *"when the package-switching network is the internet"*,therefore cannot form the basis for the patentability of the objects of claim 1 and 2 acc. to additional petition no.3

As to additional petition no.4:

Also the objects of claims 1 and 2 acc. to the additional petition no.4 are not based on inventor's activity.

a) claim 1 acc. to additional petition no.4 – and corresponding to this claim 2 – are distinguished as to the subject matter from claim 1 and claim 2 acc.to the main petition by the fact that spec. 1.1 and 1.4 and 2.1 thru 2.2. are worded as follows ( modifications are highlighted ):

Patent claim 1:

1.1    1. Procedure for data transmission *by a telephony application* from a first switch to a second switch, *when the data firstly are transmitted from at least one telephone to the first switch, and thereby*

p.29

aa) *in so far as only one telephone transmits data to the first switch this telephone produces the data as analogue data or as not packaged digital data,*

> bb) in so far as several telephones transmit data to the first switch, at least
> one of these telephones produces these data as analogue data or as not
> packaged digital data,

1.2 *and when two switches* are components of a line-switching network or have access
to a line-switching network,

1.3 either by a line-switching network or by a packet-switching network, consisting
of the following steps:

1.4 a) formation of a connection by the line-switching network from the first switch
to the access point of a package-switching network *when the package-switching
network is the internet.*

Patent claim 2:

2.1 2.Procedure for the transmission of data *of a telephony application* from the first
switch to the second switch *when the data firstly are transmitted from at least one
telephone to the first switch, and thereby*

> aa) in so far as only one telephone *transmits data to the first switch this
> telephone produces the data as analogue data or as not packaged digital data,*

> bb) in so far as several telephones transmit data to the first switch, at least
> one of these telephones produces these data as analogue data or as not
> packaged digital data,

2.2 *and when both switches* are part of a line-switching network as well as of a package-
switching network or have access to such networks *when the package-switching
network is the internet.*

p.30

b) Also as regards the objects of patent claims 1 and 2 acc. to the additional petition
no.4 the reasoning made regarding claims 1 and 2 acc. to the main petition at
paragraphs 4a) thru 4c) and 5a) thru 5c).

As also discussed as regards additional petitions 2 and 3 – compare paragraphs 7a) and
7b) and 8a) and 8b) – with the procedure for data transmission described in NK22 and
which therefore is known data of a telephony application are transmitted ( p.1 of 2, 1st
paragraph of the text body: internet telephony servers...to route (their)faxes, voice mail
and phone calls over the Internet ). Therefore the element incorporated into claims 1
and 2 "transmission of data of *a telephony application*" cannot be the basis for the
patentability of the objects of claims 1 and 2 acc. to the additional petition no.4

Since – as is known, comp. the paragraph above – data of a telephony application are
transmitted the expert provides for at least one telephone from which data are
transmitted to a network, in particular to the first switch. Such a procedure is fairly
obvious to the expert by virtue of his expert's knowledge and his expert's abilities, and it
is also referenced by the state of the art, comp. for example K8, p.10 fig. 6 and 7.
Further it was customary to an expert at the date of priority of the patent at issue that
telephones produce the data they produce as analogue data or as not packaged digital

files, this is also documented in K8 ( comp. p.8, right side, left paragraph : the PSTN has been designed and optimized primarily to transport voice signals ( i.e. continuous signal – those are analogue data); and further p.9 left column 2 paragraph reading : voice is presented to the network over the access media – transmitted to the first switch – as digital data ( i.e. a bit stream – meaning as not packaged digital files with f.e. 64 kbits/s). At least one telephone needs to be provided for for a thus configured data production and transmission, at the expert's discretion. The change in wording "when both switches....are part" follows by necessity and does not provide new insight when compared with the applicable wording acc. to the main petition as well as the additional petitions 1 thru 3. Therefore also the entirety of the elements dealt with here

p.31

"....when the data are transmitted from at least one telephone to the first switch, and when

aa) in so far as only one telephone transmits data to the first switch this telephone produces the data as analogue data or as not packaged digital data,

bb) in so far as several telephones transmit data to the first switch, at least one of these telephones produces these data as analogue data or as not packaged digital data,

and when both switches...."

cannot be the basis for the patentability of the objects of claims 1 and 2 acc. to additional petition no.4.

Finally it was already argued regarding additional petition 3 - and also already regarding the main petition – ( comp. paragraphs 8a) and 8b) and 4a) thru 4c) and 5a) thru 5c) that the packet-switching network described in NK22 is the internet (comp. p.1 of 2, title and particularly the 1st paragraph of the text body).
Also the element provided for in claims 1 and 2 " when the packet-switching network is the internet" cannot be the basis for the objects of claims 1 and 2 of the additional petition no.4.

10. The patent claims 3 thru 16 which follow acc. to the main petition and the additional petitions 1 thru 4 with identical wording the claims of 1 and 2 share the same fate – to be declared void – of patent claims 1 and 2, each acc. to the main petition and the additional petitions 1 thru 4.

p.32

11.The ruling as to the legal fees is based on sect.84 subs.2 of the Patent Statute in connection with sect.91 subs.1 Civil Procedure Code, the ruling as to the provisional enforceability is based on sect.99 subs.1 of the Patent Statute in connection with sect.709 Civil Procedure Code.

Winkler, Dr.Hartung, Voit, Dr.Zehendner,Höppler

Making reference to my professional oath as a translator for the Free State of Bavaria I
hereby confirm that the above is a complete and correct translation of Ruling by the
Federal Supreme Court for Patent Matters of 5 April 2006 in the Matter of Cisco
Systems Inc vs. TELES AG

München, den 13 June 2006 ......................................
Dr.Donald Cramer





EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | ) | |
|---|---|---|
| CISCO SYSTEMS, INC., | ) | |
| 170 West Tasman Drive, | ) | |
| San Jose, California 95134 | ) | |
| Plaintiff, | ) | CIV. A. NO. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| TELES AG | ) | |
| INFORMATIONSTECHNOLOGIEN | ) | |
| Dovestr. 2-4, D-10587 Berlin, Germany | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND
## REQUEST FOR DECLARATORY JUDGMENT

Plaintiff Cisco Systems, Inc., files this Original Complaint and Request for Declaratory

Judgment against Defendant Teles AG Informationstechnologien.

### PARTIES

1.  Plaintiff Cisco Systems, Inc. ("Cisco"), is a corporation organized and existing

under the laws of the state of California, with its principal place of business at 170 West Tasman

Drive, San Jose, California 95134.

2.  Defendant Teles AG Informationstechnologien ("Teles"), is a foreign corporation

with its principal place of business at Dovestr. 2-4, D-10587 Berlin, Germany. Teles is

identified as the assignee of issued United States Patent No. 6,954,453 ("the '453 Patent"), the

subject of this suit. A copy of the '453 Patent is attached hereto as Exhibit "A."

