EXHIBIT 10

(PART 1 OF 2)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff/ | ) | |
| Counterclaim-Defendant, | ) | |
| | ) | Civil Action No. |
| v. | ) | 1:05-CV-02048 (RBW) |
| | ) | |
| TELES AG | ) | ECF Case |
| INFORMATIONTECHNOLOGIEN, | ) | |
| | ) | |
| Defendant/ | ) | |
| Counterclaim-Plaintiff. | ) | |
| | ) | |

## TELES' SUPPLEMENTAL RESPONSE TO CISCO'S
## INTERROGATORY NOS. 1, 2, 3, 6 and 7

Defendant/Counterclaimant Teles AG Informationstechnologien ("Teles") provides this

supplemental response to Plaintiff/Counterdefendant Cisco Systems, Inc. ("Cisco") Corrected

Supplemental Interrogatories Nos. 1, 2, 3, 6, and 7 as follows:

## GENERAL STATEMENTS

1.      Teles incorporates by reference all general and specific statements and objections

raised in (a) Teles' Responses to Cisco's First Set of Requests For Production of Documents

(Nos. 1- 77), served on August 3, 2006; (b) Teles' Responses to Cisco's Interrogatories (Nos. 1-

7), served on August 3, 2006; and (c) Teles' Responses to Cisco's Supplemental Interrogatories

(Nos. 1-7), served on March 5, 2007.

**RESPONSES**

**INTERROGATORY NO. 1**

State Teles' proposed construction of each claim of the Patents-in-Suit that is allegedly infringed by Cisco, including, but not limited to, the following claim terms: data; first switch; second switch; first end terminal; second end terminal; access point; access point of a packet-switching network; connection; transferring of non-packetized data; control signal; checking repeatedly whether a control signal exists for transferring to a line-switching connection to the second switch; establishing the line-switching connection; presence of the control signal; existing transfer; during an existing transfer; changing-over to a line-switching data transfer during the existing transfer; establishing a connection through a line-switching network to the second end terminal; establishing a connection through a packet-switching network to the second end terminal; and include in your answer the following information: a statement that describes Teles' construction of each individual element of each asserted claim; an identification of any special or uncommon meanings of words or phrases in each asserted claim; for each element of each asserted claim that Teles contends is governed by 35 U.S.C. 112(6), the identity of the claimed function and of the structure(s) in the specification that performs the claimed function; all references from the specification that support, describe, explain, or otherwise provide a basis for Teles' construction of each individual element of each asserted claim; all material in the prosecution history, including prior art, that describes, explains, or otherwise provides a basis for Teles' construction of each element of each asserted claim; and any extrinsic evidence that tends to prove the proposed construction of any element of each asserted claim.

**RESPONSE TO INTERROGATORY NO. 1:**

Teles restates and incorporates by reference its general objections as set forth above. Teles further objects to this Interrogatory as premature. Discovery and investigation into the subject matter of this litigation are continuing and may lead to supplemental responses to this interrogatory. Among other things, Teles is waiting for Cisco to provide full and complete responses to Teles' discovery requests concerning infringement, validity and claim construction. Indeed, during a hearing in this case about the timing and content of contention interrogatories, such as this one, the Court acknowledged that Teles' initial responses may not be detailed or include, for example, all bases for infringement. *See* Hearing Tr. of June 30, 2006 at 9-20 ("THE COURT: I don't think there would be any impediment to you being able to supplement. If you can't provide all the information now, I don't see how that could somehow be used against you later."). Teles reserves the right to identify additional claims during the course of this litigation. Teles further objects to this interrogatory to the extent it requests Teles to provide claim constructions for terms whose meanings do not appear to be in dispute based on the parties' positions disclosed to date on infringement, validity or other dispositive issues.

Subject to and without waiving any of its objections, and subject to supplementation after further discovery, after the court construes the meaning of the claims or supplementation otherwise is proper during the course of this litigation, Teles responds as follows:

Unless otherwise noted, all claim terms should be construed under their ordinary meaning to a person of skill in the art in light of – but without improperly importing limitations from – the intrinsic and extrinsic evidence. Teles further refers to the following Exhibit attached to this response:

Exhibit A - Preliminary Claim Charts (June 19, 2007)

3

**INTERROGATORY NO. 2**

State in detail the factual and legal bases for the allegation set forth by Teles in ¶¶ 17 and 24 of the First Amended Counterclaim that states "Cisco activities with respect to the Cisco Products/Services [or software] has been and continue to infringe the [Patents-in-Suit], either directly or indirectly, (e.g., contributory or induced infringement) under 35 U.S.C. § 271," including the identification of the claims of the Patents-in-Suit being asserted against Cisco, and for each asserted claim, an element-by-element explanation of Teles' contention that such claim is infringed literally or under the doctrine of equivalents, with an explanation of the underlying reasons therefore, including for each element that Teles contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the accused products that perform the claimed function, and identification of the documents or other facts or evidence upon which Teles' answer to this Interrogatory is based

**RESPONSE TO INTERROGATORY NO. 2:**

Teles restates and incorporates by reference its general objections as set forth above. Teles further objects to this Interrogatory as compound. Teles objects to this Interrogatory to the extent it seeks information more properly obtainable through other forms of discovery, such as expert reports and depositions. Teles also objects to this Interrogatory as premature. Discovery and investigation into the subject matter of this litigation are continuing and may lead to supplemental responses to this interrogatory. Among other things, Teles is waiting for Cisco to provide full and complete responses to Teles' discovery requests concerning infringement, validity and claim construction. Indeed, during a hearing in this case about the timing and content of contention interrogatories, such as this one, the Court acknowledged that Teles' initial responses may not be detailed or include, for example, all bases for infringement. *See* Hearing Tr. of June 30, 2006 at 9-20 ("THE COURT: I don't think there would be any impediment to you being able to supplement. If you can't provide all the information now, I don't see how that could somehow be used against you later."). Teles further objects to this interrogatory to the extent it requests Teles to provide contentions regarding limitations that Cisco does not dispute

4

are met literally or equivalently   For example, Cisco's discovery responses will identify any disagreement between the parties whether claim limitations are met literally   It would be unnecessary and unduly burdensome for Teles to provide alternative positions of infringement under the Doctrine of Equivalents for every claim limitation when the parties most likely will agree that almost all limitations are met literally   Teles reserves the right to supplement this response without prejudice, including, the right to identify additional claims and the right to provide additional analysis of infringement under the Doctrine of Equivalents for those terms that Cisco asserts are not met literally

Teles objects to this contention interrogatory at this very early stage of discovery, and Teles reserves the right to supplement this response based on further discovery or any claim construction rulings by the Court or when supplementation otherwise is proper during the course of this litigation

Subject to and without waiving any of its objections, and subject to supplementation as discovery proceeds, after the court construes the meaning of the claims or supplementation otherwise is proper during the course of this litigation, Teles responds as follows

Teles identifies every limitation of Claims 36, 37, 41, 54-57, 60-62, 64, 66, 68, 69, 71, 75, 77, 79, 82, 84, 87, 90-92, 95, 98, 100 and 104 of the '902 Patent and Claims 34-36 and 38 of the '453 Patent as being met by the accused Cisco products and services (see Response To Interrogatory No  3) literally or under the Doctrine of Equivalents, because the limitations either literally read on the accused infringing products and services, or the differences (if any) between the literal claim limitations and the accused products and services are insubstantial   Teles further refers to the following Exhibit attached to this response

Exhibit A - Preliminary Claim Charts (June 19, 2007)

**INTERROGATORY NO. 3**

Identify with particularity each Cisco product or service, and any components, features or functionality of each Cisco product or service, that Teles accuses of allegedly infringing any claim of the Patents-in-Suit.

## RESPONSE TO INTERROGATORY NO. 3:

Teles restates and incorporates by reference its general objections as set forth above. Teles objects to this Interrogatory to the extent that it seeks information that is not in the possession, custody, or control of Teles. Teles further objects to this Interrogatory as premature. Discovery and investigation into the subject matter of this litigation are continuing and may lead to supplemental responses to this interrogatory. Among other things, Teles is waiting for Cisco to provide full and complete responses to Teles' discovery requests concerning infringement, validity and claim construction. Indeed, during a hearing in this case about the timing and content of contention interrogatories, such as this one, the Court acknowledged that Teles' initial responses may not be detailed or include, for example, all bases for infringement. *See* Hearing Tr. of June 30, 2006 at 9-20 ("THE COURT: I don't think there would be any impediment to you being able to supplement. If you can't provide all the information now, I don't see how that could somehow be used against you later.").