### JURISDICTION AND VENUE

3.  This is an action for a declaration that each claim of the '453 Patent is invalid

and/or not infringed pursuant to the Patent Laws of the United States, 35 U.S.C. § 101, *et seq*.

Accordingly, subject matter jurisdiction of this Court exists under the Federal Declaratory

Judgment Act, Title 28, United States Code §§ 2201 and 2202, and under Title 28, United States Code §§ 1331 and 1338(a).

4.      Teles is not a United States resident and, on information and belief, has not filed a written designation of an agent for service of process pursuant to 35 U.S.C. § 293.  Accordingly, pursuant to 35 U.S.C. § 293, venue is proper in this district and this Court has personal jurisdiction over Teles.

## FACTS

5.      Teles has sued Cisco in Germany alleging that Cisco infringes certain of its German and European patents.

6.      Cisco has a reasonable apprehension that Teles will sue Cisco for infringement of the '453 Patent.  Among the information supporting this reasonable apprehension is a press release issued by Teles on or about October 17, 2005.  A copy of this press release is attached hereto as Exhibit "B."

7.      Teles states in its press release that it is the owner of the '453 Patent, issued by the United States Patent and Trademark Office on October 11, 2005.  Teles asserts that the '453 Patent is an "analogue" to the German and European patents on which it is currently suing Cisco in Germany.  In the press release, Teles threatens to sue Cisco in the United States for infringement of the '453 Patent as an expansion of the preexisting patent infringement litigation Teles is currently pursing against Cisco in Germany.

8.      Cisco believes and asserts that it does not infringe any valid claim of the '453 Patent.

## REQUEST FOR DECLARATORY JUDGMENT

9.      Plaintiff incorporates by reference paragraphs 1 through 8 as if fully set forth herein.

2

10. By reason of the foregoing facts, a ripe and justiciable controversy exists between the parties regarding whether the '453 patent is valid, and if so, whether Cisco has infringed it. *See* Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201, 2202.

11. Declaratory relief is necessary and appropriate in this case because the Court's judgment on the issues of patent invalidity and non-infringement will afford Cisco relief from the uncertainty and controversy surrounding Teles' threats to sue Cisco for patent infringement in the United States. Cisco has reasonable apprehension that Teles will file a patent infringement lawsuit at least because Teles has previously filed a patent action against Cisco in Germany on patents claimed by Teles to be "analogues" to the '453 Patent, and because Teles has threatened to expand that lawsuit into the United States. Accordingly, Cisco asks this Court to declare that each and every claim of the '453 Patent is invalid and/or not infringed.

12. Cisco is entitled to an award of costs and expenses, including reasonable attorneys fees, to be assessed against Teles in accordance with the provisions of 35 U.S.C. § 285 or other statutes.

## PRAYER FOR RELIEF

THEREFORE, Cisco respectfully requests that this Honorable Court grant the following relief against Teles:

A. a declaration that all claims of the '453 Patent are invalid;

B. a declaration that Cisco does not infringe any of the claims of the '453 Patent;

C. an award to Cisco of its costs and expenses, including reasonable attorneys fees, in accordance with the provisions of 35 U.S.C. § 285 or other statutes; and,

D. an award to Cisco any other relief, in law and in equity, to which the Court finds Cisco is justly entitled.

3

Dated: Oct. 18, 2005

David M. Schlitz
Bar No. 333369
Frederick G. Michaud
Bar No. 177675
BAKER BOTTS LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 639-7700

***Attorneys for Plaintiff,***
***Cisco Systems, Inc.***

Of Counsel:

Bart Showalter, Esq.
Douglas Kubehl, Esq.
BAKER BOTTS LLP
2001 Ross Avenue
Dallas, Texas 75201-2980
(214) 953-6500—phone
(214) 953-6503—fax

4



US006954453B1

(12) **United States Patent** (10) Patent No.: **US 6,954,453 B1**
Schindler et al. (45) **Date of Patent:** **Oct. 11, 2005**

(54) **METHOD FOR TRANSMITTING DATA IN A TELECOMMUNICATIONS NETWORK AND SWITCH FOR IMPLEMENTING SAID METHOD**

(75) Inventors: **Sigram Schindler**, Berlin (DE); **Andreas Illg**, Berlin (DE); **Karsten Lüdtke**, Berlin (DE); **Frank Paetsch**, Berlin (DE)

(73) Assignee: **Teles AG Informationstechnologien**, Berlin (DE)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/147,970**

(22) PCT Filed: **Oct. 7, 1997**

(86) PCT No.: **PCT/DE97/02363**

§ 371 (c)(1),
(2), (4) Date: **Mar. 23, 1999**

(87) PCT Pub. No.: **WO98/15933**

PCT Pub. Date: **Apr. 16, 1998**

(30) **Foreign Application Priority Data**

Oct. 7, 1996 (DE) .......................... 196 42 063
Oct. 23, 1996 (DE) .......................... 196 45 368

(51) Int. Cl.7 ................................. **H04L 12/66**
(52) U.S. Cl. .................... **370/352**; 370/395.2; 370/465
(58) Field of Search ................................ 370/352, 353, 370/354, 355, 356, 395.2, 395.21, 395.3, 395.31, 401, 402, 403, 404, 405, 465

(56) **References Cited**

U.S. PATENT DOCUMENTS

4,903,260 A 2/1990 Boettle et al. ................ 370/60
4,996,685 A 2/1991 Farese et al. .............. 370/58.1

(Continued)

FOREIGN PATENT DOCUMENTS

EP 732835 A2 9/1996
EP 0 818 907 A2 1/1998
EP 0 829 986 A1 3/1998

(Continued)

OTHER PUBLICATIONS

Draft Recommendation H.323: Visual Telephone Systems and Equipment For Local Area Networks Which Provide a Non–Guaranteed Quality of Service, International Telecommunication Union, May 28, 1996, 82 pages.
Y. Nakamura, et al., On a Hybrid Network System of Circuit Switching and Packet Switching, The Transactions of the IECE of Japan, vol. E 65, No. 6, Jun. 1982, pp 679, 680–686 with partial English translation (Abstract).

(Continued)

Primary Examiner—Kwang Bin Yao
(74) Attorney, Agent, or Firm—Christie, Parker and Hale, LLP

(57) **ABSTRACT**

A method for transferring data from a first switch to a second switch selectively by line-switching or by packet-switching as well as to a switch for carrying out the method. Data packets are thereby first transferred packet-switched through a packet-switching network to the second switch. With the presence of a corresponding control signal a line-switching connection is estalished from the first switch to the second switch and the data are then transferred through this connection

Where applicable a renewed change over to a packet-switching transfer is carried out. A flexible packet-switching or line-switching data transfer linked with dynamic costs between the junctions of a telecommunications network is enabled.