Subject to and without waiving any of its general or specific objections, and subject to supplementation as discovery proceeds or the Court construes the claims or as supplementation otherwise is proper during the course of this litigation, Teles responds as follows:

- **2600 Routers:** 2691, 2651, 2651XM, 2650, 2650XM, 2621, 2621XM, 2620, 2620XM, 2613, 2611, 2611XM, 2610, 2610XM, Catalyst 6509, Catalyst 6503, Catalyst 6506, Catalyst 6509, Catalyst 6503E, Catalyst 6504E, Catalyst 6506E, Catalyst 6509E, Catalyst 6509-NEB-A, Catalyst 6509, and Catalyst 6513.

- **2800 Routers:** 2851, 2821, 2811, and 2801.

- **3600 Routers:** 3661, 3660, 3640, 3640A. 3631, 3662, and 3620.

- **3700 Routers:** 3725 and 3745.

- **3800 Routers:** 3845 and 3825.

- **7200 Routers:** 7206, 7204, 7202, 7206VXR, 7204VXR, and 7201.

- **7500 Routers:** x7576, 7505, 7513, and 7507.

- **7600 Routers:** 7609, 7603, 7609, 7606, 7604, and 7613.

- **MC3810 Routers:** MC3810-V3 and MC3810-V.

- **High Density Analog Modules:** NM-HDA-4FXS, EM-HDA-8FXS, EM-HDA-4FXO, EM2-HAD-4FXO, NM-HDA-4FX0, EVM-HD-8FXS/DID, EM-4BRI-NT/TE, EM-HDA-6FXO, and EM-HDA-3FXS/4FXO

- **Foreign Exchange Modules:** VIC-2FXO, VIC-2FXO-EU, VIC-2FXO-M1, VIC-2FXO-M2, VIC-2FXO-M3, VIC-4FXO-M1, VIC2-2FXO, VIC2-4FXO, MRP3-8FXOM1, VIC-2FXS, VIC2-2FXS, VIC-2DID, VIC-4FXS/DID, and Catalyst 6000 Family FXS Analog Interface Module,

- **Other Voice and Interface Modules:** DSP-HDA-16, NM-1V, NM-2V, VIC-2E/M, VIC-2BRI-S/T-TE, VIC-2BRI-NT/TE, VIC-2CAMA, NM-HD-1V, NM-HD-2V, VIC2-E/M, VIC2-2BRI-NT/TE, WS-SVC-CMM-6E1, WS-SVC-CMM-6T1, WS-X6608-T1, WS-X6608-E1, and WS-SVC-CMM.

- **CallManager:** CallManager v3.0, CallManager v3.2, CallManager v4.1, CallManager v4.0, CallManager v3.3, CallManager v5.1, CallManager v5.0, CallManager v4.3, CallManager v4.2, and Communication Manager v6.0.

- **CallManager Express:** CallManager Express v4.0, and CallManager Express v4.1.

- **MCS 7800 Servers:** MCS-7815-1000-HW, MCS-7815I-2.0-EVV1, MCS-7815I-3.0-IPC1, MCS-7815I-3.0-IPC2, MCS-7815-I2-IPC1, MCS-7815-I1-IPC2, MCS-7815-I1-IPC3, MCS-7815-I1-IPC4, MCS7815I1-K9-CM50, MCS7815I2-K9-CMA1, MCS-7816-H3-IPC1, MCS-7816-I3-IPC1, MCS7816H3-K9-CMA2, MCS7816H3-K9-CMB1, MCS7816I3-K9-CMA2, MCS7816I3-K9-CMB1, MCS-7820-HW, MCS-7822-HW, MCS-7825-800, MCS-7825-1133-HW, MCS-7825H-2.2-EVV1, MCS-7825H-3.0-IPC1, MCS-7825I-3.0-IPC1, MCS-7825-H1-IPC1, MCS-7825-H2-IPC1, MCS-7825-H2-IPC2, MCS-7825-H3-IPC1, MCS-7825-I1-IPC1, MCS-7825-I2-IPC1, MCS-7825-I2-IPC2, MCS-7825-I3-IPC1, MCS7825H1-K9-CM50, MCS7825H2-K9-CMA1, MCS7825H2-K9-CMA2, MCS7825H3-K9-CMA2, MCS7825H3-K9-CMB1, MCS7825I1-K9-CM50, MCS7825I2-K9-CMA1, MCS7825I2-K9-CMA2, MCS7825I3-K9-CMA2, MCS7828I3-K9-CMB1, MCS-7830, MCS-7835-NTD, MCS-7835-TD, MCS-7835-1000-NTD, MCS-7835-1000-TD, MCS-7835-1266-NTD, MCS-7835-1266-TD, MCS-7835H-2.4-EVV1, MCS-7835I-2.4-EVV1, MCS-7835H-3.0-IPC1, MCS-7835I-3.0-IPC1, MCS-7835-H1-IPC1, MCS-7835-H2-IPC1, MCS-7835-I1-IPC1, MCS-7835-I2-IPC1, MCS7835H1-K9-CM50, MCS7835H2-K9-CMA1, MCS7835H2-K9-CMA2, MCS7835I1-K9-CM50, MCS7835I2-K9-CMA1,

MCS7835I2-K9-CMA2, MCS-7845-1400-HW, MCS-7845H-2.4-EVV1, MCS-7845H-3.0-IPC1, MCS-7845I-3.0-IPC1, MCS-7845-H1-IPC1, MCS-7845-H2-IPC1, MCS-7845-I1-IPC1, MCS-7845-I2-IPC1, MCS7845H1-K9-CM50, MCS7845H2-K9-CMA1, MCS7845H2-K9-CMA2, MCS7845I1-K9-CM50, MCS7845I2-K9-CMA1, and MCS7845I2-K9-CMA2.

- **MCS 6700 Servers:** MCS6725I3-K9-CMA2.

- **ICS 7750 Servers:** ICS-7750.

- **Catalyst Express 500 Switches:** 520 and 500.

- **Catalyst Express 3560 Switches:** 3560E-24PD, 3560-48PD, 3560-48PD-F, 3560-8PC, 3560-24PS, 3560-48PS, 3560G-24PS, and 3560G-48PS.

- **Catalyst Express 3750 Switches:** 3750E-24D, 3750E-48PD, 3750E-48PD-F, 3750-24PS, 3750-48PS, 3750G-24PS, and 3750G-48PS.

- **Catalyst Express 4500 Switches:** Catalyst 4510R, Catalyst 4507, Catalyst 4506, and Catalyst 4503.

- **Cisco IP Phones:** 7912G-W, 7912G, 7910G+SW, 7905G, 7902G, 7936, 7985G, 7971G-GE, 7970G, 7961G, 7961G-GE, 7960G, 7941G, 7941G-GE, 7940G, 7931G, 7911G, 7906G, 7921G, and 7920.

- **Gateways:** VG200, VG224, and VG248.

- **Analog Telephone Adapters:** ATA 188 and ATA 186.

- **ISDN Adapters/Modules:** Two-port Channelized T1 and E1 port adapters, No. 975; Eight Port Multichannel T1/E1 ISDN PRI Port Adapter; High Density Aggregation with PA-MC-8TE1 Port Adapter; and ISDN Port Adapters for the Cisco 7000 Family Routers.

## INTERROGATORY NO. 6

Describe in detail each and every instance in which Teles considered enforcing or otherwise trying to gain benefit from the Patents-in-Suit or any other patent that describes in whole or in part the subject matter of the Patents-in-Suit, including without limitation all discussions with customers and/or potential customers and/or competitors about the Patents-in-Suit, licenses (including cross-licenses and covenants not to sue), offers to license, discussions about licensing, requests for licensing, infringement analyses, validity analyses, and/or

enforceability (including inequitable conduct) analyses, complaints of infringement from within or outside of Teles, accusations of infringement, threatened or commenced litigation with respect to any of the Patents-in-Suit, and identify all documents relating to each such instance and each person with knowledge of such activity.