**38 Claims, 6 Drawing Sheets**



**Exhibit A**

# US 6,954,453 B1

Page 2

## U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,157,662 A | * | 10/1992 | Tadamura et al. | 370/352 |
| 5,347,516 A | | 9/1994 | Yoshida | |
| 5,598,411 A | * | 1/1997 | Matsukawa | 370/352 |
| 5,610,910 A | | 3/1997 | Focsaneanu et al. | 370/351 |
| 5,732,078 A | * | 3/1998 | Arango | 370/355 |
| 5,828,666 A | | 10/1998 | Focsaneanu et al. | 370/389 |
| 5,905,872 A | | 5/1999 | DeSimone et al. | 395/200.75 |
| 5,944,795 A | | 8/1999 | Civanlar | 709/227 |
| 5,995,606 A | | 11/1999 | Civanlar et al. | 379/201 |
| 6,078,564 A | | 6/2000 | Lakshman et al. | 370/235 |
| 6,125,113 A | * | 9/2000 | Farris et al. | 370/352 |
| 6,137,792 A | * | 10/2000 | Jonas et al. | 370/354 |

## FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0 848 527 A1 | 6/1998 |
| EP | 0 868 060 A1 | 9/1998 |
| EP | 0 884 860 A2 | 12/1998 |
| GB | 2283154 | 4/1995 |
| WO | WO 90/12466 | 10/1990 |
| WO | WO 95/25407 | 9/1995 |
| WO | WO 95/31060 | 11/1995 |
| WO | WO 97/07625 | 2/1997 |

## OTHER PUBLICATIONS

Low, C. et al., "WEB–In—An Architecture for Fast Deployment of In–Based Personal Services". Workshop Record. Intelligent Network. Freedom and Flexibility: Realising the Promise of Intelligent Network Services, Apr. 21, 1996, pp. 1–12.

Babbage, R. et al., "Internet Phone–Changing the Telephony Paradigm?" BT Technology Journal, vol. 15, No. 2, Apr., 1997, pp. 145–157.

* cited by examiner



*FIG. 1*



*FIG.2*
PRIOR ART



*FIG. 3*



*FIG.4*

## *FIG.5A*



## FIG.5B



US 6,954,453 B1

## METHOD FOR TRANSMITTING DATA IN A TELECOMMUNICATIONS NETWORK AND SWITCH FOR IMPLEMENTING SAID METHOD

### BACKGROUND OF THE INVENTION

The invention relates to a method for transferring data from a first switch to a second switch, selectively by line switching or by packet switching, and to a switch for carrying out the method.

The present-day situation in telecommunications is marked by a division between two different connecting and switching technologies. These are the synchronous line-switching technology (line-switching or circuit switching) and asynchronous packet-switching technology (packet-switching).

Line-switching connections use line switches, alias line switching equipment, between the individual line sections, each of which copies over 1 byte packets and has a corresponding buffer size. Packet-switching connections use packet switches, alias packet switching equipment, between the individual line sections of a network, each of which copies over multi-byte packets. The buffer size of a packet switch correspondingly amounts to n bytes where n stands for the number of bytes in the copied data packets. The term "switch" is used below so that it includes both a line switch of a line switching network and a packet switch of a packet switching network.

A line switch, alias line switching equipment, is called telecommunications apparatus (TK apparatus) in the private sector, and exchanges of the network supplies in the public sector. A packet switch, alias packet switching apparatus, is also called a router, an IP switch or a host computer.

Line switching connections are synchronous, i.e., data transfer is carried out substantially without any time delay from one line section to an adjoining line section through a switch (here, a line switching apparatus).

When a line-switching call is put through, a connection is continually provided in real time with the complete bandwidth of a channel between two points. Even if no useful information is being sent e.g., during a pause in telephone conversation, the transmission channel is occupied or engaged. Line-switching connections are expensive, particularly during telephone conversations since the costs accumulate irrespectively of the information actually transferred. The advantage of a line switching connection is that it is free of any time delay and has a fixed bandwidth.

The other important type of data exchange nowadays is the packet exchange. With packet exchange, data, e.g., audio data, video data or computer files, are packeted and transferred as data packets. Packet switching works in the asynchronous transfer mode, i.e., data is transferred time-delayed between two adjoining line sections by a switch (here, a packet switching apparatus). In the case of packet-switching exchanges, and quite differently from line-switching exchanges, a fixed connection does not have to be maintained. It is connection-less, i.e., each packet is treated individually and not in conjunction with others.

Packet switching is used in particular on the Internet. The data packets are termed there as IP packets (IP=Internet Protocol). Each IP packet contains a header which contains, inter alia, sender and receiver addresses. The IP packets form a data flow which is transferred through packet switching apparatus (alias IP switches or Routers or Host computers) in the Internet from the sender to the relevant receiver.

As a result of the length of the IP packets (16 bytes or more), a time delay occurs in the packet switching apparatus when copying. This time delay can be so great, when there is a heavy load on the packet switching apparatus which passes a data packet over the route to the destination address, that certain applications are no longer possible.

These delays are of considerable significance particularly in the case of the Internet. With Internet telephony, a cost-conscious caller uses the normal Internet with approximately 8 kbit/s bandwidth and a time delay of 0.5 seconds. When the Internet is overloaded, the time delay of the individual packets becomes so great that an acceptable conversation connection between telephone partners is no longer possible.

Internet telephony is marked by a great advantage that only the relevant local telephone charges to the next POP (Point of Presence), the access point to the Internet offered by an Internet Service Provider ISP, as well as time charges calculated by the ISPs for the length of the Internet access as well as volume charges, but not expensive long distance telephone charges are incurred.

From U.S. Pat. No. 4,996,685 a method and device are known which allow in an ISDN communications network, during an existing connection between a user and a host computer, a dynamic change between a line switching connection through an ISDN B channel and a packet-switching connection through an ISDN D channel. A command to change between a line-switching and a packet-switching connection thereby always emanates from the Host computer.

The method disclosed in U.S. Pat. No. 4,996,685 is restricted to undertaking on an ISDN connection a change between a line-switching and a packet-switching data transfer whereby a line-switching transfer is carried out on a B channel and a packet-switching transfer is carried out on the D channel. A method of this kind is indeed expedient to produce effective access from an end subscriber to a host computer, possibly an exchange point of the telephone network or an access point to the internet, but does not relate to the transfer of data between switches or routers of a network.

WO 95/31060 A1 describes a method for transferring data between an information source and a destination device wherein the data to be transferred are transferred as data packets. Depending on type of information of the data packets, the data are transferred automatically either solely by line-switching or solely by packet-switching. More particularly in the case of small amounts of data to be transferred, a packet-switching transfer is chosen and in the case of large amounts of data, a line-switching data transfer is chosen.