## RESPONSE TO INTERROGATORY NO. 6:

Teles restates and incorporates by reference its general objections as set forth above. Teles objects to this interrogatory as being overbroad and unduly burdensome. Teles objects to this Interrogatory to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work-product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege. Teles objects to this interrogatory to the extent it seeks discovery more properly ascertainable through other means of discovery.

Subject to, and without waiving its objections, Teles answers as follows:

- **TELES AG vs. Quintum Technologies Inc. and IP Telekom GmbH (Complaint dated June 25 2004)**
  o Patent in suit: European Patent EP 0 929 884
  o With regard to the product Tenor VoIP Multi Path Switches (IP Telekom: reseller in Germany)
  o Court's file numbers 7 0 297/04 (Trial court: Landgericht [LG] Mannheim) and 6 U 217/05 (Appeal court: Oberlandesgericht [OLG] Karlsruhe)
  o Process stayed until a final decision regarding nullity actions
  o Persons knowledgeable: Professor Sigram Schindler

- **TELES AG vs. AVM Computersysteme Vertriebs GmbH & Co KG (Complaint dated July 21, 2004)**
  o Patents in suit: European patent EP 0 929 884 and German patent DE 196 45 368
  o With regard to the product "Fritz!Box Fon"
  o Court's file numbers 7 0 332/04 (Trial court: LG Mannheim), 6 U 69/05 (Appeal court: OLG Karlsruhe) and X ZR 83/06 (German Supreme Court: Bundesgerichtshof [BGH], highest appellate court in Germany)
  o Persons knowledgeable: Professor Sigram Schindler

- **TELES AG vs. 1&1 Internet AG (Complaint dated July 23, 2004)**
  - Patents in suit: European patent EP 0 929 884 and German patent DE 196 45 368
  - 1&1 reseller of the product "Fritz!Box Fon"
  - Court's file numbers 7 0 342/04 (Trial court: LG Mannheim), 6 U 70/05 (Appeal court: OLG Karlsruhe) and X ZR 82/06 (German Supreme Court: Bundesgerichtshof [BGH])
  - Persons knowledgeable: Professor Sigram Schindler.

- **TELES AG vs. Cisco Systems Inc. (Complaint dated July 23, 2004)**
  - Patents in suit: European patent EP 0 929 884 and German patent DE 196 45 368
  - With regard to all Cisco products which use "Cisco CallManager" or "Cisco CallManager Express" with the functionalities "Survivable Remote Site Telephony" and/or "PSTN-Fallback"
  - Court's file numbers: 7 0 340/04 (Trial court: LG Mannheim) and 6 U 100/06 (Appeal court: OLG Karlsruhe)
  - Process stayed until a final decision regarding nullity actions
  - Persons knowledgeable: Cisco employees, Professor Sigram Schindler.

- **TELES AG vs. AVM Computersysteme Vertriebs GmbH & Co KG (2nd Complaint, dated Nov 30, 2005)**
  - Patents in suit: European patent EP 0 929 884 and German patent DE 196 45 368
  - With regard to the product "Fritz!Box Fon WLAN 7050"
  - Court's file number 2 0 338/05 (Trial court: LG Mannheim) and 6 U 125/06 (Appeal court: OLG Karlsruhe)
  - Process stayed until a final decision regarding nullity actions
  - Persons knowledgeable: Professor Sigram Schindler.

- **TELES AG vs. Nokia GmbH and Nokia Corp. (Complaint dated Feb 15, 2006)**
  - Patents in suit: European patent EP 0 929 884 and German patent DE 196 45 368
  - With regard to the product Nokia 6136 (mobile phone)
  - Court's file number: 2 0 39/06 (Trial court: LG Mannheim)
  - Process stayed until a final decision regarding nullity actions
  - Persons knowledgeable: Professor Sigram Schindler.

- **TELES AG vs. Quintum Technologies Inc. (Complaint dated Mar. 24, 2006)**
  - Patents in suit: US 6,954,453 and US 7,145,902
  - Court's file number: 06-CV-001972 (Judge S. Robinson)
  - Stay requested (*See* D.E. #40)
  - Persons knowledgeable: Professor Sigram Schindler.

**INTERROGATORY NO. 7**

With respect to Teles' contention that the infringement alleged in this lawsuit was willful and Teles' contention that this Court should declare this case exceptional, state in detail all bases known to Teles which would support such contentions, including without limitation the identity of all documents upon which Teles has relied in making such a request.

**RESPONSE TO INTERROGATORY NO. 7:**

Teles restates and incorporates by reference its general objections as set forth above. Teles objects to this interrogatory as overbroad and unduly burdensome. Teles further objects to the extent that this interrogatory seeks information protected by attorney client privilege and the work product doctrine; seeks confidential or proprietary information; calls for a premature construction of the claims; or seeks a legal conclusion. Teles also objects to this interrogatory as premature contention discovery or seeks discovery more properly ascertainable through other means of discovery.

Subject to, and without waiving its objections, Teles responds as follows:

Cisco has been on notice of the '453 Patent prior to and after the filing of the instant patent infringement action. Cisco also was on notice of the '903 Patent prior to and upon its issuance. Cisco has infringed, and continues to infringe, the '453 Patent and the '902 Patent (the Patents-In-Suit) *(see* Teles' RESPONSE TO INTERROGATORY NO. 2 concerning infringement). Since receiving notice of the Patents-In-Suit, Cisco has had an affirmative duty of due care to form a good faith belief that it does not infringe any valid and enforceable claim of the Patents-In-Suit. Cisco, however, has failed to produce sufficient evidence that Cisco satisfied its affirmative duty of due care. Cisco has decided that it will not to rely on any opinions of counsel that informed Cisco whether the Patents-In-Suit are infringed, valid or enforceable. Further, well after this lawsuit was filed, Cisco could not and still has not fully articulate an invalidity position *(see, e.g.,* Cisco's August 3, 2006 RESPONSE TO INTERROGATORY NO. 2 concerning invalidity) nor can Cisco fully articulate an infringement position *(see* Cisco's August 3, 2006 RESPONSE TO INTERROGATORY NO. 6 concerning infringement).

Dated:  June 19, 2007

TELES AG INFORMATIONSTECHNOLOGIEN

Matthew J. Moore, No. 45377
David W. Long, No. 458029
Mark L. Whitaker, No. 435755
Andreas Stargard, No. 484303
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C.  20004
(202) 783-0800
(202) 383-6610

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on June 19, 2007, a true and correct copy of the within and

foregoing **TELES' SUPPLEMENTAL RESPONSE TO CISCO'S INTERROGATORY**

**NOS. 1, 2, 3, 6, and 7** was served upon counsel for the parties via electronic mail and Federal

Express properly addressed to the following person listed below:

Lana S. Shiferman
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617)570-1000
(617)523-1231 (fax)

# **EXHIBIT A**

## **Preliminary Claim Chart (June 19, 2007)**

## Exemplary Scenarios

Below are example scenarios in which the accused Cisco products infringe the '902 and '453 Patents. These are given for illustration purposes, and it should be understood that other scenarios may infringe the patents, such as different events or other combinations of accused Cisco products. For example, the packet-switched network is shown as the internet, but also could be a WAN. The line-switched network is shown as ISDN, but also could be other line-switched networks such as the PSTN or POTS. In addition, the telephones interfaced with Routers A and B could be represented by either analog telephones interfaced with the Router through Analog Telephone Adapters (ATA's), voice interface cards, high density network modules (NM-HDA's) or through a PBX or similar-type device interfaced with a Router. Similarly, the telephones interfaced with Routers A and B could be IP telephones interfaced with the Routers or interfaced to the routers by way of LAN. Additionally, a mix of analog and IP telephones could be interfaced with Routers A and B by way of appropriate interfaces. To interface to the ISDN, the Routers use an ISDN module or device. To interface to PSTN, the Routers can be realized by using integrated FXO or NM-HDA's, or similar modules or devices. In the scenarios below, the Routers use Call Manager Express, but similar functionality may result when using Cisco Call Manager.