WO 95/25407 A1 describes a method for transferring data between a data source and transceiver either through a packet-switching network or a line-switching network. A control device is thereby provided which uses certain criteria to decide which network and which method of transfer is best suited for the transfer and then selects same.

U.S. Pat. No. 4,903,260 describes a digital coupling network and a coupling field chip which are designed so that paths leading from any input to any output can, depending on requirements, either be switched through for line-switching connections or can be preset for packet-switching information. Preset paths for the packet-switched information thereby form a network whose junctions lie in the coupling field chip of the coupling network. Those function devices which are required to send each data packet on the

US 6,954,453 B1

3

path preset for same are integrated in the coupling field chips. It is thus possible to divide up a single coupling network depending, on requirements, dynamically into a line-switching network and a packet-switching network.

## SUMMARY OF THE INVENTION

Based on the prior art, the present invention is concerned with the problem of providing a method for transferring data from a first switch to a second switch and providing a switching for carrying out the method which, depending on the data origin and headers of a user or network management system, allows flexible data transfer between the switches and more particularly cost-effective data transfer with real time properties.

The solution according to the present invention makes it possible during pocket-switching connection between two switches to achieve a dynamic change-over to line-switching connection without interrupting the connection. This is always advisable if a data build up of data packets exists before the switches of the packet-switching network. Through the establishment of a line-switching connection between the switches, a bypass is produced according to the invention on which data can be transferred with fixed bandwidth and slight time delays substantially in real time so that the data blockage is bypassed. Since a line switching connection is established only when required, i.e., when a packet-switching data transfer no longer has the desired bandwidth, the invention allows a flexible, most cost-effective data transfer.

The term "switch" is used in the sense of the present invention as already explained so that it includes both a line-switch of a line-switching network which copies over 1-byte packets, and a packet-switch (router) of a packet-switching network which copies over multi-byte packets. Data to be transferred can be any type of data, such as audio data, video data or computer files.

The present invention provides for carrying out the method according to the present invention, on switches which allow both line-switching and packet-switching, and combine the functions of a line-switch and a packet-switch. A switch according to the present invention has a packeting device for packeting and unpacketing data, an IP switching device for routing data packets, a line-switching device for establishing connections for switching through data channels and a control device which directs incoming data either to the IP switching device or to the line switching device depending on the control signals.

The corresponding control signals are triggered by a user, or at the command of a network management system and are transferred together with other signaling data to the switch. Alternatively, the switch itself automatically produces a corresponding control command upon exceeding a certain bandwidth of the packet-switching transfer.

The network which consists of interconnected switches according to the present invention forms an Intranet wherein data transfer can be interchanged dynamically between line switching and packet switching and ensures, under normal conditions, data transfer substantially in real time through the possibility of establishing when required, a line-switching connection of a fixed bandwidth. This is particularly important for internet telephony.

There are numerous useful areas for the switches according to the present invention. The switches according to the present invention can even replace conventional line-switches such as TK equipment and exchanges as well as packet switches. More particularly they can be used to build

4

up new networks with real time capacity (intranets) which can operate both by line-switching and by packet-switching.

The method according to the present invention is used in a first embodiment of the invention between two switches which are part of a line-switching network, but not directly part of a packet-switching network. Therefore, for a packet-switching transfer, first a connection is established through the line-switching network from a first switch to an access point to the packet-switching network (such as Internet access point). The data are transferred line-switched to the access point to the packet-switched network, where they are packeted if they do not already exist as packets, and are transferred from the access point packet-switched through the packet-switching network to the second switch. The data are thereby preferably already packeted in the first switch and transferred as data packets line-switched to the access point.

If both switches are part of both a line-switching network and a packet-switching network, then in a second embodiment of the method according to the present invention, a packet-switched data transfer can take place directly between the switches. With both embodiments, with a presence of a corresponding control signal, a line-switching connection is built up through the line-switching network directly to the second switch. If there is no longer any need for a line-switching transfer, then a change back to a packet-switching transfer takes place.

In one embodiment of the method according to the present invention, the data packets remain, after the change-over to a line-switching data transfer, as data packets and are then transferred as such by line-switching. In an alternative embodiment, the data packets are unpacketed, more particularly the headers of the data packets are removed, and only the data are then transferred by line-switching. The advantage of the first embodiment lies in the fact that if the data is once again to be transferred over the packet-switching network, they already exist as data packets and therefore time is saved when switching. The advantage of the second embodiment is that by removing the headers from the individual data packets, the effective bandwidth of the data transfer is increased.

In a preferred embodiment of the method according to the present invention, the same data channel is used for transferring the data packets from the first switch to the access point to the packet-switching network, and for transferring data from a first switch to the second switch through the line-switching network. This embodiment has the advantage that only one data channel is constantly engaged which, depending on the type of transfer, transfers data either to the access point to the packet-switching network, or to the other switch. More particularly in the case of an ISDN network, the same B data channel is used for both sending data to the access point to the packet-switching network, and for sending data through a bypass to another switch.

A data transfer from the first switch to the access point to the packet-switching network always takes place by line-switching. Thus compared with a packet-switching transfer to the access point (e.g., through an ISDN D channel), which is also possible, a larger and fixed bandwidth is ensured up to the access point. If an ISDN network exists, then an ISDN B channel is used as the data channel. Data packets are thereby sent through the B channel by applying them to the ISDN framework. This is known per se and fixed in the PPP protocol.

In a further embodiment, two data channels are provided for data transfer from a first switch, whereby through the

US 6,954,453 B1

5

first data channel the data packets are transferred to the access point to the packet-switching network, and through the second data channel the data are transferred to the second switch through line-switching. Depending on the type of transfer, either the one data channel or the other data channel is used. This has the advantage that data can be transferred simultaneously by packet-switching and line-switching. By way of example, less important data such as correspondence is transferred by packet-switching and audio data is transferred by line-switching.

In a further preferred embodiment of the present invention, with a line-switching data transfer between the first switch and the second switch or between the first switch and the access point to the packet-switching network, the data of several users are multiplexed on a data channel by forming sub-channels of fixed bandwidth. It is thereby provided that the data of one user are transferred after its selection by line-switching with a transfer rate which corresponds to only a fraction of the transfer rate of the bandwidth which is available as standard to the user.

More particularly with an ISDN network on the B channels sub channels of a bandwidth of 32, 16, 8, 4, 2 or 1 kbit/s are available. To implement the sub-channels, only each n-th byte or each n-th bit of an ISDN frame is copied over immediately and forwarded on the data channel to the next switch or to the computer network access point.