**Scenario 1**:

Several telephones are connected to a Cisco Router A, including analog Telephones A1 and A2 that are connected to the Cisco Router A through a Cisco Analog Telephone Adapter (ATA). Router A also is connected to a packet-switched network (e.g., the Internet) and a line-switched network (e.g., ISDN through a Cisco ISDN module). Several telephones at another location are connected to Cisco Router B, including an analog Telephone B1 (connected through a Cisco ATA) and a Cisco IP Telephone B2. Router B also is connected to the Internet and ISDN (through a Cisco ISDN module). At some point, Router B reaches its limit on the maximum number of simultaneous IP connections it will allow – e.g., the limit is reached when a call is made from Telephone A1 to Telephone B1. A person then uses Telephone A2 to call a person at Telephone B2. After Router A transmits call data to Router B (e.g., a SIP Invite Request), Router B transmits an "Internal Server Error" to Router A. Router A then changes over the call from the Internet to the ISDN for the remainder of the call.



**Scenario 2:**

Several telephones (not depicted) are connected to a Cisco Router A, including an analog Telephone A that is attached to Router A through a Cisco analog telephone adapter (ATA). Router A also is connected to a packet-switched network (e.g., the Internet) and a line-switched network (e.g., ISDN through a Cisco ISDN module). Several telephones (not depicted) at another location are connected to Cisco Router B, including Cisco IP telephone B. Cisco Router B also is attached to the Internet and ISDN (via a Cisco ISDN module).

A person uses Telephone A to dial another person at Telephone B. Router A transmits data to Router B (e.g., a SIP Invite Request). Due to congestion or other problems with the Internet, Router A does not receive a response from Router B. Router A then changes over the call from the Internet to the ISDN for the remainder of the call.



**Scenario 3:**

Several telephones (not depicted) are connected to a Cisco Router A, including analog Telephone A that is attached to Router A through a Cisco analog telephone adapter (ATA). Router A also is connected to a packet-switched network (e.g., the Internet) and a line-switched network (e.g., ISDN through a Cisco ISDN module). Several telephones (not depicted) at another location are connected to Cisco Router B, including Cisco IP telephones B1 and B2. Router B also is connected to the Internet and ISDN (through a Cisco ISDN module).

A person at Telephone A dials the telephone number for Telephone B1. Another person answers Telephone B1 and the two people talk to each other. Router B reaches its limit on the maximum number of simultaneous IP connections it will allow. After this limit has been reached, the person using Telephone B1 then presses the button to transfer the call to Telephone B2. Cisco Router B sends an "Internal Server Error" message to Cisco Router A. After receiving the error message, Cisco Router A then connects to Cisco Router B by establishing a connection through the ISDN network. Telephone B2 rings and the call continues between Telephone A and Telephone B2.



**'902 PATENT CLAIMS**

Following are preliminary claim charts for exemplar claims from U.S. Patent No. 7,145,902 ("the '902 Patent"):

- Independent method Claim 36 and Claims 37, 41, 54-57, 60-62, 64 and 66 that depend from Claim 36.
- Independent apparatus Claim 68
- Independent apparatus Claim 69 and Claims 71 and 75 that depend from Claim 69.
- Independent method Claim 77 and Claims 79 and 82 that depend from Claim 77.
- Independent apparatus Claim 84 and Claims 87, 90 and 91 that depend from Claim 84.
- Independent method Claim 92 and Claims 95 and 98 that depend from Claim 92.
- Independent apparatus Claim 100 and Claim 104 that depends from Claim 100.

| '902 Patent: Claim 36 | Claim Construction and Intrinsic/Extrinsic Evidence | Infringement |
|---|---|---|
| **[Preamble]** A method for transferring data selectively by line switching or by packet switching from a first switch to a second switch, the first switch being part of or having access to a line-switching network and a packet switching network, comprising: | Should the preamble be deemed a limitation on the claim, the terms in the preamble should be construed according to their ordinary meaning to a person of skill in the art in light of – but without improperly importing limitations from – the intrinsic and extrinsic evidence.<br><br>**Intrinsic/Extrinsic Evidence:**<br><br>'902 Patent at Figs. 1, 3-5; cols. 1-7.<br><br>'453 File History: Second Supplemental Response dated 7/2/04.<br><br>US Pat. No. 4,996,685<br><br>WO 95/31060 | The accused devices perform "A method for transferring data selectively by line switching or by packet switching."<br><br>For example, Exhibit B (p. 2), entitled "IP Telephony Phased Migration" is Cisco's depiction of a system architecture that uses Cisco products to implement the claimed method.  Data is transferred from a first switch (e.g., Cisco 7200 router) to a second switch (e.g., Cisco 1700/2600XM/2691/2800/3700/3800 routers).<br><br>In this example, the first switch (Cisco 7200 router) is part of or has access to, a line-switching network (e.g., the "PSTN") and a packet-switching network (e.g., the "IP WAN" or the internet).<br><br>This claim chart refers to the Cisco 7200 router as the "first switch" and the Cisco 1700/2600XM/2691/2800/3700/3800 routers as a "second switch" for exemplary purposes, and it should be understood that the analysis similarly applies by a different combination of Cisco routers as the "first switch" and "second switch" – e.g., with the Cisco 7200 router as the |

| | | |
|---|---|---|
| | WO 95/25407.<br><br>Cisco Voice over IP Fundamentals. | "second switch" or the Cisco 2800 router as the "first switch."<br><br>This claim chart refers to the PSTN network for exemplary purposes of a line switching network, and it should be understood that line switching could be accomplished through ISDN or other line switching networks.<br><br>This claim chart refers to end terminals as being IP phone or analog phones for exemplary purposes, and it should be understood that an end terminal can be other devices, such as a computer executing a virtual phone program.<br><br>With respect to the exemplary scenarios, reference is made to the above.<br><br>**Exemplary Scenario 1:**<br><br>Access to a line-switching network and a packet-switching network is represented by the Cisco Routers A and B's use of the connection to the ISDN network and to the internet through the ISDN modules and network modules respectively.<br><br>**Exemplary Scenario 2:**<br><br>Access to a line-switching network and a packet-switching network is represented by the Cisco Routers A and B's use of the connection to the ISDN network and to the internet through the ISDN modules and network modules.<br><br>**Exemplary Scenario 3:**<br><br>Access to a line-switching network and a packet-switching network is represented by the Cisco Routers A and B's use of the connection to the ISDN network and to the internet through the ISDN modules and network modules. |
| **[1]** a) packetizing the data into data packets in the first switch if the | The terms in this limitation should be construed according to their ordinary meaning to a person of skill in the art in | As shown in Exhibit B (p. 2), the first switch (e.g., the Cisco 7200 router) can receive data from several sources at "Headquarters," which includes data received from IP phones as |

| data does not yet exist as data packets; | light of – but without improperly importing limitations from – the intrinsic and extrinsic evidence.<br><br>**Intrinsic/Extrinsic Evidence:**<br><br>'902 Patent at Figs. 1, 3-5; cols. 4, 9. | well as non-IP phones.<br><br>The non-packetized data received from the non-IP phones would be packetized.<br><br>With respect to the exemplary scenarios, reference is made to the above.<br><br>**Exemplary Scenario 1:**<br><br>"Packetizing the data ... if the data does not yet exist as data packets" is represented by the inherent requirements of transferring data through the internet.<br><br>**Exemplary Scenario 2:**<br><br>"Packetizing the data ... if the data does not yet exist as data packets" is represented by the inherent requirements of transferring data through the internet.<br><br>**Exemplary Scenario 3:**<br><br>"Packetizing the data ... if the data does not yet exist as data packets" is represented by the inherent requirements of transferring data through the internet. |
| **[2]** b) transferring the data packets from the first switch through the packet-switching network to the second switch; | The terms in this limitation should be construed according to their ordinary meaning to a person of skill in the art in light of – but without improperly importing limitations from – the intrinsic and extrinsic evidence.<br><br>**Intrinsic/Extrinsic Evidence:**<br><br>'902 Patent at Figs. 1, 3-5; col. 2-4. | Exhibit B (p. 2) shows that data packets from the first switch (e.g., Cisco 7200 router) located at "Headquarters" is transferred through the packet-switching network (e.g., IP WAN) to the second switch (e.g., Cisco 1700/2600XM/2691/2800/3700/3800 router) located at the "Branch Office."<br><br>With respect to the exemplary scenarios, reference is made to the above.<br><br>**Exemplary Scenario 1:**<br><br>"Transferring the data packets ... through the packet switch network" is represented by the transmission of data (e.g., SIP Invite Request) from Cisco Router A to Cisco Router B over the |