The formation of sub-channels on a data channel, possibly an ISDN B channel or a data channel of the GSM mobile phone system, allows additional flexibility for the data transfer. In many cases, it is entirely adequate that the bandwidth only uses up a part of the bandwidth which is available on a data channel. The use of the sub-channel thereby has an advantage for the user that according to the bandwidth of the sub-channel, lower costs are incurred but a fixed bandwidth is still available. Sub-channels of different bandwidth thereby define different service quality.

Thus a packet-switching transfer, a line-switching transfer with a part of the available bandwidth of a data channel, and a line-switching transfer with the complete bandwidth of the data channel are available as alternatives.

In a further development of the method according to the present invention, with a change from a packet-switching transfer to a line-switching transfer, the address information of the data packets are evaluated and sorted according to network topology. Thus for each data packet whose destination addresses relate to the same topological area of the network, a switch located in this area is selected, a line-switching connection (bypass) is established to the selected switch and the corresponding data or data packets are transferred to the switch by line-switching.

A classification of the data packets is thereby preferably carried out according to geographical points of view, whereby, for data packets whose destination address relate to the same geographical area, a switch located in this geographical area is selected and a line-switching connection is established to this switch. This allows a bypass to be effectively established since for data packets with roughly the same destination, a line-switching connection is established directly to a network junction which lies, regarding network topology, in the destination area of the data packets. The establishment of an effective bypass between the individual switches has great importance in the case of packet-switching networks since a data packet can run on the way from Berlin to Munich via Paris and New York. By bringing together all data packets intended for Munich and transferring these data packets by line-switching directly from Berlin to Munich, it is possible to provide a more effective data transfer.

6

For classifying data packets according to geographical points of view, it is preferable to compare the destination address with destination addresses stored in a data bank whereby the data bank contains a link between the destination addresses and the associated geographical position. The data bank is thereby preferably integrated in the switch. If the data packets are IP data packets, then the relevant IP addresses are consulted in the data bank and assigned to a certain bypass depending on the geographical destination.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 shows diagrammatically a telecommunications network according to the invention;

FIG. 2 shows diagrammatically a telecommunications network known in the prior art;

FIG. 3 is a diagrammatic illustration of a telecommunications network in which switches according to the invention form an Intranet;

FIG. 4 shows diagrammatically a switch according to the invention;

FIG. 5a shows a flow chart of the method according to the invention for transferring data between two switches; and

FIG. 5b shows diagrammatically a flow chart for the method according to the invention for selecting a destination switch through topological points of view.

DETAILED DESCRIPTION OF THE DRAWINGS

FIG. 2 shows a conventional telecommunications network. Data terminals such as telephone 1 or personal computer 2 are connected to an exchange 4 of the telephone network directly or by means of a telecommunications apparatus (TK-apparatus) 3 through an ISDN/POTS line. Where applicable, a local network LAN 5 is connected to the TK-apparatus 3. The exchanges 4 pass on incoming connection requests and provide line-switching connections. Entry to a packet-switching network is possible through an access point POP (Point of Presence) 6. Data are transferred between interlinked packet switches 10 by packet-switching through the packet-switching network.

The internet will now be considered as packet-switching network without restricting the present invention. Indeed any packet-switching network could be used such as mobile phone networks within the scope of the present invention.

The technologies used are known per se. The data transfer between terminals 1 and 2 and a line-switch (TK apparatus 3 or the exchange 4) takes place line-oriented, and similarly the data transfer between the individual line switches (such as between the individual exchanges 4 and the POP 6 of the Internet Service Providers IPS). The lines are switched through via coupling fields which are produced in the exchange and in the TK-apparatus.

The PCM 30 System is particularly wide spread in ISDN networks wherein 8 Bit codewords for each 30 useful channels within a scanning period of 125 $\mu$s are multiplexed and sent in one pulse frame. However, no multiplexing takes place on a single channel. The pulse frame is transferred in constant repetition between sender and receiver even if no useful signals are contained. In the digital coupling field, individual bytes are copied and then sent (switch of 1-byte-packet). Since during the exchange process only one byte is read into a memory each time and then read out again, only a minimal time delay occurs when exchanging the connecting path.

From the access point POP 6 to the Internet, the transfer of data is still only carried out packet-switched on the basis

US 6,954,453 B1

7

of the known network protocol UDP/IP or TCP/IP. Access to he Internet is brought about by a packet switch hereinafter also called IP Switch) which receives data packets which are not intended for itself and passes them on to the party network whose address they support. During routing, copying of the IP packets is carried out (switch of multi-byte packets). Time delays thereby occur in the packet-switching network according to the size of the IP packet and the number of routers passing on an IP-packet. These time delays can assume such proportions in the event of overloading the IP switches **10** that in the case of the Internet telephony, delays of more than 0.5 s may occur.

FIG. **1** shows a telecommunications network according to the present invention with switches **7**a and **7**b according to the present invention which are shown as starred and are described in detail in FIG. **3** . The switches **7**a and **7**b integrate the functions of a packet switch and a line switch.

The important factor is therefore the possibility of dynamically switching between packet-switching and line-switching during one transfer, as will be described in further detail below. It is thereby possible to change over, when desired, from an asynchronous packet-switching transfer of variable bandwidth to a synchronous line-switching transfer of greater and fixed bandwidth. Internet telephony and downloading of files from a WWW server are two important uses.

The implementation of the switches **7**a and **7**b takes place selectively through hardware or software. The line switching, is thereby preferably implemented by hardware and the packet-switching by software. Thus with line switching, after switching through a connection the data are forwarded without further examination, whilst with packet switching the destination addresses of each data packet is evaluated and the next IP switch has to be selected from the routing tables. A switching device for the switches **7**a and **7**b which undertakes a change over between packet and line-switching is preferably likewise implemented as software.

The switches **7**a and **7**b can be mounted according to FIG. 1 at different points in the telecommunications network. The switch **7**a represents a service access module for connecting the LANs or end terminals **1** and **2** to the ISDN/PSTN network and internet. On the user side, the switch **7**a has an ethernet interface for a LAN connection, a printer interface and interfaces for connecting telephones (radio telephones, ISDN telephones, analog telephones) —not shown. The switch **7**a is connected to an exchange point **4** of the telephone network through a line **8**.

Since the switch **7**a is not a part of the internet, it in necessary for the packet-switching transfer of data through the internet to first make a connection with the access point POP **6**. This can be carried out through the exchange point **4** or even through a standing line **9** to the POP **6**. The data are transferred line-switched up to the POP **6** and are preferably already packeted. If a change to line-switching data transfer is to take place, then a line to another switch is switched through the exchange **4** and the data are transferred to this by line-switching. The switch **7**a thus routes the IP switched/line-switched channels to the line **8** controlled by same so that they are more cost-effective or more real time depending on the wishes of the user or provider of the channels.