| | | internet. |
|---|---|---|
| | | **Exemplary Scenario 2:** |
| | | "Transferring the data packets … through the packet switch network" is represented by the transmission of data (e.g., SIP Invite Request) from Cisco Router A to Cisco Router B over the internet. |
| | | **Exemplary Scenario 3:** |
| | | "Transferring the data packets … through the packet switch network" is represented by the transmission of data (e.g., voice data) from Cisco Router A to Cisco Router B over the internet. |
| [3] c) checking whether a control signal exists for changing-over from the packet-switching data transfer of the data packets through the packet switching network to a line-switching connection to the second switch, wherein the control signal is produced by a network management system; | The terms in this limitation should be construed according to their ordinary meaning to a person of skill in the art in light of – but without improperly importing limitations from – the intrinsic and extrinsic evidence.<br><br>**Intrinsic/Extrinsic Evidence:**<br><br>'902 Patent at Figs. 1, 3-5; col. 9.<br><br>Cisco Voice over IP Fundamentals. | As explained in Exhibit E, "VoIP Call Admission Control,"(CAC) specific Measurement-Based CAC techniques are used to cause the switches (e.g., Cisco 7200 routers) to change-over from packet-switching (e.g., IP WAN) to line-switching (e.g., PSTN) after a determination, based upon network congestion (e.g., delay, packet loss, jitter, etc.) that the quality of service is unacceptable (e.g., below some predefined threshold).  (See Exhibit E, pp. 2-6, 18-26; see also Exhibit F, pp. 5-11).<br><br>In addition, so called "Local CAC Mechanisms" also can be used to cause the switches (e.g., Cisco 7200 routers) to change-over from packet-switching (e.g., IP WAN) to line-switching (e.g., PSTN). (See Exhibit E, pp. 2-6, 9-18).<br><br>The Cisco Call Manager (CCM) or Call Manager Express (CME) represents the network management system.<br><br>With respect to the exemplary scenarios, reference is made to the above.<br><br>**Exemplary Scenario 1:**<br><br>"Checking whether a control signal exists ..." is inherently |

| | | represented by Router A's change-over to the line-switching ISDN connection after receiving an "Internal Server Error" from Router B. |
| --- | --- | --- |
| | | "Wherein the control signal is produced by a network management system" is represented when the Call Manager Express software creates the control signal to change over after having received the "Internal Server Error" from Router B. |
| | | **Exemplary Scenario 2:** |
| | | "Checking whether a control signal exists ..." is represented inherently in Router A's change-over after failing to receive a confirmation from Cisco Router B that telephone B is reachable. |
| | | "Wherein the control signal is produced by a network management system" is represented when the Call Manager Express software creates the control signal to change over after having failed to receive a confirmation message from Router B that telephone B is reachable. |
| | | **Exemplary Scenario 3:** |
| | | "Checking whether a control signal exists ..." is represented inherently by Router A's change-over after receiving an "Internal Server Error" message from Router B |
| | | "Wherein the control signal is produced by a network management system" is represented when the Call Manager Express software creates the control signal to change over after having received the "Internal Server Error" from Router B. |
| **[4]** d) establishing the line-switching connection through the line-switching network to the second switch in | The terms in this limitation should be construed according to their ordinary meaning to a person of skill in the art in light of – but without improperly importing limitations from – the intrinsic | A line switching connection through the line-switching network (e.g., PSTN) to the second switch (e.g., Cisco 1700/2600XM/2691/2800/3700/3800 routers) in response to the control signal is established, if the line switching connection is not yet present. |

| | | |
|---|---|---|
| response to said control signal, if the line-switching connection is not yet present; and | and extrinsic evidence.<br><br>**Intrinsic/Extrinsic Evidence:**<br><br>'902 Patent at Figs. 1, 3-5; col. 9. | With respect to the exemplary scenarios reference is made to the above.<br><br>**Exemplary Scenario 1:**<br><br>"Establishing the line-switching connection" is represented by the establishment of a connection through the ISDN network by way of the ISDN modules.<br><br>**Exemplary Scenario 2:**<br><br>"Establishing the line-switching connection" is represented by the establishment of a connection through the ISDN network by way of the ISDN modules.<br><br>**Exemplary Scenario 3:**<br><br>"Establishing the line-switching connection" is represented by the establishment of a connection through the ISDN network by way of the ISDN modules. |
| **[5]** e) changing-over from the packet-switching data transfer of the data packets through the packet switching network to a line-switching data transfer in response to said control signal and transferring data over the line switching connection to the second switch. | The terms in this limitation should be construed according to their ordinary meaning to a person of skill in the art in light of – but without improperly importing limitations from – the intrinsic and extrinsic evidence.<br><br>**Intrinsic/Extrinsic Evidence:**<br><br>'902 Patent at Figs. 1, 3-5; col. 9. | Based upon the Measurement-Based CAC techniques and Local CAC techniques referenced above, change-over from packet-switching data transfer of the data packets through the packet-switching network (e.g., WAN) to a line-switching data transfer in response to the control signal and transferring data over the line switching connection (e.g., PSTN) to the second switch (e.g., Cisco 1700/2600XM/2691/2800/3700/3800 routers) occurs. (See Exhibit E, pp. 2-6, 18-26; see also Exhibit F, pp. 5-11; see also Exhibit E, pp. 2-6, 9-18).<br><br>With respect to the exemplary scenarios, reference is made to the above.<br><br>**Exemplary Scenario 1:**<br><br>"Changing-over…in response to said control signal" is represented by the creation of a connection over the ISDN network and continuation of the call after Router B sends an |

|  |  | "Internal Server Error" message to Router A and Router A generates a control signal. |
|  |  | **Exemplary Scenario 2:** |
|  |  | "Changing-over...in response to said control signal" is represented by the creation of a connection over the ISDN network after Router A fails to receive a confirmation message from Router B. |
|  |  | **Exemplary Scenario 3:** |
|  |  | "Changing-over...in response to said control signal" is represented by the creation of a connection over the ISDN network and continuation of the call after Router B sends an "Internal Server Error" message to Router A and Router A generates a control signal. |

| '902 Patent: Claim 37 | Claim Construction and Intrinsic/Extrinsic Evidence | Infringement |
|---|---|---|
| The method according to claim 35 or 36 wherein the data packets after changing over to the line-switching data transfer remain as data packets and are transferred as such by line-switching. | The terms in this limitation should be construed according to their ordinary meaning to a person of skill in the art in light of – but without improperly importing limitations from – the intrinsic and extrinsic evidence.<br><br>**Intrinsic/Extrinsic Evidence:**<br>'902 Patent at Figs. 1, 3-5; cols. 4, 9. | The limitations of Claim 36 are met, as discussed above.<br><br>After changing over to the line-switching data transfer, the switches (e.g., Cisco 7200 router) may transfer data over the line-switching network (e.g., PSTN) as data packets. |

| '902 Patent: Claim 41 | Claim Construction | Infringement |
|---|---|---|
| The method according to claim 35 or 36 wherein the line-switching network is an ISDN network having ISDN switches, the data packets have a TCP/IP format and data channels used for the line-switching data transfer are ISDN B channels. | The terms in this limitation should be construed according to their ordinary meaning to a person of skill in the art in light of – but without improperly importing limitations from – the intrinsic and extrinsic evidence.<br><br>**Intrinsic/Extrinsic Evidence:**<br>'902 Patent at Figs. 1, 3-5; cols. 4, 5, 7 and 8. | The limitations of Claim 36 are met, as discussed above.<br><br>Upon information and belief, the switches may transfer data through an ISDN using TCP/IP over the B channel. |