The switch **7**a is integrated in the internet and connected to further IP switches **11** and/or line switches **12**. Ideally the network still only consists of switches **7**b which allow both line switching and packet switching, so that with each switch **7**b there is the possibility where necessary of providing a

8

higher quality line-switching transfer instead of a packet-switching transfer. A line-switched transfer is thereby established as bypass, more particularly between switches where a data blockage builds up.

FIG. **3** shows a telecommunications network wherein switches **7** which allow a data transfer selectively by packet switching or by line switching form an Intranet within the internet. A real time communications possibility is thereby present between the switches **7**. So that this is always possible, additional real time communications channels exist between the switches **7**. These are additional ISDN/PSTN connections or additional Intranet channels. A line switching connection (bypass) between the switches **7** can thus arise not only through the telephone network, but also through separate channels.

FIG. **4** shows diagrammatically the establishment of a switch **7** according to the present invention. The switch **7** is part of both a packet-switching network (internet) and a line-switching network (telephone network), i.e., it is connected through lines to further network junctions to which it can transfer or receive line-switched or packet-switched data.

Data coming in through a data input **74** can have any source, more particularly come from an IP switch/router, a line-switch such as an exchange point or a telecommunications unit, from a LAN or from an end terminal **1** or **2**. The data input **74** has for this purpose, in a known way, an ethernet interface, an analog interface with A/D converter and an ISDN Interface. In addition where applicable, an ATM interface and an interface with a mobile phone network can also be provided. The ISDN networks are with incoming data of 8 bit long words which arrive on a multiplexed supply line of the switch **7**.

The switch **7** has a known IP switch **72** which copies over incoming IP packets (switch of multi-byte packets) and forwards them in the internet to suitable switches according to the address of the packets. These relate to the known internet protocol UDP/IP and TCP/IP. A data compression device **721** is integrated as an option in the IP switch **72**. For data compression, a reference is made to the international compression standards developed for individual communications, more particularly the compression process according to ITU standard G.72 X. Furthermore, a coding device **722** for coding data packets can be provided as an option.

Furthermore, the switch **7** has a line switching device **73**. This has a digital coupling **731** which is known per se for switching through telephone conversation channels of the line-switching network, and a multiplex/demultiplex device **732** which produces sub-channels on existing data channels, as will be described in further detail below.

The internal control commands, as to whether a packet switching is to take place through the IP switch or a line switching is to take place through the line switching device **73**, are produced in a control device **71**. The device **71** is substantially a switch which forwards the incoming data either as data packets to the IP switch **72** or as bit flow to the line switching device **73**. To this end, the control information of the incoming data are evaluated. The change-over control unit **711** monitors and controls which open connections are present (i.e., which and how many data channels are connected) and which bandwidth the individual data channels require.

In detail the control device **71** has a change-over control unit **711**, two packeting/unpacketing devices **713** and **714**, and an intermediate register **712**. The change-over control

**9**

unit is connected to a topography data bank **75** which contains geographical data for a number of IP addresses.

If the incoming data are IP packets, then the headers of the IP packets are evaluated by the chance-over control unit **711**. If the incoming data are a continuous data stream, then the signaling information of the signaling channel (in band signaling or outband signaling) are evaluated by the change-over control unit **711**. The basic state thereby provides that the incoming data are sent into the internet through the IP switch **72**. If the incoming data do not yet exist as IP packets then they are packeted into corresponding IP packets in the packeting/unpacketing device **714** and sent to the IP switch.

If the data exist as IP packets but are to be transferred line-switched through the line-switching device **73** then the data are, where applicable, unpacketed in the packeting/unpacketing device **713**. More particularly, the headers, of the data packets are removed. Unpacketing is optional however and not absolutely necessary since data packets can be transferred line-switched where applicable according to the PPP protocol. The (packeted or non-packeted) data are transferred as bit stream to the line switching device **73** by the change-over control unit **711**.

Through a control command which is sent by an end terminal or another switch and for example triggered by a user by pressing a certain button on the terminal or by the network management system, the type of communication is switched over to line-oriented or packet-oriented communication.

A corresponding signaling command for changing between packet and line switching is, for example, represented by a certain bit sequence wherein the switching unit **71** stores the detailed incoming data in an intermediate register **712** and compares it with stored bit sequences. If a certain bit sequence exists, then a change over to a different type of switching is carried out. Alteratively, it can also be possible for the change-over control device **711** to monitor the bandwidth of a transfer and on understepping or exceeding a certain bandwidth and/or in the event of a time delay when forwarding IP data packets to automatically release a control command to change over to the relevant other type of transfer.

To change from packet switching to line switching, first at the command of the control unit **71**, a connection is made via the line-switching device **73** (bypass) with another switch (destination switch). To this end, the ISDN signaling command SETUP is sent to the next exchange point. After the connection is established, all the incoming data of the communications connection considered are no longer directed through the IP-switch **72** but through the line-switching unit **73**. The data are now transferred by line-switching with fixed bandwidth through the established bypass to the other switch.

The change-over control unit **711** thereby checks, within the scope of the change-over process and prior to sending the data to the device **73**, whether they are IP packets and whether unpacketing is to take place in the packeting/unpacketing device **713**. The decision on this is made dependent on control signals of the network management system or the end terminal or alternatively by the change-over control unit **711** itself dependent on the data arrival. The control signals here contain corresponding transfer parameters. In each case, the data after being sent to the device **73** are then exposed in the coupling field **731** to an ISDN frame.

To establish the most effective line-switching connection possible, it is important to select a suitable destination

**10**

switch where the bypass is established. To this end, a switch is selected as destination switch which lies in a geographical area which coincides with the destination address of numerous IP packets. Then in particular, these IP packets are transferred through the bypass to the corresponding destination switch so that the data packets still only have a short transfer path from the destination switch to the final destination.

The classification of the IP packets and selection of a corresponding destination switch takes place by means of the topology data bank **75** which contains a geographical link between a number of IP addresses and their geographical position. In the line switching device **73**, the IP destination address of each packet is compared with the addresses stored in the data bank **75** and in the event of a successful association of the IP address, this is given a code. This can be a number which characterizes a certain geographical region. This code is recognized by the coupling field **731** and the data packet is then switched through to the corresponding destination switch.

Since it would result in too much time delay to interrogate the data bank **75** for each data packet, the change-over control unit **711** contains a cache which can be quickly accessed and in which the result of the last data bank inquiry is stored. If the IP address of a data packet arriving through the data input **74** is stored in the cache, then the corresponding code can be quickly given.

If the IP address is not contained in the cache, then a data bank inquiry is carried out, and the IP packets are directed onto the IP switch **72** until the result of the data bank inquiry is provided. Only then is a change-over made for this data to a line-switching transfer through a bypass. It is thereby possible that several bypasses to different destination switches exist at the same time whereby the change over control unit **711** controls the coupling field **731** so that the data packets are each time sent to the destination switch which is most favorable from the network topological point of view. The change-over control unit **711** thus informs the coupling field **731** of which data is to be sent to which destination switch.