| '902 Patent: Claim 54 | Claim Construction and Intrinsic/Extrinsic Evidence | Infringement |
|---|---|---|
| The method according to claim 35 or 36, further comprising locating the first switch between at least one end terminal of a user and an access point of the packet switching network, wherein data are transmitted from the at least one end terminal to the first switch. | The terms in this limitation should be construed according to their ordinary meaning to a person of skill in the art in light of – but without improperly importing limitations from – the intrinsic and extrinsic evidence.<br><br>**Intrinsic/Extrinsic Evidence:**<br><br>'902 Patent at Figs. 1, 3-5; col. 2, 4-8;<br><br>ITU-T H.323. | The limitations of Claim 36 are met, as discussed above.<br><br>As shown in Exhibit B (p. 2), the first switch (e.g., Cisco 7200 router) is located between at least one end terminal of a user (e.g., an IP phone) and an access point of the packet switching network (e.g., IP WAN or other access points), wherein data are transmitted from the at least one end terminal to the first switch.<br><br>Exhibit B (p. 2) Data are transmitted from the at least one end terminal to the first switch.<br><br>With respect to the exemplary scenarios, reference is made to the above.<br><br>**Exemplary Scenario 1:**<br><br>The first switch is represented by Cisco Router A.<br><br>Access is provided by the router, switch or server of the ISP that connects Cisco Router A to the internet.<br><br>"Data are transmitted from at least one end terminal to the first switch" is represented by connections from the analog telephones through the ATA's to the Router A.<br><br>**Exemplary Scenario 2:**<br><br>The first switch is represented by Cisco Router A.<br><br>Access is provided by the router, switch or server of the ISP that connects Cisco Router A to the internet.<br><br>"Data are transmitted from at least one end terminal to the first switch" is represented by connections from the analog telephones through the ATA's to the Router A. |

| | | |
|---|---|---|
| | | **Exemplary Scenario 3:**<br><br>The first switch is represented by Cisco Router A.<br><br>Access is provided by the router, switch or server of the ISP that connects Cisco Router A to the internet.<br><br> "Data are transmitted from at least one end terminal to the first switch" is represented by connections from the analog telephones through the ATA's to the Router A. |

| '902 Patent: Claim 55 | Claim Construction and Intrinsic/Extrinsic Evidence | Infringement |
|---|---|---|
| The method according to claim 54, wherein at least one end terminal is part of a local area network. | The terms in this limitation should be construed according to their ordinary meaning to a person of skill in the art in light of – but without improperly importing limitations from – the intrinsic and extrinsic evidence.<br><br>**Intrinsic/Extrinsic Evidence:**<br><br>'902 Patent at Figs. 1, 3-5; col. 8. | The limitations of Claim 54 are met, as discussed above.<br><br>As shown in Exhibit B (p. 2), the IP phones at "Headquarters" are part of a local area network.<br><br>With respect to the exemplary scenarios, reference to the above is made.<br><br>**Exemplary Scenario 1:**<br><br>It is understood that the architecture of Scenario 1 could include a LAN of IP telephones, including IP telephone B2, interfaced with Router B.<br><br>**Exemplary Scenario 2:**<br><br>It is understood that the architecture of Scenario 2 could include a LAN of IP telephones, including IP telephone B, interfaced with Router B.<br><br>**Exemplary Scenario 3:**<br><br>It is understood that the architecture of Scenario 3 could include a LAN of IP telephones, including IP telephone B2, interfaced with Router B. |

| '902 Patent: Claim 56 | Claim Construction and Intrinsic/Extrinsic Evidence | Infringement |
|---|---|---|
| The method of claim 54, wherein at least one end terminal is a telephone. | The terms in this limitation should be construed according to their ordinary meaning to a person of skill in the art in light of – but without improperly importing limitations from – the intrinsic and extrinsic evidence.<br><br>**Intrinsic/Extrinsic Evidence:**<br><br>'902 Patent at Figs. 1, 3-5; cols. 7-8. | The limitations of Claim 54 are met, as discussed above.<br><br>As shown in Exhibit B (p. 2), at least one end terminal is a telephone.<br><br>With respect to the exemplary scenarios, reference is made to the above.<br><br>**Exemplary Scenario 1:**<br><br>"At least one end terminal is a telephone" is represented by Telephones A1, A2, B1 and B2.<br><br>**Exemplary Scenario 2:**<br><br>"At least one end terminal is a telephone" is represented by Telephones A and B.<br><br>**Exemplary Scenario 3:**<br><br>"At least one end terminal is a telephone" is represented by Telephones A, B1 and B2. |

| '902 Patent: Claim 57 | Claim Construction and Intrinsic/Extrinsic Evidence | Infringement |
|---|---|---|
| The method of claim 56, wherein the telephone is an analog phone. | The terms in this limitation should be construed according to their ordinary meaning to a person of skill in the art in light of – but without improperly importing limitations from – the intrinsic and extrinsic evidence.<br><br>**Intrinsic/Extrinsic Evidence:**<br><br>'902 Patent at Figs. 1, 3-5; col. 7.<br><br>Cisco Authorized Self-Study Guide. | The limitations of Claim 56 are met, as discussed above.<br><br>As shown in Exhibit B (p. 2), at least one end terminal is an analog phone.<br><br>**Exemplary Scenario 1:**<br><br>"Wherein the telephone is an analog phone" is represented by Analog Phones A1, A2 and B1.<br><br>**Exemplary Scenario 2:**<br><br>"Wherein the telephone is an analog phone" is represented by Analog Telephone A.<br><br>**Exemplary Scenario 3:**<br><br>"Wherein the telephone is an analog phone" is represented by Analog Telephone A. |

| '902 Patent: Claim 60 | Claim Construction and Intrinsic/Extrinsic Evidence | Infringement |
|---|---|---|
| The method of claim 54, wherein at least one end terminal is connected to a private branch exchange (PBX) which is in turn connected to the first switch. | The terms in this limitation should be construed according to their ordinary meaning to a person of skill in the art in light of – but without improperly importing limitations from – the intrinsic and extrinsic evidence. **Intrinsic/Extrinsic Evidence:** '902 Patent at Figs. 1, 3-5; cols. 7-8. | The limitations of Claim 54 are met, as discussed above. As shown in Exhibit B (p. 2), at least one end terminal (e.g., telephone) is connected to a private branch exchange (PBX) which is in turn connected to the first switch (e.g., Cisco 7200 router). With respect to the exemplary scenarios, reference is made to the above. **Exemplary Scenario 1:** It is understood that the architecture of Scenario 1 could be modified to interface telephones A1 and A2 to a PBX and this PBX to Router A. **Exemplary Scenario 2:** It is understood that the architecture of Scenario 2 could be modified to interface telephone A to a PBX and this PBX to Router A. **Exemplary Scenario 3:** It is understood that the architecture of Scenario 3 could be modified to interface telephone A to a PBX and this PBX to Router A. |

| '902 Patent: Claim 61 | Claim Construction and Intrinsic/Extrinsic Evidence | Infringement |
|---|---|---|
| The method of claim 54, wherein the data produced by at least one end terminal are analog data | The terms in this limitation should be construed according to their ordinary meaning to a person of skill in the art in light of – but without improperly importing limitations from – the intrinsic and extrinsic evidence.<br><br>**Intrinsic/Extrinsic Evidence:**<br><br>'902 Patent at Figs. 1, 3-5; cols. 7-8. | The limitations of Claim 54 are met, as discussed above.<br><br>As shown in Exhibit B (p. 2), at least one end terminal is a non-IP telephone that produces analog data.<br><br>With respect to the exemplary scenarios, reference to the above is made.<br><br>**Exemplary Scenario 1:**<br><br>Analog phones A1 and A2 produce analog data.<br><br>**Exemplary Scenario 2:**<br><br>Analog phone A produces analog data.<br><br>**Exemplary Scenario 3:**<br><br>Analog phone A produces analog data. |