If the destination address of a data packet is not contained in the data bank **75**, then those intermediate junctions of the packet-switching network are checked to be fully functioning which are normally run through when sending data packets with a certain destination address. To this end, the corresponding data are exchanged between the individual network junctions in known way by trace routing. At the appropriate intermediate junctions, i.e., the intermediate junctions with low functioning output, it is determined whether the ISDN number is known and this is requested where applicable. The chance-over control unit **711** of the data bank **75** is thereby operated in the manner already described. A bypass is then established from the change-over control unit **711** to a switch which lies in the chain of switches as close as possible to the destination switch.

The multiplex/demultiplex device **732** of the line-switching device **73** allows, depending on the control commands of the change-over control unit **711**, a line-switching transfer to sub-channels with a bandwidth which corresponds to a fraction of the usual bandwidth of a data channel considered. Data channels are thereby bundled which are formed or determined in the coupling field **731** according to the control commands of the change-over control unit **711**. A time multiplex channel of the PCM **30** system is considered as ISDN data frame which has information of 30 data channels and two signal channels. The bandwidth of the data channels each amounts to 64 kbit/s.

11

The multiplex/demultiplex device **732** allows a multiplexing inside each of the 30 data channels of the time multiplex channel. To this end, two methods are alternatively used. In a first method only a part of the 8 bit of a PCM Word is switched through each other, thus 1, 2 or 4 bits. The bandwidth is reduced accordingly to 8, 16 or 32 kbit/s. The data of several channels are in this way multiplexed on one data channel.

Alternatively a PCM word (byte) of the time multiplex channel of the PCM **30** system is not switched through in each of the successive pulse frames, but only in each n-th pulse frame whereby the bandwidth is reduced to 64/n kbit/s.

The two multiplex methods described can also be combined. By way of example, one bandwidth of 1 kbit/s is produced for one data channel in that each eight bit in each eighth frame of the ongoing data channel stems from the data channel considered.

The switching through in the line switching device **731** takes place, depending on the selected data rate, and in the case of transfer rates per data channel unequal to 64 kbit/s, includes the multiplex/demultiplex device **732**. If no multiplexing takes place on a data channel, then the data are passed by the multiplex/demultiplex device **732**.

For the channel or sub-channel considered, a line-switching transfer takes place to the switch which represents the other side of the line-switching connection until a control command again reaches the device **71** to switch over again to packet-switching. This command is in turn coded by a certain bit sequence or is produced automatically. Then through the control device, the switched-through line is broken off and the incoming data are then again directed to the IP switch **72**.

FIGS. **5**a and **5**b show the method sequence. FIG. **5**a shows the course of the method when changing from a packet-switching data transfer to a line-switching data transfer between two switches. With the presence of a corresponding control signal, a line-switching connection is set up to another switch and the data sent by line-switching.

If a line-switching data transfer is to take place to sub-channels of fixed bandwidth then a multiplexer/demultiplexer is activated which multiplexes several data streams so that each time only every $n^{th}$ bit and/or every $n^{th}$ byte is reserved in the outgoing data stream for an incoming data stream. It can thereby be provided that the individual sub-channels have a different bandwidth, i.e., the different input data streams have different proportions in the outgoing data stream. With the presence of a further control signal, a change back to a packet-switching transfer is undertaken.

FIG. **5**b shows the selection of a suitable switch when establishing a bypass. To this end, the headers of the IP data packets are compared with the information of a data bank. If the header information is associated with a certain geographical destination, then the bypass is established to a switch mounted in this geographical area. If the header information is not associated with a certain geographical destination, then as described above, a bypass is made to an intermediate junction where the data packets pass through in the normal case. Where applicable, the switch has numerous bypasses to different switches wherein each time only data packets with the same or similar topological destination features are transferred to the individual switches within the frame of the bypass.

The present invention is not restricted in its design to the embodiments given above. Rather a number of variations are possible which make use of the invention even in fundamentally different types of designs.

12

What is claimed is:

**1**. A method for transferring data from a first end terminal to a second end terminal using a first switch and a second switch, selectively by line-switching or packet switching, comprising:

   a) locating the first switch between the first end terminal and an access point of a packet-switching network, the first switch being part of a line-switching network or having access to a line-switching network;

   b) establishing a connection via the first switch through the line-switching network from the first end terminal to the access point of the packet-switching network;

   c) line-switching transferring of non-packetized data through said connection from the first end terminal to the access point of the packet-switching network;

   d) packeting of the data into data packets and packet-switching transferring of the data packets through the packet-switching network from the access point to the second switch;

   e) checking repeatedly whether a control signal exists for transferring to a line-switching connection to the second switch;

   f) establishing the line-switching connection, during an existing transfer, through the line-switching network from the first switch to the second switch with a presence of the control signal, if the line-switching connection is not yet present; and

   g) changing-over to a line-switching data transfer during the existing transfer and transferring data over the line-switching connection to the second switch and from the second switch to the second end terminal.

**2**. The method of claim **1**, wherein the first end terminal is a telephone.

**3**. The method of claim **2**, wherein the telephone is an analog telephone.

**4**. The method of claim **2**, wherein the telephone is an ISDN telephone.

**5**. The method of claim **2**, wherein the telephone is a mobile telephone.

**6**. The method of claim **1**, wherein the first end terminal is part of a local area network.

**7**. The method of claim **1**, wherein the first end terminal is connected to a private branch exchange (PBX), which is in turn connected to the first switch.

**8**. The method of claim **1**, wherein the data transferred from the first end terminal to the access point of the packet-switching network are analog data.

**9**. The method of claim **8**, wherein the data, when transferred over the line-switching connection to the second switch, remain as analog data.

**10**. The method of claim **1**, wherein the data transferred from the first end terminal to the access point of the packet-switching network are digital, non-packetized data.

**11**. The method of claim **1**, in which transferring the data over the line-switching connection comprises transferring the data over an PSTN/ISDN network.

**12**. The method of claim **1**, in which transferring the data through the packet-switching network comprises transferring the data through the internet.

**13**. The method of claim **1**, wherein the first switch is located at the first end terminal.

**14**. The method of claim **1**, wherein the control signal which triggers a change-over between the packet-switching transfer and the line-switching transfer is produced automatically when demands on a quality of a data transfer, including a time delay or a noise proportion, is understepped or exceeded.

US 6,954,453 B1

13
14

**15**. The method of claim **1**, wherein the control signal which triggers a change-over between the packet-switching transfer and the line-switching transfer is produced by a user of the first end terminal.