| '902 Patent: Claim 62 | Claim Construction and Intrinsic/Extrinsic Evidence | Infringement |
|---|---|---|
| The method of claim 54, wherein the data produced by at least one end terminal are digital, non-packetized data. | The terms in this limitation should be construed according to their ordinary meaning to a person of skill in the art in light of – but without improperly importing limitations from – the intrinsic and extrinsic evidence.<br><br>**Intrinsic/Extrinsic Evidence:**<br><br>'902 Patent at col. 4, 9.<br><br>'453 File History: Supplemental Amendment dated 6/2/04; Supplemental Response dated 6/3/04; Second Supplemental Response dated 7/2/04. | The limitations of Claim 54 are met, as discussed above.<br><br>As shown in Exhibit B (p. 2), data produced at least one end terminal may be digital, non-packetized data (e.g., telephone located at "Headquarters" or "Branch Offices"). See generally, Cisco IP Communications Voice/Fax Network Module (Exhibit C); Cisco 1700, 2600, 2800, 3700 And 3800 Series Voice Gateway Router Interoperability With Cisco Call Manager (Exhibit B); PSTN Fallback for Cisco 7200 and 7500 Series Router (Exhibit D). |
| **'902 Patent: Claim 64** | **Claim Construction and Intrinsic/Extrinsic Evidence** | **Infringement** |
| The method of claim 54, wherein the first switch is located between a plurality of user end terminals and an access point of the packet switch network wherein data are transmitted from the plurality of end terminals to the first switch. | The terms in this limitation should be construed according to their ordinary meaning to a person of skill in the art in light of – but without improperly importing limitations from – the intrinsic and extrinsic evidence.<br><br>**Intrinsic/Extrinsic Evidence:**<br><br>'902 Patent at Figs. 1, 3-5; cols. 7-8. | The limitations of Claim 54 are met, as discussed above.<br><br>As shown in Exhibit B (p. 2), the first switch (e.g., Cisco 7200 router) is located between a plurality of user end terminals (e.g., IP and non-IP telephones) and an access point of the packet switch network (e.g., IP WAN or other access points), wherein data are transmitted from the plurality of end terminals to the first switch.<br><br>With respect to the exemplary scenarios, reference is made to the above.<br><br>**Exemplary Scenario 1:**<br><br>The first switch is represented by Cisco Router A |

| | | |
|---|---|---|
| | | A plurality of user end terminals is represented by the telephones connected to Router A, including Telephones A1 and A2 |
| | | An access point of the packet switch network is represented by the switch, router or server of the ISP that connects Router A to the internet. |
| | | **Exemplary Scenario 2:** |
| | | The first switch is represented by Cisco Router A. |
| | | A plurality of user end terminals is represented by the telephones connected to Router A, including Telephone A. |
| | | An access point of the packet switch network is represented by the switch, router or server of the ISP that connects the Router A to the internet. |
| | | **Exemplary Scenario 3:** |
| | | The first switch is represented by Cisco Router A. |
| | | A plurality of user end terminals is represented by the telephones connected to Router A, including Telephone A |
| | | An access point of the packet switch network is represented by the switch, router or server of the ISP that connects the Router A to the internet. |

| '902 Patent: Claim 66 | Claim Construction and Intrinsic/Extrinsic Evidence | Infringement |
|---|---|---|
| The method of claim 35 or 36, in which transferring the data through the packet-switching network comprises transferring the data through the internet. | The terms in this limitation should be construed according to their ordinary meaning to a person of skill in the art in light of – but without improperly importing limitations from – the intrinsic and extrinsic evidence.<br><br>**Intrinsic/Extrinsic Evidence:**<br>'902 Patent at Figs. 1, 3-5; cols. 2, 4, 6-8. | The limitations of Claim 36 are met, as discussed above.<br><br>As shown in Exhibit B (p. 2), the switches transfer data through the packet-switching network (e.g., IP WAN) comprises transferring the data through the internet).<br><br>With respect to the exemplary scenarios, reference to the above is made.<br><br>**Exemplary Scenario 1:**<br>"Transferring the data … comprises transferring data through the internet" is represented by the use of the connection of Router A to the internet.  Initially data is transferred over the internet to Router B.<br><br>**Exemplary Scenario 2:**<br>"Transferring the data … comprises transferring data through the internet" is represented by the use of the connection of Router A to the internet.  Initially data is transferred over the internet to Router B.<br><br>**Exemplary Scenario 3:**<br>"Transferring the data … comprises transferring data through the internet" is represented by the use of the connection of Router A to the internet.  Initially data is transferred over the internet to Router B. |
| **'902 Patent: Claim 68** | **Claim Construction** | **Infringement** |
| **[Preamble]** Switching apparatus for selectively routing a telephone call | Should the preamble be deemed a limitation on the claim, the terms in the preamble should be construed according to | The accused devices represent the "Switching apparatus for selectively routing a telephone call." |

| from a first end terminal to a second end terminal, comprising: | their ordinary meaning to a person of skill in the art in light of – but without improperly importing limitations from – the intrinsic and extrinsic evidence. | For example, Exhibit B (p. 2), entitled "IP Telephony Phased Migration" is Cisco's depiction of a system architecture that uses Cisco products representing the claimed switching apparatus. |
|---|---|---|
| | **Intrinsic/Extrinsic Evidence:** | In the system architecture of Exhibit B (p. 2), a switch (e.g., the Cisco 7200 router located at "Headquarters") selectively routes a call from a first end terminal (e.g., telephone) selectively by line switching (e.g., over the PSTN) or by packet switching (e.g., over the "IP WAN" or the internet) to a second end terminal (e.g., telephone), at "Branch Office." |
| | '902 Patent at Figs. 1, 3 and 4; cols. 1, 7-9. | |
| | '902 File History: Amendment After Final dated 3/20/2006. | |
| | '453 File History: Supplemental Amendment dated 6/3/04; Supplemental Response dated 6/2/04. | Alternatively, a telephone at one of the "Branch Offices" can be considered the first end terminal at the first user's premises. In this example, the device depicted as the Cisco 1700/ 2600XM/ 2691/ 2800/ 3700/ 3800 represents the "Switching apparatus for routing a telephone call," which similarly routes telephone calls through the line- switched network (e.g., the "PSTN") or by packet switching (e.g., over the "IP WAN" or the internet) to a second end terminal (e.g., telephone), at a second user's premises, i.e. the "Headquarters." |
| | ITU-T H.323. | |
| | Cisco Voice over IP Fundamentals. | |
| | | See generally, Cisco IP Communications Voice/Fax Network Module (Exhibit C); Cisco 1700, 2600, 2800, 3700 And 3800 Series Voice Gateway Router Interoperability With Cisco Call Manager (Exhibit B); PSTN Fallback for Cisco 7200 and 7500 Series Router (Exhibit D). |
| | | This claim chart refers to the Cisco 7200 router as the "switch" for exemplary purposes, and it should be understood that the analysis similarly applies by other accused Cisco routers as the "switch" one of the Cisco 1700/2600XM/2691/2800/3700/3800 routers as the "switch." |
| | | This claim chart refers to the PSTN network for exemplary purposes, and it should be understood that it could be |

| | | |
|---|---|---|
| | | accomplished through ISDN or any other line-switching network. |
| | | This claim chart refers to end terminals as being IP phone or analog phones for exemplary purposes, and it should be understood that an end terminal can be a virtual phone. |
| | | With respect to the exemplary scenarios, reference is made to the above. |
| | | **Exemplary Scenario 1:** |
| | | Switching Apparatus is represented by Cisco Router A. |
| | | **Exemplary Scenario 2:** |
| | | Switching Apparatus is represented by Cisco Router A. |
| **[1]** a device that provides access to a packet switching network through which data can be sent for delivery to the second end terminal; | The terms in this limitation should be construed according to their ordinary meaning to a person of skill in the art in light of – but without improperly importing limitations from – the intrinsic and extrinsic evidence.<br><br>**Intrinsic/Extrinsic Evidence:**<br><br>'902 Patent at Figs. 1, 3-5; cols. 8-9 | As shown in Exhibit B (p. 2), the switch (e.g., Cisco 7200 router) provides access to the packet switching network (e.g., IP WAN) through which data can be sent for delivery to the second end terminal (e.g., telephone).<br><br>With respect to the exemplary scenarios, reference is made to the above.<br><br>**Exemplary Scenario 1:**<br><br>Access to a packet switching network is represented by the Router A connection to the internet.<br><br>Second End Terminal is represented by Telephones B1 or B2.<br><br>**Exemplary Scenario 2:**<br><br>Access to a packet switching network is represented by the Router A connection to the internet.<br><br>Second End Terminal is represented by Cisco IP Telephone B. |
| **[2]** means for | The terms in this limitation should be | As shown in Exhibit B (p. 2), the switch (e.g., Cisco 7200 |