**16**. The method of claim **1**, wherein, when the data is being transferred using the line-switching data transfer, further comprising:

a) checking repeatedly whether a second control signal exists for changing-over to a packet-switching data transfer to the second switch;

b) establishing a second connection through the line-switching network, during the existing transfer, from the first switch to the access point of the packet-switching network with a presence of the second control signal, if the connection to the access point is no longer present;

c) changing-over to a packet-switching data transfer during the existing transfer;

d) line-switching transferring of the data through the connection or the second connection to the access point;

e) packeting of the data into data packets and packet-switching transferring of the data packets through the packet switching network from the access point to the second switch; and

f) transferring the data from the second switch to the second end terminal.

**17**. The method according to claim **1**, wherein, with the line-switching data transfer between the first switch and the second switch or between the first switch and the access point to the packet-switching network, the data of several end terminals are multiplexed on one data channel by forming sub-channels of a fixed bandwidth.

**18**. The method according to claim **1**, wherein, with a data transfer from the first switch changing over from a packet-switching data transfer to the line-switching data transfer,

a) address information of the data packets are evaluated and classified according to a network topology, and

b) for the data packets whose destination addresses correspond to a same topological area of the network, the second switch is selected which is located in the same topological area.

**19**. The method according to claim **18** wherein, to classify the data packets according to the network topology, the destination addresses of the data packets are sorted according to geographical areas whereby, for data packets whose destination addresses correspond to a same geographical area, the second switch is selected to be located in this geographical area.

**20**. The method according to claim **19** wherein, for classifying the data packets according to geography, the destination addresses are compared with destination addresses stored in a data bank which contains a link between the destination addresses and associated geographical areas.

**21**. A method for transferring data from a first end terminal to a second end terminal, selectively by line-switching or packet switching, comprising:

a) establishing a connection through a line-switching network from the first end terminal to an access point of a packet switching network;

b) line-switching transferring of non-packetized data through said connection from the first end terminal to the access point of the packet-switching network;

c) packeting of the data into data packets and packet-switching transferring of the data packets through the

packet-switching network from the access point to the second end terminal;

d) checking repeatedly whether a control signal exists for transferring to a line-switching connection to the second end terminal;

e) establishing the line-switching connection, during an existing transfer, through the line-switching network from the first end terminal to the second end terminal with a presence of the control signal, if the line-switching connection is not yet present; and

f) changing-over to a line-switching data transfer during the existing transfer and transferring data over the line-switching connection to the second end terminal.

**22**. The method of claim **21**, wherein the first end terminal is a telephone.

**23**. The method of claim **22**, wherein the telephone is an analog telephone.

**24**. The method of claim **22**, wherein the telephone is an ISDN telephone.

**25**. The method of claim **22**, wherein the telephone is a mobile telephone.

**26**. The method of claim **21**, wherein the first end terminal is part of a local area network.

**27**. The method of claim **21**, wherein the data transferred from the first end terminal to the access point of the packet-switching network are analog data.

**28**. The method of claim **27**, wherein the data, when transferred over the line-switching connection to the second end terminal, remain as analog data.

**29**. The method of claim **21**, wherein the data transferred from the first end terminal to the access point of the packet-switching network are digital, non-packetized data.

**30**. The method of claim **21**, in which transferring the data over the line-switching connection comprises transferring the data over an PSTN/ISDN network.

**31**. The method of claim **21**, in which transferring the data through the packet-switching network comprises transferring the data through the internet.

**32**. The method of claim **21**, wherein the control signal which triggers a change-over between the packet-switching transfer and the line-switching transfer is produced automatically when demands on a quality of a data transfer such as a time delay or a noise proportion is understepped or exceeded.

**33**. The method of claim **21**, wherein the control signal which triggers a change-over between the packet-switching transfer and the line-switching transfer is produced by a user of the first end terminal.

**34**. Switching apparatus for routing a telephone call comprising non-packetized data from a first end terminal located at a user's premises to a second end terminal located at another user's premises, selectively by line switching or packet switching, the switching apparatus comprising:

means for establishing a connection through a line-switching network to the second end terminal;

means for line-switching transferring data received from the first end terminal as non-packetized data over the line-switching network to the second end terminal;

means for establishing a connection through a packet-switching network to the second end terminal;

means for packet-switching transferring data received from the first end terminal as non-packetized data over the packet-switching network to the second end terminal; and

means responsive to a control signal for transferring to a line-switching transfer or a packet-switching transfer to the second end terminal;

US 6,954,453 B1

15

said means responsive to a control signal changing-over to a line-switching data transfer or a packet-switching transfer during the existing transfer with the presence of said control signal.

**35**. The switch of claim **34**, further comprising means to produce the control signal for transferring to a line-switching transfer or a packet-switching transfer to the second end terminal, said control signal being produced automatically when demands on the quality of the data transfer are understepped or exceeded.

16

**36**. The switch of claim **34**, wherein the data received from the first end terminal are analog data.

**37**. The switch of claim **36**, wherein the data, when transferred over the line-switching connection to the second end terminal, remain as analog data.

**38**. The switch of claim **34**, wherein the data received from the first end terminal are digital, non-packetized data.

\*    \*    \*    \*    \*

## Ad hoc Release

### TELES: VoIP-Patent now granted also in the USA

Berlin, 17th October 2005.   This information is released in accordance with § 13 section 1 and § 15 section 1 of the German Investor Protection Improvement Act (AnSVG).

The US Patent authority just granted, on 11.10.2005, to TELES the patent US 6,954,453 B1 (see www.teles.de). It is the lightly changed analogue to the German and European "IntraStar patents", the invention/registration of which goes back to the year 1996, the legal protection for Germany and Europe of which therefore holds on until 2016 — unless one of the invalidity allegations against them should succeed, which TELES considers to be utmost unlikely (see www.teles.de again) — and which guarantee "secure " VoIP telephony: Namely, by enabling the "quality insecure pure packet switching" Internet telephony technology fall backs at any times to "quality secure pure line switching" classic telephony technology, as deemed reasonable due to quality reasons.

Based on these German and European patents, TELES has filed patent violation suites against the respective products by AVM, Quintum and CISCO in Germany, in a first step (see also www.teles.de) — and will expand at least the two latter legal cases to the whole European market as well as to all the other concerns on them, which are active in VoIP technology. In total, this is more than a dozen of well-known companies operating worldwide and in Europe in particular. Most of them are based in the USA and may now be legally attacked also on their home market, because of violating TELES' patent since 1996/97.

TELES intends to file short term these patent violation claims in the USA, to begin with against CISCO and Quintum again, but here (unlike in the German/European trials with only the method claims 1 and 2 as basis) also out of the apparatus claim 34 — which simplifies in the USA the proof of patent violation.

Professor Sigram Schindler
    CEO of TELES AG


© TELES AG

**Exhibit B**