| | | |
|---|---|---|
| transferring first data of the telephone call originated by the first terminal through the packet switching network for delivery to the second end terminal; | construed according to their ordinary meaning to a person of skill in the art in light of – but without improperly importing limitations from – the intrinsic and extrinsic evidence.<br><br>This is a means-plus-function limitation subject to construction under 35 U.S.C. § 112 ¶6. This limitation literally includes all structure that performs the claimed function and is identical or equivalent to the corresponding structure disclosed in the '902 Patent for performing the claimed function.<br><br>CLAIMED FUNCTION: The claimed function is transferring first data of the telephone call originated by the first terminal through the packet-switching network for delivery to the second end terminal.<br><br>CORRESPONDING STRUCTURES: Structure disclosed in the '902 Patent for performing the claimed function includes structure disclosed in the '902 Patent at Figures 1, 3 and 4 and columns 3-4, 7-9 (e.g., switch 7a, switch 7 or IP switch 72).<br><br>Intrinsic/Extrinsic Evidence:<br><br>'902 Patent at Figs. 1, 3-5; cols. 3-5, 7-9. | router) is connected to the packet-switching network (e.g., IP WAN).<br><br>First data originated by the first terminal (e.g., telephone at "Headquarters") is transferred through the packet switching network (e.g., IP WAN) for delivery to the second end terminal (e.g., telephone at "Branch Offices").<br><br>With respect to the exemplary scenarios, reference is made to the above.<br><br>**Exemplary Scenario 1:**<br><br>"Means for transferring first data" is the Network Module that interfaces the Router A to the internet.<br><br>**Exemplary Scenario 2:**<br><br>"Means for transferring first data" is the Network Module that interfaces the Router A to the internet. |
| [3] a device for establishing a connection to a line- | The terms in this limitation should be construed according to their ordinary meaning to a person of skill in the art in | As shown in Exhibit B (p. 2), the switch (e.g., Cisco 7200 router) connects to the line-switching network (e.g., PSTN) through which data can be sent for delivery to the second end |

| switching network through which data can be sent for delivery to the second end terminal; | light of – but without improperly importing limitations from – the intrinsic and extrinsic evidence.<br><br>**Intrinsic/Extrinsic Evidence:**<br><br>'902 Patent at Figs. 1, 3-5; cols. 3-4, 8-10.<br><br>'902 File History: Amendment After Final dated 7/3/03; Amendment dated 3/19/04; Supplemental Response dated 6/2/04; Second Supplemental Response dated 7/2/04. | terminal (e.g., telephone at "Branch Offices").<br><br>With respect to exemplary scenarios, reference is made to the above.<br><br>**Exemplary Scenario 1:**<br><br>"A device for establishing a connection to a line-switching network..." is represented by the ISDN Modules.<br><br>**Exemplary Scenario 2:**<br><br>"A device for establishing a connection to a line-switching network..." is represented by the ISDN Modules. |
|---|---|---|
| [4] means for transferring second data of the telephone call originated by the first terminal over the connection through the line-switching network for delivery to the second end terminal; and | The terms in this limitation should be construed according to their ordinary meaning to a person of skill in the art in light of – but without improperly importing limitations from – the intrinsic and extrinsic evidence.<br><br>This is a means-plus-function limitation subject to construction under 35 U.S.C. § 112 ¶6. This limitation literally includes all structure that performs the claimed function and is identical or equivalent to the corresponding structure disclosed in the '902 Patent for performing the claimed function.<br><br>**CLAIMED FUNCTION**: The claimed function is transferring second data of the telephone call originated by the first end terminal over the connection through the line-switching network for delivery to the | As shown in Exhibit B (p. 2), the switch (e.g., Cisco 7200 router) connects to the line-switching network (e.g., PSTN) through which second data originated by the first terminal (e.g., telephone at "Headquarters") can be transferred for delivery to the second end terminal (e.g., telephone at "Branch Offices").<br><br>With respect to the exemplary scenarios, reference is made to the above.<br><br>**Exemplary Scenario 1:**<br><br>"Means for transferring second data of the telephone call through the line-switching network..." is represented by the ISDN Module.<br><br>**Exemplary Scenario 2:**<br><br>"Means for transferring second data of the telephone call through the line-switching network..." is represented by the ISDN Module. |

| | | |
|---|---|---|
| | second end terminal.<br><br>**CORRESPONDING STRUCTURES:** Structure disclosed in the '902 Patent for performing the claimed function includes structure disclosed in the '902 Patent in Figures 1, 3 and 4 and columns 3, 8-9 (e.g., switch 7a, switch 7 or line-switching device 73).<br><br>**Intrinsic/Extrinsic Evidence:**<br><br>'902 Patent at Figs. 1, 3-5; col. 3, 8-10. | |
| [5] means responsive to a control signal for changing-over from a packet-switching mode of transfer of the first data of the telephone call to a line-switching mode of transfer of the second data of the telephone call without interruption of a call-up procedure, wherein said control signal is produced by a network management system. | The terms in this limitation should be construed according to their ordinary meaning to a person of skill in the art in light of – but without improperly importing limitations from – the intrinsic and extrinsic evidence.<br><br>This is a means-plus-function limitation subject to construction under 35 U.S.C. § 112 ¶6. This limitation literally includes all structure that performs the claimed function and is identical or equivalent to the corresponding structure disclosed in the '902 Patent for performing the claimed function.<br><br>**CLAIMED FUNCTION:** The claimed function is changing-over from a packet-switching mode of transfer of the first data of the telephone call to a line-switching mode of transfer of the second data of the telephone call without interruption of a | As explained in Exhibit E, "VoIP Call Admission Control,"(CAC) specific Measurement-Based CAC techniques are used to cause the switches (e.g., Cisco 7200 routers) to changeover from packet-switching (e.g., WAN) to line-switching (e.g., PSTN) after a determination, based upon network congestion (e.g., delay, packet loss, jitter, etc.) that the quality of service is unacceptable (e.g., below some predefined threshold).  (See Exhibit E, pp. 2-6, 18-26; see also Exhibit F, pp. 5-11).<br><br>In addition, so called "Local CAC Mechanisms" also can be used to cause the switches (e.g., Cisco 7200 routers) to change-over from packet-switching (e.g., WAN) to line-switching (e.g., PSTN). (See Exhibit E, pp. 2-6, 9-18).<br><br>The Cisco Call Manager (CCM) or Call Manager Express (CME) represents the network management system.<br><br>With respect to the exemplary scenarios, reference is made to the above.<br><br>**Exemplary Scenario 1:**<br><br>"Means responsive to a control signal ..." is represented by |

| | call set-up procedure. | Router A that generates and responds to the control signal after having received an "Internal Server Error" message from Router B. |
|---|---|---|
| | **CORRESPONDING STRUCTURES:** Structure disclosed in the '902 Patent for performing the claimed function include structure disclosed in the '902 Patent in Figures 1, 3 and 4 and columns 7-9, 11 (e.g., switch 7a, switch 7, control device 71 or change-over control device 711). | "Without Interruption of a call [set]-up procedure is represented by the caller at Telephone A not needing to hang up and redial. |
| | | "Produced by a network management system" is represented by the Call Manager Express software generating the control signal. |
| | **Intrinsic/Extrinsic Evidence:** | |
| | '902 Patent at Figs. 1, 3-5; cols. 7-9, 11. | **Exemplary Scenario 2:** |
| | '902 File History: Amendment dated 3/20/06. | "Means responsive to a control signal ..." is represented by Router A that generates and responds to the control signal after having failed to receive a confirmation from Router B that telephone B is reachable. |
| | Cisco Voice over IP Fundamentals. | "Without Interruption of a call [set]-up procedure is represented by the caller at Telephone A not needing to hang up and redial. |
| | | "Produced by a network management system" is represented by the Call Manager Express software generating the control signal. |