EXHIBIT 12

(PART 2 OF 2)

Application/Control Number: 95/001,001                                              Page 31
Art Unit: 3992

**d) establishing the line-switching connection through the line-switching network to the second switch in response to said control signal, if the line-switching connection is not yet present; and**

Jonas discloses the source computer designates data packets to be transmitted over the bypass circuit-switched telephone network. These data packets are detected by the source router which establishes a connection to the destination router via the bypass circuit-switched telephone network, (abstract; col. 3, lines 44-48; col. 4, line 67-col. 5, line 3, 58-60).

**e) changing-over from the packet-switching data transfer of the data packets through the packet switching network to a line-switching data transfer in response to said control signal and transferring data over the line switching connection to the second switch.**

Jonas discloses the sending router computer recognizes the request to transmit over the bypass network, establishes a connection over the circuit-switched telephone network, and then transmits the packet over the bypass circuit-switched telephone network.... This is accomplished by having the system monitor the transmission delay between the source router 20 and destination router 21. If this delay rises above a threshold value the source router 20 will establish a connection over the bypass network 30, (col. 3, line 44-48; col. 5, line 56-60). Jonas, therefore teaches the use of a threshold value to trigger a signal to switch over to the bypass network and transmit over this line-switched network.

*Regarding claims 37,54,55,60,61,64 and 66:*

The rejection was proposed by the third party requester in the request for reexamination, and it is adopted for the reasons set forth in the request for reexamination at page 167 (claims 37/36 under Jonas '792), page 170 (claims 54/36 under Jonas '792), page 173 (claims 55/54/36

Application/Control Number: 95/001,001                                               Page 32
Art Unit: 3992

under Jonas '792), page 177 (claims 60/54/36 under Jonas '792), page 179 (claims 61/54/36

under Jonas '792), page 181 (claims 64/54/36 under Jonas '792), page 184 (claims 66/36 under

Jonas '792), which are hereby incorporated by reference.

### *Regarding claim 68:*

**Switching apparatus for selectively routing a telephone call from a first end
terminal to a second end terminal, comprising:**

Jonas discloses a switching apparatus for transferring data selectively by line switching

(Bypass Network 30) or by packet switching (Internet 40) from a first switch (Router 20) to a

second switch (Router 21), the first switch being part of or having access to a line-switching

network (Bypass Network 30) and a packet switching network (Internet 40), (fig. 1; col. 3, lines

35-48)

**a device that provides access to a packet switching network through which data can
be sent for delivery to the second end terminal;**

Jonas discloses transferring the data packets from a device (Router 20) through the

packet-switching network (Internet 40) to Router 21. Normally, hosts 1 and 2 would transmit

data to each other through routers 20 and 21 over the Internet 40 [packet-switching network],

(col. 4, lines 13-14).

**means for transferring first data of the telephone call originated by the first
terminal through the packet switching network for delivery to the second end terminal;**

Jonas discloses Router 20 for transferring first data (a packet or packets in a stream of

packets) of the telephone call originated by the first terminal (host 1) through the packet

Application/Control Number: 95/001,001                                    Page 33
Art Unit: 3992

switching network (Internet 40) for delivery to the second end terminal (Host 2). Normally, hosts

1 and 2 would transmit data to each other through routers 20 and 21 over the Internet 40, (col. 4,

lines 13-14).

**a device for establishing a connection to a line-switching network through which**
**data can be sent for delivery to the second end terminal;**

Jonas discloses a device (Router 20) for establishing a connection to a line-switching

network (Bypass network 30) through which data can be sent for delivery to the second end

terminal (Host 2). "The source router 20 then establishes a connection (i.e. "dials" the call) over

the circuit-switched [line-switched] network 30 to the destination router 21..., (col. 4, line 67-col.

5, line 3).

**means for transferring second data of the telephone call originated by the first**
**terminal over the connection through the line-switching network for delivery to the second**
**end terminal;**

Jonas discloses (Router 20) for transferring second data (a portion of packets in a stream

of packets) of the telephone call originated by the first terminal (Host 1) over the connection

through the line-switching network (Bypass Network 30) for delivery to the second end terminal

(Host 2). The destination router 21 will receive notification of an incoming call over the circuit-

switched network and execute a process to accept the connection and integrate data packets from

this connection into the packets received from the packet-switched connection, (col. 4, line 67-

col. 5, line 3).

**and means responsive to a control signal for changing-over from a packet-switching**
**mode of transfer of the first data of the telephone call to a line-switching mode of transfer**

Application/Control Number: 95/001,001                                    Page 34
Art Unit: 3992

**of the second data of the telephone call without interruption of a call-up procedure,**

**wherein said control signal is produced by a network management system.**

Jonas discloses the sending router computer recognizes the request to transmit over the

bypass network, establishes a connection over the circuit-switched telephone network, and then

transmits the packet over the bypass circuit-switched telephone network.... This is accomplished

by having the system monitor the transmission delay between the source router 20 and

destination router 21. If this delay rises above a threshold value the source router 20 will

establish a connection over the bypass network 30, (col. 3, line 44-48; col. 5, line 56-60). Jonas,

therefore teaches the use of a threshold value to trigger a signal (control signal) to switch over to

the bypass network and transmit over this line-switched network.


*Regarding claim 69:*

**Switching apparatus for selectively routing a telephone call from a first end**

**terminal to a second end terminal, comprising:**

Jonas discloses a switching apparatus (Router 20) for selectively routing a telephone call

from a first end terminal (Host 1) to a second end terminal (Host 2). Hosts 1 and 2 would

transmit data to each other through routers 20 and 21 over the Internet 40, (col. 4, lines 13-14).

**means for establishing a connection to a packet switching network through which**

**data can be sent to the second end terminal;**

Jonas discloses a device (Router 20) that establishes a connection to a packet switching

network (the Internet) through which data can be sent for to the second end terminal. Normally,

hosts 1 and 2 would transmit data to each other through routers 20 and 21 over the Internet 40,

Application/Control Number: 95/001,001                                    Page 35
Art Unit: 3992

(col. 4, lines 13-14). Host 1 may be permanently connected to router 20 via a phone line leased

from the local telephone service 11, or, alternatively, connected to router 20 via a switched dial-

up connection provided by the local telephone service 11, using a modem, ISDN adapter (not

shown) or other device for transmitting data. Routers 20 and 21 are typically provided by an

Internet Commercial Service Provider, however, alternate configurations are also available, such

as one or more of the hosts being directly connected to the Internet as a router or gateway

computer.

**means for transferring first data of the telephone call originated by the first end**

**terminal over the connection through the packet switching network for delivery to the**

**second end terminal,**

Jonas discloses Router 20 for transferring first data (a packet or packets in a stream of

packets) of the telephone call originated by the first terminal (host 1) through the packet

switching network (Internet 40) for delivery to the second end terminal (Host 2). Normally, hosts

1 and 2 would transmit data to each other through routers 20 and 21 over the Internet 40, (col. 4,

lines 13-14).

**means for establishing a connection to a line-switching network through which data**

**can be sent for delivery to the second end terminal;**

Jonas discloses a device (Router 20) for establishing a connection to a line-switching

network (Bypass network 30) through which data can be sent for delivery to the second end

terminal (Host 2). "The source router 20 then establishes a connection (i.e. "dials" the call) over

the circuit-switched [line-switched] network 30 to the destination router 21...., (col. 4, line 67-

col. 5, line 3).

**means for transferring second data of the telephone call originated by first end
terminal over the connection through the line-switching network for delivery to the second
end terminal; and**

        Jonas discloses (Router 20) for transferring second data (a portion of packets in a stream

of packets) of the telephone call originated by the first terminal (Host 1) over the connection

through the line-switching network (Bypass Network 30) for delivery to the second end terminal

(Host 2). "The destination router 21 will receive notification of an incoming call over the circuit-

switched network and execute a process to accept the connection and integrate data packets from

this connection [second data] into the packets received from the packet-switched connection

[first data]."

**means responsive to a control signal for changing-over from a packet-switching
mode of transfer of the first data of the telephone call to a line-switching mode of transfer
of the second data of the telephone call without interruption of a call set-up procedure.**

        Jonas discloses responding to control signal to change from the packet switching network

(Internet 40) to a line-switching connection (Bypass Network 30) to the second switch (Router

21). Jonas discloses if conditions are yet to change over from Internet 50 to Bypass Network

30. Certain applications, may wish to dynamically take advantage of both the inherent cost

benefit of using the packet-switched Internet and the minimal delay time of circuit-switched

telephone networks. This is accomplished by having the system monitor the transmission delay

between the source router 20 and destination router 21. If this delay rises above a threshold value

the source router 20 will establish a connection over the bypass network 30. The source router 20

may detect the transmission delay to the destination router 21 using a variety of measures known

to those skilled in the art, including topological delay time for the transmission..., (col. 5, lines 63-64).

### Regarding claims 71 and 75:

The rejection was proposed by the third party requester in the request for reexamination, and it is adopted for the reasons set forth in the request for reexamination at page 261 (claim 71 under Jonas '792) and pages 266-267 (claim 75 under Jonas '792), which are hereby incorporated by reference.

### Regarding claim 77:

**A method of selectively routing a telephone call from a first end terminal to a second end terminal, comprising:**

Jonas discloses a switching apparatus (Router 20) for selectively routing a telephone call from a first end terminal (Host 1) to a second end terminal (Host 2). Hosts 1 and 2 would transmit data to each other through routers 20 and 21 over the Internet 40, (col. 4, lines 13-14).

**establishing access of said first end terminal to a packet switching network through which data can be sent for delivery to the second end terminal;**

Jonas discloses a device (Router 20) that establishes a connection to a packet switching network (the Internet) through which data can be sent for to the second end terminal. Normally, hosts 1 and 2 would transmit data to each other through routers 20 and 21 over the Internet 40, (col. 4, lines 13-14). Host 1 may be permanently connected to router 20 via a phone line leased from the local telephone service 11, or, alternatively, connected to router 20 via a switched dial-up connection provided by the local telephone service 11, using a modem, ISDN adapter (not

shown) or other device for transmitting data. Routers 20 and 21 are typically provided by an

Internet Commercial Service Provider, however, alternate configurations are also available, such

as one or more of the hosts being directly connected to the Internet as a router or gateway

computer.

   **transferring first data of the telephone call originated by the first end terminal over
the packet switching network for delivery to the second end terminal,**

   Jonas discloses Router 20 for transferring first data (a packet or packets in a stream of

packets) of the telephone call originated by the first terminal (host 1) through the packet

switching network (Internet 40) for delivery to the second end terminal (Host 2). Normally, hosts

1 and 2 would transmit data to each other through routers 20 and 21 over the Internet 40, (col. 4,

lines 13-14).

   **responding to a control signal for changing-over from a packet-switching mode of
transfer of the first data of the telephone call to a line-switching mode of transfer of second
data of the telephone call originated by the first end terminal without interruption of a call
set-up procedure,**

   Jonas discloses responding to control signal to change from the packet switching network

(Internet 40) to a line-switching connection (Bypass Network 30) to the second switch (Router

21). Jonas discloses if conditions are yet to change over from Internet 50 to Bypass Network

30. Certain applications, may wish to dynamically take advantage of both the inherent cost

benefit of using the packet-switched Internet and the minimal delay time of circuit-switched

telephone networks. This is accomplished by having the system monitor the transmission delay

between the source router 20 and destination router 21. If this delay rises above a threshold value

Application/Control Number: 95/001,001                                    Page 39
Art Unit: 3992

the source router 20 will establish a connection over the bypass network 30. The source router 20

may detect the transmission delay to the destination router 21 using a variety of measures known

to those skilled in the art, including topological delay time for the transmission..., (col. 5, lines

63-64).

> **by establishing a connection from said first end terminal to a line-switching network**
> **through which data can be sent for delivery to the second end terminal and establishing**
> **said line-switching mode of transfer of the second data of the telephone call over the**
> **connection through the line-switching network for delivery to the second end terminal.**

Jonas discloses a device (Router 20) for establishing a connection to a line-switching

network (Bypass network 30) through which data can be sent for delivery to the second end

terminal (Host 2). The source router 20 then establishes a connection (i.e. "dials" the call) over

the circuit-switched [line-switched] network 30 to the destination router 21...., (col. 4, line 67-

col. 5, line 3).

Jonas discloses (Router 20) for transferring second data (a portion of packets in a stream

of packets) of the telephone call originated by the first terminal (Host 1) over the connection

through the line-switching network (Bypass Network 30) for delivery to the second end terminal

(Host 2). The destination router 21 will receive notification of an incoming call over the circuit-

switched network and execute a process to accept the connection and integrate data packets from

this connection into the packets received from the packet-switched connection.

***Regarding claims 79 and 82:***

The rejection was proposed by the third party requester in the request for reexamination,

and it <u>is adopted</u> for the reasons set forth in the request for reexamination at pages 291-292

Application/Control Number: 95/001,001                                          Page 40
Art Unit: 3992

(claim 79 under Jonas '792) and page 295 (claim 82 under Jonas '792), which are hereby

incorporated by reference.


### *Regarding claim 84:*

      **Switching apparatus for switching data packets from multiple origin end terminals,**

**the data packets containing headers including information identifying respective origin and**

**destination end terminals, the switching apparatus comprising:**

      Jonas discloses a switching apparatus (Router 20) for switching data packets between

terminals. The Jonas patent describes how "[t]ens of thousands of computers are networked

together via a public packet-switched network known as the World-wide or Global Internet

(the "Internet"). Any two computers connected to the Internet can transmit data to each other

using communications protocols named TCP (Transmission Control Protocol) and IP (Internet

Protocol), (col. 1, lines 16-22).

      Jonas discloses every data packet transmitted between two hosts via TCP/IP contains a

"header" that includes among other fields, (i) the internet address of the source host (the host

generating and sending the packet) and (ii) the internet address of the destination host (the host

intended to receive the packet, (col. 1, lines 34-41). Jonas discloses packets which need to be

sent over the alternative network may be so designated in the IP header or through other means.

The sending router computer recognizes the request to transmit over the bypass network,

establishes a connection over the circuit-switched telephone network, and then transmits the

packet over the bypass circuit- switched telephone network, (col. 3, lines 35-45).

Application/Control Number: 95/001,001                                    Page 41
Art Unit: 3992

**a packet switching device for transferring data packets through a packet switching network through which data can be sent for delivery to destination end terminals;**

Jonas discloses Router 20 for transferring data (a packet or packets in a stream of packets) of the telephone call originated by a terminal (e.g. Host 1) through the  packet switching network (Internet 40) for delivery to the second end terminal (Host 2). Normally, hosts 1 and 2 would transmit data to each other through routers 20 and 21 over the Internet 40, (col. 4, lines 13-14). Host 1 may be permanently connected to router 20 via a phone line leased from the local telephone service 11, or, alternatively, connected to router 20 via a switched dial-up connection provided by the local telephone service 11, using a modem (not shown), ISDN adapter (not shown) or other device for transmitting data. Routers 20 and 21 are typically provided by an Internet Commercial Service Provider, however, alternate configurations are also available, such as one or more of the hosts being directly connected to the Internet as a router or gateway computer, (col. 4, lines 3-12).

**a line switching device for establishing line connections through a line-switching network through which data can be sent to the destination end terminals; and**

Jonas discloses a device (Router 20) for establishing a connection to a line-switching network (Bypass network 30) through which data can be sent for delivery to end terminals (e.g. Host 2). The source router 20 then establishes a connection (i.e. "dials" the call) over the circuit-switched [line-switched] network 30 to the destination router 21 ...., (col. 4, line 67-col. 5, line 3).

Application/Control Number: 95/001,001                                    Page 42
Art Unit: 3992

**a control device connected to the packet switching device and the line switching device for directing the data packets from the multiple origin end terminals to either the packet switching device or to the line switching device,**

Jonas discloses (Router 20) for transferring data (a portion of packets in a stream of packets) of the telephone call through the line-switching network (Bypass Network 30) or the packet switching network (Internet 40). The destination router 21 will receive notification of an incoming call over the circuit-switched network and execute a process to accept the connection and integrate data packets from this connection into the packets received from the packet-switched connection. Jonas discloses several methods for designating that a packet is to be sent over the bypass network 30 may be used. Preferably, packets to be transmitted over the bypass network 30 are so designated in the IP header 100. (FIG. 3), (col. 4, lines 42-45). The host computers are each connected to the public packet-switched network via router computers. Each router computer is, additionally, able to connect with one or more other router computers via the circuit-switched telephone network. Packets which need to be sent over the alternative network may be so designated in the IP header or through other means, (col. 3, lines 38-44, 61-64).

**the control device being responsive to the data packet headers for controlling the packet switching device and the line switching device for establishing and maintaining respective communications connections for data transfer with real-time properties between origin end terminals and destination end terminals,**

Jonas discloses responding to a control signal to change from the packet switching network (Internet 40) to a line-switching connection (Bypass Network 30). Alternatively, specialized applications for transmitting secret or time critical data may connect to a specific port

Application/Control Number: 95/001,001                                    Page 43
Art Unit: 3992

of the router's 20 operating system. This port is preconfigured to reliably route the data over the

bypass network. A third method for designating a packet for the bypass network is to transmit

the message to the router with a special Internet source address or destination address, (col. 4,

lines 45-52). These special applications trigger the signal to change networks. Data transfer with

real time properties include "time critical data" as mentioned above.

**the control device also being responsive to a control signal for changing-over from**

**packet-switching transfer of first data of a communications connection to line-switching**

**transfer of second data of the communication connection without interruption of the**

**communications connection.**

Jonas discloses transferring a call without interrupting the connection. Certain

applications, may wish to dynamically take advantage of both the inherent cost benefit of using

the packet-switched Internet and the minimal delay time of circuit-switched telephone networks.

This is accomplished by having the system monitor the transmission delay between the source

router 20 and destination router 21. If this delay rises above a  threshold value the source router

20 will establish a connection over the bypass network 30. The source router 20 may detect the

transmission delay to the destination router 21 using a variety of measures known to those skilled

in the art, including topological delay time for the transmission, cost, or the number of gateways

through which the network path traverses ("hops"). While transmitting over the bypass network

30, the source router 20 may continue to monitor the delay time between the source router 20 and

destination router 21 by sending occasional "ping" messages to the destination router 21 and

monitoring delay times of any response packets, (col. 5, line 53-col. 6, line 3).

*Regarding claims 87 and 90:*

Application/Control Number: 95/001,001                                      Page 44
Art Unit: 3992

The rejection was proposed by the third party requester in the request for reexamination,

and it is adopted for the reasons set forth in the request for reexamination at page 318 (claim 87

under Jonas '792) and pages 320-321 (claim 90 under Jonas '792), which are hereby

incorporated by reference.

*Regarding claim 92:*

**A method of routing data packets from multiple origin end terminal in a data**
**network, the data packets containing headers including information identifying respective**
**origin and destination end terminals in the data network, the method comprising:**

Jonas discloses a Router 20 for switching data packets between terminals. The Jonas

patent describes how "[t]ens of thousands of computers are networked together via a public

packet-switched network known as the World-wide or Global Internet (the "Internet"). Any two

computers connected to the Internet can transmit data to each other using communications

protocols named TCP (Transmission Control Protocol) and IP (Internet Protocol), (col. 1, lines

16-22). Jonas discloses every data packet transmitted between two hosts via TCP/IP contains a

"header" that includes among other fields, (i) the internet address of the source host (the host

generating and sending the packet) and (ii) the internet address of the destination host (the host

intended to receive the packet, (col. 1, lines 34-41). Jonas discloses packets which need to be

sent over the alternative network may be so designated in the IP header or through other means.

The sending router computer recognizes the request to transmit over the bypass network,

establishes a connection over the circuit-switched telephone network, and then transmits the

packet over the bypass circuit- switched telephone network, (col. 3, lines 35-45).

**directing the data packets from the multiple end terminals to either a packet switching device or to a line switching device by inspecting the data packet headers, and**

Jonas discloses several methods for designating that a packet is to be sent over the bypass network 30 may be used. Preferably, packets to be transmitted over the bypass network 30 are so designated in the IP header 100. (FIG. 3), (col. 4, lines 42-45). Each router computer is, additionally, able to connect with one or more other router computers via the circuit-switched telephone network. Packets which need to be sent over the alternative network may be so designated in the IP header or through other means. The sending router computer recognizes the request to transmit over the bypass network, establishes a connection over the circuit-switched telephone network, and then transmits the packet over the bypass circuit-switched telephone network, (col. 3, lines 40-48).

**in response to the data packet headers, establishing and maintaining respective communications connections for data transfer with real-time properties between origin end terminals and destination end terminals, and**

Jonas discloses (Router 20) for transferring data (a portion of packets in a stream of packets) of the telephone call through the line-switching network (Bypass Network 30) or the packet switching network (Internet 40). The destination router 21 will receive notification of an incoming call over the circuit-switched network and execute a process to accept the connection and integrate data packets from this connection into the packets received from the packet-switched connection. Jonas discloses several methods for designating that a packet is to be sent over the bypass network 30 may be used. Preferably, packets to be transmitted over the bypass network 30 are so designated in the IP header 100. (FIG. 3), (col. 4, lines 42-45). The host

computers are each connected to the public packet-switched network via router computers. Each

router computer is, additionally, able to connect with one or more other router computers via the

circuit-switched telephone network. Packets which need to be sent over the alternative network

may be so designated in the IP header or through other means, (col. 3, lines 38-44,61-64).

**responding to a control signal by changing-over from packet-switching transfer of**

**first data of at least one of the communications connections over a packet-switching**

**network to line-switching transfer of second data of said at least one of the communication**

**connections over a line-switching network without interruption of said at least one of the**

**communications connections.**

Jonas discloses transferring a call without interrupting the connection. Certain

applications, may wish to dynamically take advantage of both the inherent cost benefit of using

the packet-switched Internet and the minimal delay time of circuit-switched telephone networks.

This is accomplished by having the system monitor the transmission delay between the source

router 20 and destination router 21. If this delay rises above a threshold value the source router

20 will establish a connection over the bypass network 30. The source router 20 may detect the

transmission delay to the destination router 21 using a variety of measures known to those skilled

in the art, including topological delay time for the transmission, cost, or the number of gateways

through which the network path traverses ("hops"). While transmitting over the bypass network

30, the source router 20 may continue to monitor the delay time between the source router 20 and

destination router 21 by sending occasional "ping" messages to the destination router 21 and

monitoring delay times of any response packets, (col. 5, line 53-col. 6, line 3).

*Regarding claims 95 and 98:*

The rejection was proposed by the third party requester in the request for reexamination,

and it is adopted for the reasons set forth in the request for reexamination at page 339-340 (claim

95 under Jonas '792) and  pages 341-342 (claim 98 under Jonas '792), which are hereby

incorporated by reference.


### Regarding claim 100:

**Switching apparatus for switching Internet Protocol (IP) data packets from multiple**

**origin end terminals, the data packets containing headers including information identifying**

**respective origin and destination end terminals, the switching apparatus comprising:**

Jonas discloses a switching apparatus (Router 20) for switching data packets between

terminals. The Jonas patent describes how "[t]ens of thousands of computers are networked

together via a public packet-switched network known as the World-wide or Global Internet

(the "Internet"). Any two computers connected to the Internet can transmit data to each other

using communications protocols named TCP (Transmission Control Protocol) and IP (Internet

Protocol), (col. 1, lines 16-22). Jonas discloses every data packet transmitted between two hosts

via TCP/IP contains a "header" that includes among other fields, (i) the internet address of the

source host (the host generating and sending the packet) and (ii) the internet address of the

destination host (the host intended to receive the packet, (col. 1, lines 34-41). Jonas discloses

packets which need to be sent over the alternative network may be so designated in the IP header

or through other means. The sending router computer recognizes the request to transmit over the

bypass network, establishes a connection over the circuit-switched telephone network, and then

transmits the packet over the bypass circuit- switched telephone network, (col. 3, lines 35-45).

Application/Control Number: 95/001,001                                    Page 48
Art Unit: 3992

**an IP packet switching device for packet-switching transfer of data through the
Internet for delivery to destination end terminals;**

Jonas discloses Router 20 for transferring data (a packet or packets in a stream of

packets) of the telephone call originated by a terminal (e.g. Host 1) through the  packet switching

network (Internet 40) for delivery to the second end terminal (Host 2). Normally, hosts 1 and 2

would transmit data to each other through routers 20 and 21 over the Internet 40, (col. 4, lines

13-14). Host 1 may be permanently connected to router 20 via a phone line leased from the local

telephone service 11, or, alternatively, connected to router 20 via a switched dial-up connection

provided by the local telephone service 11, using a modem (not shown), ISDN adapter (not

shown) or other device for transmitting data. Routers 20 and 21 are typically provided by an

Internet Commercial Service Provider, however, alternate configurations are also available, such

as one or more of the hosts being directly connected to the Internet as a router or gateway

computer, (col. 4, lines 3-12).

**a line switching device far establishing line connections through a public telephone
network through which data can be sent to the destination end terminals; and**

Jonas discloses a device (Router 20) for establishing a connection to a line-switching

network (Bypass network 30) through which data can be sent for delivery to end terminals (e.g.

Host 2). The source router 20 then establishes a connection (i.e. "dials" the call) over the circuit-

switched [line-switched] network 30 to the destination router 21 ...., (col. 4, line 67-col. 5, line

3).

Application/Control Number: 95/001,001                                    Page 49
Art Unit: 3992

**a control device connected to the IP packet switching device and the line-switching
device for directing the IP data packets from the multiple origin end terminals to either the
packet switching device or to the line-switching device,**

Jonas discloses responding to a control signal to change from the packet switching
network (Internet 40) to a line-switching connection (Bypass Network 30). Alternatively,
specialized applications for transmitting secret or time critical data may connect to a specific port
of the router's 20 operating system. This port is preconfigured to reliably route the data over the
bypass network. A third method for designating a packet for the bypass network is to transmit
the message to the router with a special Internet source address or destination address, (col. 4,
lines 45-52). These special applications trigger the signal to change networks. Data transfer with
real time properties include "time critical data" as mentioned above.

**the control device being responsive to the data packet headers for controlling the
packet switching device and the line switching device for establishing and maintaining
respective communication connections for data transfer with real-time properties between
origin end terminals and destination end terminals,**

Jonas discloses several methods for designating that a packet is to be sent over the bypass
network 30 may be used. Preferably, packets to be transmitted over the bypass network 30 are so
designated in the IP header 100. (FIG. 3), (col. 4, lines 42-45). The host computers are each
connected to the public packet-switched network via router computers. Each router computer is,
additionally, able to connect with one or more other router computers via the circuit-switched
telephone network. Packets which need to be sent over the alternative network may be so
designated in the IP header or through other means, (col. 3, lines 38-44, 61-64).

Application/Control Number: 95/001,001                                    Page 50
Art Unit: 3992

Every data packet transmitted between two hosts via TCP/IP contains a "header" that
includes, among other fields, (i) the internet address of the source host (the host generating and
sending the packet) and (ii) the Internet address of the destination host (the host intended to
receive the packet). Additionally, the header contains, among other items, codes for the class of
service desired for the packet, protocol identifiers, and checksum fields to detect errors in
transmission, (col. 1, lines 37-45).

**and the control device also being responsive to an overload in the Internet for
automatically changing-over from packet-switching transfer of first data of a
communications connection to line-switching transfer of second data of the communication
connection without interruption of the communications connection when a data blockage
occurs in the routing of data packets of the first data of the communications connection
through the Internet.**

Jonas discloses responding to a control signal to change from the packet switching
network (Internet 40) to a line-switching connection (Bypass Network 30). Alternatively,
specialized applications for transmitting secret or time critical data may connect to a specific port
of the router's 20 operating system. This port is preconfigured to reliably route the data over the
bypass network. A third method for designating a packet for the bypass network is to transmit
the message to the router with a special Internet source address or destination address, (col. 4,
lines 45-52). These special applications trigger the signal to change networks. Data transfer with
real time properties include "time critical data" as mentioned above. Jonas discloses transferring
a call without interrupting the connection. Certain applications, may wish to dynamically take
advantage of both the inherent cost benefit of using the packet-switched Internet and the

minimal delay time of circuit-switched telephone networks. This is accomplished by having the

system monitor the transmission delay between the source router 20 and destination router 21. If

this delay rises above a threshold value the source router 20 will establish a connection over the

bypass network 30. The source router 20 may detect the transmission delay to the destination

router 21 using a variety of measures known to those skilled in the art, including topological

delay time for the transmission, cost, or the number of gateways through which the network path

traverses ("hops"). While transmitting over the bypass network 30, the source router 20 may

continue to monitor the delay time between the source router 20 and destination router 21 by

sending occasional "ping" messages to the destination router 21 and monitoring delay times of

any response packets, (col. 5, lines 53-col. 6, line 3).

### *Regarding claim 102*

The rejection was proposed by the third party requester in the request for reexamination,

and it is adopted for the reasons set forth in the request for reexamination at page 356 (claim 102

under Jonas '792), which are hereby incorporated by reference.


### *Regarding claim 118:*

**A method of routing IP data packets from multiple origin end terminals in an IP**

**data network, the IP data packets containing headers including information identifying**

**respective origin and destination end terminals in the IP data network, the method**

**comprising:**

Jonas discloses a switching apparatus (Router 20) for switching data packets between

terminals. The Jonas patent describes how "[t]ens of thousands of computers are networked

Application/Control Number: 95/001,001                                          Page 52
Art Unit: 3992

together via a public packet-switched network known as the World-wide or Global Internet

(the "Internet"). Any two computers connected to the Internet can transmit data to each other

using communications protocols named TCP (Transmission Control Protocol) and IP (Internet

Protocol), (col. 1, lines 16-22).

        Jonas discloses every data packet transmitted between two hosts via TCP/IP contains a

"header" that includes among other fields, (i) the internet address of the source host (the host

generating and sending the packet) and (ii) the internet address of the destination host (the host

intended to receive the packet, (col. 1, lines 34-41). Jonas discloses packets which need to be

sent over the alternative network may be so designated in the IP header or through other means.

The sending router computer recognizes the request to transmit over the bypass network,

establishes a connection over the circuit-switched telephone network, and then transmits the

packet over the bypass circuit- switched telephone network, (col. 3, lines 35-45).

        **inspecting the IP data packet headers at a switch in the IP data network in order to**

**establish a respective communications connection for IP data packets from at least one of**

**the origin terminals to a destination end terminal in the IP network, the respective**

**communications connection being initiated from the switch by packet switching of IP data**

**packets from the switch, and**

        Jonas discloses Router 20 for transferring data (a packet or packets in a stream of

packets) of the telephone call originated by a terminal (e.g. Host 1) through the  packet switching

network (Internet 40) for delivery to the second end terminal (Host 2). Normally, hosts 1 and 2

would transmit data to each other through routers 20 and 21 over the Internet 40, (col. 4, lines

13-14). Host 1 may be permanently connected to router 20 via a phone line leased from the local

Application/Control Number: 95/001,001                                        Page 53
Art Unit: 3992

telephone service 11, or, alternatively, connected to router 20 via a switched dial-up connection

provided by the local telephone service 11, using a modem (not shown), ISDN adapter (not

shown) or other device for transmitting data. Routers 20 and 21 are typically provided by an

Internet Commercial Service Provider, however, alternate configurations are also available, such

as one or more of the hosts being directly connected to the Internet as a router or gateway

computer, (col. 4, lines 3-12).

> **ensuring that the respective communications connection has a desired bandwidth by**
> **changing over, from the packet switching of the IP data packets from the switch, to line**
> **switching of the IP data packets from said at least one of the origin end terminals to said**
> **destination end terminal, when it is found that the packet switching of the IP data packets**
> **from the switch does not have the desired bandwidth.**

Jonas discloses an additional problem, which occurs when communicating across public

packet-switched networks, such as the Internet, is the presence of 'delays', or pauses, which

occur when a packet must wait for transmission-related resources to become available at

individual routers or nodes along its path. This can be caused by network congestion, for

example, when many 'feeder lines' are attempting to funnel more data into a trunk line that the

trunk line's rated capacity, (col. 3, lines 4-20). Jonas discloses the host may also wish to transmit

via the bypass network if the delay time over available paths on the Internet is unacceptable,

such as for interactive or other time-critical applications, (col. 4, lines 17-21).

### *Regarding claim 120-124*

The rejection was proposed by the third party requester in the request for reexamination,

and it is adopted for the reasons set forth in the request for reexamination at page 372 (claim 120

under Jonas '792), page 374 (claim 121 under Jonas '792), page 376-377 (claims 122 under

Jonas '792), page 379 (claim 123 under Jonas '792), page 382-383 (claim 124 under Jonas)

which are hereby incorporated by reference.

### *Issue 3*

### *Requester Proposed Rejection (Adopted)*

7.      Claims 36,41,54,55,60, 62, 64, 68, 69, 71, 75, 77, 79, 82 are rejected under 35

U.S.C. 102(b) as being anticipated by Farese US Patent 4,996,685.

### *Regarding claim 36, 41, 54, 55, 60, 62 and 64:*

The rejection was proposed by the third party requester in the request for reexamination,

and it is adopted for the reasons set forth in the request for reexamination at pages 143-155

(claim 36 under Farese '685), pages 168-169 (claim 41/36 under Farese '685), pages 170-172

(claim 54/36 under Farese '685), pages 173-174 (claims 55/54/36 under Farese '685), pages 177-

178 (claim 60/54/36 under Farese '685), page 179-180 (claim 62/54/36 under Farese '685) and

pages 181-182 (claim 64/54/36 under Farese '685) which are hereby incorporated by reference.

### *Regarding claim 68:*

The rejection was proposed by the third party requester in the request for reexamination,

and it is adopted for the reasons set forth in the request for reexamination at pages 196-213

(claim 68 under Farese '685) which are hereby incorporated by reference.

### *Regarding claim 69, 71 and 75:*

The rejection was proposed by the third party requester in the request for reexamination,

and it is adopted for the reasons set forth in the request for reexamination at pages 233-250

(claim 69 under Farese '685) pages 261-264 (claim 71 under Farese '685) and pages 267-268

(claim 75 under Farese '685) which are hereby incorporated by reference.

***Regarding claim 77, 79 and 82:***

  The rejection was proposed by the third party requester in the request for reexamination,

and it <u>is adopted</u> for the reasons set forth in the request for reexamination at page 277-285 (claim

77 under Farese '685), page 292 (claim 79 under Farese '685) and pages 295-296 (claim 82

under Farese '685) which are hereby incorporated by reference.

*Issue 4*

***Requester Proposed Rejection (Adopted)***

8.  Claims 36,37,84,90,92,98,118,120-124 are rejected under 35 U.S.C. 102(b) as being

anticipated by Arango US Patent 5,732,078.

***Regarding claim 36:***

  **A method for transferring data selectively by line switching or by packet switching**

**from a first switch to a second switch, the first switch being part of or having access to a**

**line-switching network and a packet switching network, comprising:**

  Arango discloses an access point 220 (first switch) has a first link 231 to a wide area

network 230 (packet switching network) and a second link to a guaranteed bandwidth network

(line switching network), (abstract). Arango discloses the guaranteed bandwidth network 260

may be a switched network such as an ISDN network or an ATM network, (col. 9, lines 41-48).

  Arango discloses changing over between a packet switching of data over a WAN such as

the Internet and the line-switching of data by means of a special bypass connection established

on a "guaranteed bandwidth network, (fig. 6; col. 7, lines 17-47)

**a) packetizing the data into data packets in the first switch if the data does not yet
exist as data packets;**

Arango discloses that the host 210 transfers data to the access point 220 (first switch) in

packets, therefore the data arrives as packets. The first host 210 can generate a packet requesting

that the access point 220 establish a continuous bandwidth session with a second host 250. In

response, the access point 220 transmits a packet via the first link 231 and the wide area network

230 to a second access point 240 to which the second host 250 is connected, (abstract). The

access point also has an access server for receiving packets originating from the first host and for

routing the packets originating from the first host to the first router or the second router, (col. 7,

lines 52-55).

**b) transferring the data packets from the first switch through the packet-switching
network to the second switch;**

Arango discloses the host 210 transmits a packet destined to the host 250 via the link 212

to the access server 222. The processor of the access server 222 then uses the destination address

of the packet to access a routing a table stored thereat. The routing table indicates the next node

to which the packet should be transmitted. In accordance with this indication, the access server

222 outputs the packet to the appropriate ordinary router 224 for output via the WAN 230

(packet-switching network). The packet is then transferred to the access server 242 within access

point 240 (second switch) where it is temporarily stored in a buffer therein pending routing, (col.

10, lines 27-57)

**c) checking whether a control signal exists for changing-over from the packet-
switching data transfer of the data packets through the packet switching network to a line-**

Application/Control Number: 95/001,001                                    Page 57
Art Unit: 3992

**switching connection to the second switch, wherein the control signal is produced by a**

**network management system;**

Arango discloses network management features of the access point 220 in Figure 8, and

describes how those features signal a change over from packet switching of some data to line

switching. FIG. 8 shows the relationship of various procedures executed in the OGB server

228,248 (FIG. 6) or 328 (FIG. 7) and the user interface (Web browser) in the hosts 210, 250

(FIG. 6) and routing tables in the access servers 222, 242 (FIG. 6) and guaranteed bandwidth

routers 226, 246 (FIG. 7).

Arango discloses the route controller agent 420 receives request for initiating time-

sensitive communication which are provided by the Web server executing on the OGB server

(control signal produced by a network management system - the OGB process along with the

route controller agent 420 are part of the network management system). As shown, the OGB

server executes a route controller agent procedure 420, a route switch agent procedure 410, an

access point manager procedure 430 and one or more interface handler procedures 440, (col. 16,

lines 14-22). The OGB server 228 then instructs the guaranteed bandwidth router 226 to set up a

communication channel of a specified, continuous bandwidth (as agreed during the negotiations

above) to the guaranteed bandwidth router 246 using the guaranteed bandwidth address obtained

from the OGB server 248. The OGB server 228 also modifies the routing table of the guaranteed

bandwidth router 226 so as to route packets originating from the host 210 and destined to the

host 250 to the router 246 and to transmit such packets on the channel thus opened. The OGB

server 228 also modifies the router 226 routing table so as to route to the access server 222

packets received on the same channel from the host 246 originating at the host 250 and destined

Application/Control Number: 95/001,001                                    Page 58
Art Unit: 3992

to the host 210, (col. 12, lines 53-65).

**d) establishing the line-switching connection through the line-switching network to the second switch in response to said control signal, if the line-switching connection is not yet present; and**

Arango discloses the access points contain a connection to the guaranteed bandwidth network and a connection to the Internet backbone (best effort wide area network). The access points perform the negotiation for setting up the guaranteed, continuous bandwidth communication by exchanging packets via the Internet backbone. The access point performs the IP-to-guaranteed bandwidth network address translation. The access points also establish the guaranteed continuous bandwidth channel on the guaranteed bandwidth network. Furthermore, the access points perform the re-routing of selected guaranteed bandwidth packets, so that they are transmitted via the guaranteed bandwidth channel, and route packets received from the guaranteed bandwidth channel to the appropriate host connected thereto, (col. 13, line 55-col. 14, line 2).

**e) changing-over from the packet-switching data transfer of the data packets through the packet switching network to a line-switching data transfer in response to said control signal and transferring data over the line switching connection to the second switch.**

Arango discloses selective routing of some packets from a source node to a destination node via the wide area network and other packets from the same source node to the same destination node via the guaranteed bandwidth network, (col. 7, lines 12-16). Arango states the access points contain a connection to the guaranteed bandwidth network and a connection to the Internet backbone (best effort wide area network). The access points perform the negotiation for

setting up the guaranteed, continuous bandwidth communication by exchanging packets via the

Internet backbone. The access point performs the IP-to-guaranteed bandwidth network address

translation. The access points also establish the guaranteed continuous bandwidth channel on the

guaranteed bandwidth network. Furthermore, the access points perform the re-routing of selected

guaranteed bandwidth packets, so that they are transmitted via the guaranteed bandwidth

channel, and route packets received from the guaranteed bandwidth channel to the appropriate

host connected thereto, (col. 13, line 55-col. 14, line 2).

***Regarding claim 37:***

      The rejection was proposed by the third party requester in the request for reexamination,

and it is adopted for the reasons set forth in the request for reexamination at pages 167-168

(claim 37/36 under Arango '078) which is hereby incorporated by reference.


***Regarding claim 84:***

      **Switching apparatus for switching data packets from multiple origin end terminals,**

**the data packets containing headers including information identifying respective origin and**

**destination end terminals, the switching apparatus comprising:**

      Arango discloses an access point 220 has a first link 231 to a wide area network 230  and

a second link to a guaranteed bandwidth network, (abstract). Arango discloses the guaranteed

bandwidth network 260 may be a switched network such as an ISDN network or an ATM

network, (col. 9, lines 41-48).

Arango discloses changing over between a packet switching of data over a WAN such as the Internet and the line-switching of data by means of a special bypass connection established on a "guaranteed bandwidth network, (fig. 6; col. 7, lines 17-47).

Arango also discloses the header of the packet, in addition to indicating source and destination addresses, also contains an identifier which uniquely indicates the application of the source hosts to which it corresponds, (col. 18, lines 14-17).

**a packet switching device for transferring data packets through a packet switching network through which data can be sent for delivery to destination end terminals;**

Arango discloses the host 210 transmits a packet destined to the host 250 via the link 212 to the access server 222. The processor of the access server 222 then uses the destination address of the packet to access a routing a table stored thereat. The routing table indicates the next node to which the packet should be transmitted. In accordance with this indication, the access server 222 outputs the packet to the appropriate ordinary router 224 for output via the WAN 230 (packet-switching network). The packet is then transferred to the access server 242 within access point 240 (second switch) where it is temporarily stored in a buffer therein pending routing, (col. 10, lines 27-57)

**a line switching device for establishing line connections through a line-switching network through which data can be sent to the destination end terminals; and**

Arango discloses the access points contain a connection to the guaranteed bandwidth network and a connection to the Internet backbone (best effort wide area network). The access points perform the negotiation for setting up the guaranteed, continuous bandwidth communication by exchanging packets via the Internet backbone. The access point performs the

Application/Control Number: 95/001,001                                      Page 61
Art Unit: 3992

IP-to-guaranteed bandwidth network address translation. The access points also establish the

guaranteed continuous bandwidth channel on the guaranteed bandwidth network. Furthermore,

the access points perform the re-routing of selected guaranteed bandwidth packets, so that they

are transmitted via the guaranteed bandwidth channel, and route packets received from the

guaranteed bandwidth channel to the appropriate host connected thereto, (col. 13, line 55-col. 14,

line 2).

> **a control device connected to the packet switching device and the line switching**
>
> **device for directing the data packets from the multiple origin end terminals to either the**
>
> **packet switching device or to the line switching device,**

Arango discloses network management features of the access point 220 in Figure 8, and

describes how those features signal a change over from packet switching of some data to line

switching. FIG. 8 shows the relationship of various procedures executed in the OGB server

228,248 (FIG. 6) or 328 (FIG. 7) and the user interface (Web browser) in the hosts 210, 250

(FIG. 6) and routing tables in the access servers 222, 242 (FIG. 6) and guaranteed bandwidth

routers 226, 246 (FIG. 7).

> **the control device being responsive to the data packet headers for controlling the**
>
> **packet switching device and the line switching device for establishing and maintaining**
>
> **respective communications connections for data transfer with real-time properties between**
>
> **origin end terminals and destination end terminals,**

Arango discloses selective routing of some packets from a source node to a destination

node via the wide area network and other packets from the same source node to the same

destination node via the guaranteed bandwidth network, (col. 7, lines 12-16). Arango states the

Application/Control Number: 95/001,001                                        Page 62
Art Unit: 3992

access points contain a connection to the guaranteed bandwidth network and a connection to the

Internet backbone (best effort wide area network). The access points perform the negotiation for

setting up the guaranteed, continuous bandwidth communication by exchanging packets via the

Internet backbone. The access point performs the IP-to-guaranteed bandwidth network address

translation. The access points also establish the guaranteed continuous bandwidth channel on the

guaranteed bandwidth network. Furthermore, the access points perform the re-routing of selected

guaranteed bandwidth packets, so that they are transmitted via the guaranteed bandwidth

channel, and route packets received from the guaranteed bandwidth channel to the appropriate

host connected thereto, (col. 13, line 55-col. 14, line 2).

**the control device also being responsive to a control signal for changing-over from**
**packet-switching transfer of first data of a communications connection to line-switching**
**transfer of second data of the communication connection without interruption of the**
**communications connection.**

Arango discloses the route controller agent 420 receives request for initiating time-

sensitive communication which are provided by the Web server executing on the OGB server

(control signal produced by a network management system - the OGB process along with the

route controller agent 420 are part of the network management system). As shown, the OGB

server executes a route controller agent procedure 420, a route switch agent procedure 410, an

access point manager procedure 430 and one or more interface handler procedures 440, (col. 16,

lines 14-22). The OGB server 228 then instructs the guaranteed bandwidth router 226 to set up a

communication channel of a specified, continuous bandwidth (as agreed during the negotiations

above) to the guaranteed bandwidth router 246 using the guaranteed bandwidth address obtained

from the OGB server 248. The OGB server 228 also modifies the routing table of the guaranteed

bandwidth router 226 so as to route packets originating from the host 210 and destined to the

host 250 to the router 246 and to transmit such packets on the channel thus opened. The OGB

server 228 also modifies the router 226 routing table so as to route to the access server 222

packets received on the same channel from the host 246 originating at the host 250 and destined

to the host 210, (col. 12, lines 53-65).

### *Regarding claim 90:*

The rejection was proposed by the third party requester in the request for reexamination,

and it is adopted for the reasons set forth in the request for reexamination at page 321(claim 90

under Arango '078) which is hereby incorporated by reference.


### *Regarding claim 92:*

**A method of routing data packets from multiple origin end terminal in a data**

**network, the data packets containing headers including information identifying respective**

**origin and destination end terminals in the data network, the method comprising:**

Arango discloses an access point 220 (first switch) has a first link 231 to a wide area

network 230 (packet switching network) and a second link to a guaranteed bandwidth network

(line switching network), (abstract). Arango discloses the guaranteed bandwidth network 260

may be a switched network such as an ISDN network or an ATM network, (col. 9, lines 41-48).

Arango discloses changing over between a packet switching of data over a WAN such as

the Internet and the line-switching of data by means of a special bypass connection established

on a "guaranteed bandwidth network, (fig. 6; col. 7, lines 17-47).

Application/Control Number: 95/001,001                                      Page 64
Art Unit: 3992

      Arango also discloses the header of the packet, in addition to indicating source and

destination addresses, also contains an identifier which uniquely indicates the application of the

source hosts to which it corresponds, (col. 18, lines 14-17).

**directing the data packets from the multiple end terminals to either a packet**

**switching device or to a line switching device by inspecting the data packet headers, and**

      Arango discloses the host 210 transmits a packet destined to the host 250 via the link 212

to the access server 222. The processor of the access server 222 then uses the destination address

of the packet to access a routing a table stored thereat. The routing table indicates the next node

to which the packet should be transmitted. In accordance with this indication, the access server

222 outputs the packet to the appropriate ordinary router 224 for output via the WAN 230

(packet-switching network). The packet is then transferred to the access server 242 within access

point 240 (second switch) where it is temporarily stored in a buffer therein pending routing, (col.

10, lines 27-57).

**in response to the data packet headers, establishing and maintaining respective**

**communications connections for data transfer with real-time properties between origin end**

**terminals and destination end terminals, and**

      Arango discloses the access points contain a connection to the guaranteed bandwidth

network and a connection to the Internet backbone (best effort wide area network). The access

points perform the negotiation for setting up the guaranteed, continuous bandwidth

communication by exchanging packets via the Internet backbone. The access point performs the

IP-to-guaranteed bandwidth network address translation. The access points also establish the

guaranteed continuous bandwidth channel on the guaranteed bandwidth network. Furthermore,

Application/Control Number: 95/001,001                                    Page 65
Art Unit: 3992

the access points perform the re-routing of selected guaranteed bandwidth packets, so that they

are transmitted via the guaranteed bandwidth channel, and route packets received from the

guaranteed bandwidth channel to the appropriate host connected thereto, (col. 13, line 55-col. 14,

line 2).

**responding to a control signal by changing-over from packet-switching transfer of**

**first data of at least one of the communications connections over a packet-switching**

**network to line-switching transfer of second data of said at least one of the communication**

**connections over a line-switching network without interruption of said at least one of the**

**communications connections.**

Arango discloses selective routing of some packets from a source node to a destination

node via the wide area network and other packets from the same source node to the same

destination node via the guaranteed bandwidth network, (col. 7, lines 12-16). Arango states the

access points contain a connection to the guaranteed bandwidth network and a connection to the

Internet backbone (best effort wide area network). The access points perform the negotiation for

setting up the guaranteed, continuous bandwidth communication by exchanging packets via the

Internet backbone. The access point performs the IP-to-guaranteed bandwidth network address

translation. The access points also establish the guaranteed continuous bandwidth channel on the

guaranteed bandwidth network. Furthermore, the access points perform the re-routing of selected

guaranteed bandwidth packets, so that they are transmitted via the guaranteed bandwidth

channel, and route packets received from the guaranteed bandwidth channel to the appropriate

host connected thereto, (col. 13, line 55-col. 14, line 2).

*Regarding claim 98:*

Application/Control Number: 95/001,001                                   Page 66
Art Unit: 3992

The rejection was proposed by the third party requester in the request for reexamination,

and it is adopted for the reasons set forth in the request for reexamination at pages 342-343

(claim 98 under Arango '078) which is hereby incorporated by reference.


***Regarding claim 118:***

**A method of routing IP data packets from multiple origin end terminals in an IP**

**data network, the IP data packets containing headers including information identifying**

**respective origin and destination end terminals in the IP data network, the method**

**comprising:**

Arango discloses an access point 220 (first switch) has a first link 231 to a wide area

network 230 (packet switching network) and a second link to a guaranteed bandwidth network

(line switching network), (abstract). Arango discloses the guaranteed bandwidth network 260

may be a switched network such as an ISDN network or an ATM network, (col. 9, lines 41-48).

Arango discloses changing over between a packet switching of data over a WAN such as

the Internet and the line-switching of data by means of a special bypass connection established

on a "guaranteed bandwidth network, (fig. 6; col. 7, lines 17-47).

Arango also discloses the header of the packet, in addition to indicating source and

destination addresses, also contains an identifier which uniquely indicates the application of the

source hosts to which it corresponds, (col. 18, lines 14-17).

**inspecting the IP data packet headers at a switch in the IP data network in order to**

**establish a respective communications connection for IP data packets from at least one of**

**the origin terminals to a destination end terminal in the IP network, the respective**

**communications connection being initiated from the switch by packet switching of IP data
packets from the switch, and**

Arango describes how IP packet headers are received and read by a switch at 2:16-38,
and in Fig. 2, stating in part: "The I/O ports 13-1 ..., 13-N are for transmitting and receiving
communicated data in the form of a bitstream that is organized into one or more packets (or
cells). An exemplary packet 40 is shown in Fig. 3 having a header 42, which contains
information for transferring the packet to its destination, and a payload 44, which carries
communicated data ...". Arango discloses specifically the IP protocol, in which the packet
contains an IP address in a source address field of the header 42 and the IP address of the
destination node in the destination address field of the header 42. The packet is transmitted to the
router r16, which "uses at least one routing table stored (in the memory 12, as shown in Fig. 2)
thereat to determine the next node ... on the path to the destination node hl0, (col. 2, lines 53- col.
3, line 22).

**ensuring that the respective communications connection has a desired bandwidth by
changing over, from the packet switching of the IP data packets from the switch, to line
switching of the IP data packets from said at least one of the origin end terminals to said
destination end terminal, when it is found that the packet switching of the IP data packets
from the switch does not have the desired bandwidth.**

Arango describes the problems associated with transmission delays caused by inadequate
bandwidth in the packet-switched network, (col. 3, lines 23-54). Arango states at times of high
congestion, i.e., when more packets arrive contemporaneously than can be accommodated by the
processor 11 or outgoing links, packets will be buffered for longer periods of time and incur high

delays. If more packets arrive than can be stored in the buffer, some packets will be discarded

and will have to be retransmitted from their source nodes resulting in even higher delays. The

two access points then set up a continuous bandwidth channel via a supplementary guaranteed

bandwidth network which bypasses the Internet backbone. The present invention thus achieves

the goal of end-to-end, guaranteed bandwidth communications, within a predictable time

interval, for time-sensitive communications, such as streamed communications or

communications which must be completed, end-to-end, within a certain time interval. Such

communications are achieved while minimizing costs and administrative burdens, (col. 19, line

66-col. 20, line 32).

### *Regarding claims 120-124:*

The rejection was proposed by the third party requester in the request for reexamination,

and it is adopted for the reasons set forth in the request for reexamination at page 373 (claim 120

under Arango '078), pages 374-375 (claim 121 under Arango '078), page 377 (claim 122 under

Arango '078), page 380 (claim 123 under Arango '078) and pages 383-384 (claim 124 under

Arango '078)which is hereby incorporated by reference.

### *Issue 5*

### *Requester Proposed Rejection (Adopted)*

9.      Claims 36, 68, 69, 71, 75, 77, 79, 82  are rejected under 35 U.S.C. 102(e) as being

anticipated by Matsukawa US Patent 5,598,411.

### *Regarding claim 36:*

Application/Control Number: 95/001,001                                        Page 69
Art Unit: 3992

**A method for transferring data selectively by line switching or by packet switching**

**from a first switch to a second switch, the first switch being part of or having access to a**

**line-switching network and a packet switching network, comprising:**

Matsukawa discloses a method for transferring data selectively by line switching or by

packet switching (col. 2, lines 45-47) from a first switch (ISDN Terminal Adapter 2) to a second

switch (ISDN Protocol Adapter 2'). Matsukawa discloses Protocol Switching Unit 22 selects

between an ISDN line switching network through Speed Matching Unit 23 and an ISDN packet

switching network through Packet Processing Unit 24. Thus, the first switch has access to a line

switching network and a packet switching network, (col. 4, lines 11-27).

**a) packetizing the data into data packets in the first switch if the data does not yet**

**exist as data packets;**

Matsukawa discloses that data from the data terminals is packetized by a PAD (Packet

Assembly Disassembly Unit 231), which resides within the first switch (ISDN Terminal Adapter

2), (col. 2, lines 55-3:2; Fig. 2).

**b) transferring the data packets from the first switch through the packet-switching**

**network to the second switch;**

Matsukawa discloses transferring data packets (DT) from the first switch (ISDN

Terminal Adapter 2) to the second switch (ISDN Terminal Adapter 2'). For example, Figure 6

and its accompanying text show a transfer of data packets (DT). Thereafter, data communication

by packet switching is established., (col. 5, lines 21-22).

**c) checking whether a control signal exists for changing-over from the packet-**

**switching data transfer of the data packets through the packet switching network to a line-**

**switching connection to the second switch, wherein the control signal is produced by a**

**network management system;**

Matsukawa discloses that the protocol processing switching unit 22 within the first switch

(ISDN Terminal Adapter 2) checks whether a control signal (output of Timer T2) exists. If it

exists the system changes over from a packet switching network to a line-switching network (fig.

6). Thereafter, the timer 27 generates a switching request signal and transmits it to the protocol

processing switching unit 22 to select the speed-matching unit 24 instead of the packet-

processing unit 23, (col. 5, lines 39-42; fig. 6). Timer T2 produces the control signal

automatically in the network management system.

**d) establishing the line-switching connection through the line-switching network to**

**the second switch in response to said control signal, if the line-switching connection is not**

**yet present; and**

Matsukawa establishes the line switching connection (using Packet Protocol Switch 23)

through the line-switching network (ISDN 3) to the second switch in response to the control

signal (output of Timer T2). Thereafter, the timer 27 generates a switching request signal and

transmits it to the protocol processing switching unit 22 to select the speed-matching unit 24

instead of the packet-processing unit 23, (col. 5, lines 39-42; fig. 6).

**e) changing-over from the packet-switching data transfer of the data packets**

**through the packet switching network to a line-switching data transfer in response to said**

**control signal and transferring data over the line switching connection to the second switch.**

Matsukawa discloses that in response to the control signal (output of Timer T2), the

system switches over from the packet switching data transfer (Packet Protocol Unit 24) to line

switching data transfer (Speed Matching Unit 23). Thereafter, data communication by circuit

switching is established, (col. 6, lines 9-10; fig. 6).


### *Regarding claim 68:*

**Switching apparatus for selectively routing a telephone call from a first end
terminal to a second end terminal, comprising:**

Matsukawa teaches a switching apparatus for selectively routing an ISDN telephone call

from a first end terminal (DTE 1) to a second end terminal (DTE 1'). Matsukawa discloses

Protocol Switching Unit 22 selects between an ISDN line switching network through Speed

Matching Unit 23 and an ISDN packet switching network through Packet Processing Unit 24,

(fig. 1; col. 2, lines 38-47; col. 4, lines 11-27).

**a device that provides access to a packet switching network through which data can
be sent for delivery to the second end terminal;**

Matsukawa discloses terminal 1 transmits a data signal S5, so that the ISDN terminal

adapter 2 (the LAPB protocol unit 232 or the D-channel protocol processing unit 233, and the

PAD unit 231) assembles a data packet DT and transmits it to the ISDN. 3. Then, the ISDN 3

transmits the data packet DT to the ISDN terminal adapter 2', so that the ISDN terminal 2' (the

LAPB protocol unit or the D-channel protocol processing unit 233, and the PAD unit 231)

disassembles the data packet DT and transmits it to the terminal 1'. Similarly, the ISDN terminal

adapter 2 (the LAPB protocol unit or the D-channel protocol processing unit) assembles a data

reception and response (RR) packet and transmits it to the ISDN 3. Then, the ISDN 3 transmits

the RR packet to the ISDN terminal adapter 2, (col. 3, lines 43-37).

Application/Control Number: 95/001,001                                    Page 72
Art Unit: 3992

**means for transferring first data of the telephone call originated by the first terminal through the packet switching network for delivery to the second end terminal;**

As stated above, Matsukawa discloses terminal 1 transmits a data signal S5, so that the ISDN terminal adapter 2 (the LAPB protocol unit 232 or the D-channel protocol processing unit 233, and the PAD unit 231) assembles a data packet DT and transmits it to the ISDN. 3. Then, the ISDN 3 transmits the data packet DT to the ISDN terminal adapter 2', so that the ISDN terminal 2' (the LAPB protocol unit or the D-channel protocol processing unit 233, and the PAD unit 231) disassembles the data packet DT and transmits it to the terminal 1'. Similarly, the ISDN terminal adapter 2 (the LAPB protocol unit or the D-channel protocol processing unit) assembles a data reception and response (RR) packet and transmits it to the ISDN 3. Then, the ISDN 3 transmits the RR packet to the ISDN terminal adapter 2, (col. 3, lines 43-37).

**a device for establishing a connection to a line-switching network through which data can be sent for delivery to the second end terminal;**

Matsukawa discloses at least an "ISDN terminal adapter 2" and a "speed matching unit 24" which provides a device for establishing a connection to a line-switching network through which data can be sent for delivery to the second end terminal, (fig. 1; col. 5, lines 9-38).

**means for transferring second data of the telephone call originated by the first terminal over the connection through the line-switching network for delivery to the second end terminal;**

Matsukawa discloses transferring data packets (DT) from the first switch (ISDN Terminal Adapter 2) to the second switch (ISDN Terminal Adapter 2'). For example, Figure 6

Application/Control Number: 95/001,001                                    Page 73
Art Unit: 3992

and its accompanying text show a transfer of data packets (DT). Thereafter, data communication

by packet switching is established, (col. 5, lines 21-22).

**and means responsive to a control signal for changing-over from a packet-switching**

**mode of transfer of the first data of the telephone call to a line-switching mode of transfer**

**of the second data of the telephone call without interruption of a call-up procedure,**

**wherein said control signal is produced by a network management system.**

Matsukawa discloses that the protocol processing switching unit 22 within the first switch

(ISDN Terminal Adapter 2) checks whether a control signal (output of Timer T2) exists. If it

exists the system changes over from a packet switching network to a line-switching network (fig.

6). Thereafter, the timer 27 generates a switching request signal and transmits it to the protocol

processing switching unit 22 to select the speed-matching unit 24 instead of the packet-

processing unit 23, (col. 5, lines 39-42; fig. 6). Timer T2 produces the control signal

automatically in the network management system.

*Regarding claim 69:*

**Switching apparatus for selectively routing a telephone call from a first end**

**terminal to a second end terminal, comprising:**

Matsukawa teaches a switching apparatus for selectively routing an ISDN telephone call

from a first end terminal (DTE 1) to a second end terminal (DTE 1'). Matsukawa discloses

Protocol Switching Unit 22 selects between an ISDN line switching network through Speed

Matching Unit 23 and an ISDN packet switching network through Packet Processing Unit 24,

(fig. 1; col. 2, lines 38-47; col. 4, lines 11-27).

Application/Control Number: 95/001,001                                        Page 74
Art Unit: 3992

**means for establishing a connection to a packet switching network through which
data can be sent to the second end terminal;**

Matsukawa discloses terminal 1 transmits a data signal S5, so that the ISDN terminal

adapter 2 (the LAPB protocol unit 232 or the D-channel protocol processing unit 233, and the

PAD unit 231) assembles a data packet DT and transmits it to the ISDN. 3. Then, the ISDN 3

transmits the data packet DT to the ISDN terminal adapter 2', so that the ISDN terminal 2' (the

LAPB protocol unit or the D-channel protocol processing unit 233, and the PAD unit 231)

disassembles the data packet DT and transmits it to the terminal 1'. Similarly, the ISDN terminal

adapter 2 (the LAPB protocol unit or the D-channel protocol processing unit) assembles a data

reception and response (RR) packet and transmits it to the ISDN 3. Then, the ISDN 3 transmits

the RR packet to the ISDN terminal adapter 2, (col. 3, lines 43-37).

**means for transferring first data of the telephone call originated by the first end
terminal over the connection through the packet switching network for delivery to the
second end terminal,**

As stated above, Matsukawa discloses terminal 1 transmits a data signal S5, so that the

ISDN terminal adapter 2 (the LAPB protocol unit 232 or the D-channel protocol processing unit

233, and the PAD unit 231) assembles a data packet DT and transmits it to the ISDN. 3. Then,

the ISDN 3 transmits the data packet DT to the ISDN terminal adapter 2', so that the ISDN

terminal 2' (the LAPB protocol unit or the D-channel protocol processing unit 233, and the PAD

unit 231) disassembles the data packet DT and transmits it to the terminal 1'. Similarly, the ISDN

terminal adapter 2 (the LAPB protocol unit or the D-channel protocol processing unit) assembles

Application/Control Number: 95/001,001                                       Page 75

Art Unit: 3992

a data reception and response (RR) packet and transmits it to the ISDN 3. Then, the ISDN 3

transmits the RR packet to the ISDN terminal adapter 2, (col. 3, lines 43-37).

**means for establishing a connection to a line-switching network through which data**

**can be sent for delivery to the second end terminal;**

Matsukawa discloses at least an "ISDN terminal adapter 2" and a "speed matching unit

24" which provides a device for establishing a connection to a line-switching network through

which data can be sent for delivery to the second end terminal, (fig. 1; col. 5, lines 9-38).

**means for transferring second data of the telephone call originated by first end**

**terminal over the connection through the line-switching network for delivery to the second**

**end terminal; and**

Matsukawa discloses transferring data packets (DT) from the first switch (ISDN

Terminal Adapter 2) to the second switch (ISDN Terminal Adapter 2'). For example, Figure 6

and its accompanying text show a transfer of data packets (DT). Thereafter, data communication

by packet switching is established, (col. 5, lines 21-22).

**means responsive to a control signal for changing-over from a packet-switching**

**mode of transfer of the first data of the telephone call to a line-switching mode of transfer**

**of the second data of the telephone call without interruption of a call set-up procedure.**

Matsukawa discloses that the protocol processing switching unit 22 within the first switch

(ISDN Terminal Adapter 2) checks whether a control signal (output of Timer T2) exists. If it

exists the system changes over from a packet switching network to a line-switching network (fig.

6). Thereafter, the timer 27 generates a switching request signal and transmits it to the protocol

processing switching unit 22 to select the speed-matching unit 24 instead of the packet-

processing unit 23, (col. 5, lines 39-42; fig. 6). Timer T2 produces the control signal

automatically in the network management system.

***Regarding claims 71 and 75:***

The rejection was proposed by the third party requester in the request for reexamination,

and it is adopted for the reasons set forth in the request for reexamination at pages 264-265

(claim 71 under Matsukawa '411) and page 268 (claim 75 under Matsukawa '411), which are

hereby incorporated by reference.

***Regarding claim 77:***

**A method of selectively routing a telephone call from a first end terminal to a second**
**end terminal, comprising:**

Matsukawa teaches a switching apparatus for selectively routing an ISDN telephone call

from a first end terminal (DTE 1) to a second end terminal (DTE 1'). Matsukawa discloses

Protocol Switching Unit 22 selects between an ISDN line switching network through Speed

Matching Unit 23 and an ISDN packet switching network through Packet Processing Unit 24,

(fig. 1; col. 2, lines 38-47; col. 4, lines 11-27).

**establishing access of said first end terminal to a packet switching network through**
**which data can be sent for delivery to the second end terminal;**

Matsukawa discloses terminal 1 transmits a data signal S5, so that the ISDN terminal

adapter 2 (the LAPB protocol unit 232 or the D-channel protocol processing unit 233, and the

PAD unit 231) assembles a data packet DT and transmits it to the ISDN. 3. Then, the ISDN 3

transmits the data packet DT to the ISDN terminal adapter 2', so that the ISDN terminal 2' (the

LAPB protocol unit or the D-channel protocol processing unit 233, and the PAD unit 231)

disassembles the data packet DT and transmits it to the terminal 1'. Similarly, the ISDN terminal

adapter 2 (the LAPB protocol unit or the D-channel protocol processing unit) assembles a data

reception and response (RR) packet and transmits it to the ISDN 3. Then, the ISDN 3 transmits

the RR packet to the ISDN terminal adapter 2, (col. 3, lines 43-37).

**transferring first data of the telephone call originated by the first end terminal over**

**the packet switching network for delivery to the second end terminal,**

As stated above, Matsukawa discloses terminal 1 transmits a data signal S5, so that the

ISDN terminal adapter 2 (the LAPB protocol unit 232 or the D-channel protocol processing unit

233, and the PAD unit 231) assembles a data packet DT and transmits it to the ISDN. 3. Then,

the ISDN 3 transmits the data packet DT to the ISDN terminal adapter 2', so that the ISDN

terminal 2' (the LAPB protocol unit or the D-channel protocol processing unit 233, and the PAD

unit 231) disassembles the data packet DT and transmits it to the terminal 1'. Similarly, the ISDN

terminal adapter 2 (the LAPB protocol unit or the D-channel protocol processing unit) assembles

a data reception and response (RR) packet and transmits it to the ISDN 3. Then, the ISDN 3

transmits the RR packet to the ISDN terminal adapter 2, (col. 3, lines 43-37).

**responding to a control signal for changing-over from a packet-switching mode of**

**transfer of the first data of the telephone call to a line-switching mode of transfer of second**

**data of the telephone call originated by the first end terminal without interruption of a call**

**set-up procedure,**

Matsukawa discloses that the protocol processing switching unit 22 within the first switch

(ISDN Terminal Adapter 2) checks whether a control signal (output of Timer T2) exists. If it

Application/Control Number: 95/001,001                                Page 78
Art Unit: 3992

exists the system changes over from a packet switching network to a line-switching network (fig.

6). Thereafter, the timer 27 generates a switching request signal and transmits it to the protocol

processing switching unit 22 to select the speed-matching unit 24 instead of the packet-

processing unit 23, (col. 5, lines 39-42; fig. 6). Timer T2 produces the control signal

automatically in the network management system.

> **by establishing a connection from said first end terminal to a line-switching network**
>
> **through which data can be sent for delivery to the second end terminal and**

Matsukawa discloses at least an "ISDN terminal adapter 2" and a "speed matching unit

24" which provides a device for establishing a connection to a line-switching network through

which data can be sent for delivery to the second end terminal, (fig. 1; col. 5, lines 9-38).

> **establishing said line-switching mode of transfer of the second data of the telephone**
>
> **call over the connection through the line-switching network for delivery to the second end**
>
> **terminal.**

Matsukawa discloses transferring data packets (DT) from the first switch (ISDN

Terminal Adapter 2) to the second switch (ISDN Terminal Adapter 2'). For example, Figure 6

and its accompanying text show a transfer of data packets (DT). Thereafter, data communication

by packet switching is established, (col. 5, lines 21-22).

***Regarding claims 79 and 82:***

The rejection was proposed by the third party requester in the request for reexamination,

and it is adopted for the reasons set forth in the request for reexamination at page 293 (claim 79

under Matsukawa '411) and page 296 (claim 82 under Matsukawa '411), which are hereby

incorporated by reference.

### *Issue 6*

### *Requester Proposed Rejection (Adopted)*

10.     Claims 36,37,54,55,56,58,62, 64, 68, 69, 71, 75, 77, 79, 82, 84, 87,90,92,95,98   are

rejected under 35 U.S.C. 102(b) as being anticipated by Yoshida US Patent 5,347,516.

### *Regarding claim 36:*

**A method for transferring data selectively by line switching or by packet switching**

**from a first switch to a second switch, the first switch being part of or having access to a**

**line-switching network and a packet switching network, comprising:**

Yoshida an ISDN Access System for selectively routing a telephone call from a first end

terminal to a second end terminal, (fig. 1; abstract). Yoshida discloses the ISDN access system

comprises a switching circuit 20 (first switch) having a first and second output port which and

wherein the switching circuit delivers a packet data signal as a first switch signal (packet

switching network) via the first output port 22 or a second switch signal via output port 23 (line

switching), (col. 4, lines 50-66). As shown in figure one output port 22 goes to Gateway #1 to

input noted B1 (packet switched) and output port 23 goes to input node B2 (line switch).

Yoshida states that it is predetermined that B 1 and B2 channels correspond to packet switch and

the line switch, respectively, (col. 5, lines 41-52).

**a) packetizing the data into data packets in the first switch if the data does not yet**

**exist as data packets;**

Yoshida discloses the data arrives at the ISDN access system in packet form from the

LAN terminal (LNT 16). The LAN terminal 16 is a network terminal of the LAN 15 and is for

processing a packet data signal from the LAN interface 18 into another packet data signal having

Application/Control Number: 95/001,001                                    Page 80

Art Unit: 3992

a frame and a transmission rate according to a D channel protocol used in the ISDN. A first

gateway circuit (GATEWAY #1) 24 is coupled to the first output port 22 and is for performing

protocol conversion of the first switched signal to produce a converted signal.... the gateway

circuit 24 performs the protocol conversion of the packet data as the first switched signal from

the LAN protocol to the protocol according to the CCITT recommendation X.25, (col. 4, line 67

- col. 5, line 8).

   **b) transferring the data packets from the first switch through the packet-switching**

**network to the second switch;**

   Yoshida discloses a device (ISDN Access System of Fig. 1 including Switch 12 and

related circuits) that provides access to a packet switching network through which data can be

sent for delivery to a second end terminal. According to the present invention, it is predetermined

that B1 and B2 channels correspond to packet switch and the line switch, respectively, (col. 5,

lines 41-53).

   **c) checking whether a control signal exists for changing-over from the packet-**

**switching data transfer of the data packets through the packet switching network to a line-**

**switching connection to the second switch, wherein the control signal is produced by a**

**network management system;**

   Yoshida discloses when the channel indicator is representative of the B 1 channel in a

single call control; the switch indicator is representative of the packet switch in the call control.

On the other hand, when the channel indicator is representative of the B2 channel in a single call

control, the switch indicator is representative of the line switch in the call control, (col.

5, lines 45-52).

Application/Control Number: 95/001,001                                      Page 81
Art Unit: 3992

> **d) establishing the line-switching connection through the line-switching network to the second switch in response to said control signal, if the line-switching connection is not yet present; and**

Yoshida discloses during a time when transmission of data packets is performed through the B1 channel and the packet switch, the controller 28 produces the enabling signal when the channel changer 29 produces the channel change signal at time $t_1$ as shown in FIG. 4. In response to the enabling signal, the control channel processor 27 produces the control channel signal having the telephone number of the called party, the channel indicator representative of the B2 channel and the switch indicator representative of the line switch so as to perform call connection for B2 channel (steps S1- S3 in FIG. 5), (col. 6, lines 11-21).

> **e) changing-over from the packet-switching data transfer of the data packets through the packet switching network to a line-switching data transfer in response to said control signal and transferring data over the line switching connection to the second switch.**

Yoshida discloses when the call connection is performed at time $t_2$ the control channel processor 27 produces the connection acknowledge signal (step S4, FIG. 5). In response to the connection acknowledge signal, the controller 28 produces the switching signal so that the switching circuit 20 switches the input port from the first output port 22 to the second output port 23 at time $t_3$ (step S5, FIG. 5). As a result, the packet data signal is delivered as the second switched signal to the interface circuit 30 and then transmitted in the B2 channel to the line switch in the ISDN switch 12, (col. 6, lines 22-32; Figs. 4 and 5).

The flow chart in Fig. 5 at step 3 (S3) shows "PERFORM CALL CONNECTION FOR B2 CHANNEL" and thereafter at step 4 (S4) checks to insure the connection was made "CALL

Application/Control Number: 95/001,001                                   Page 82

Art Unit: 3992

CONNECTION IS PERFORMED?" As indicated in the text above, the B2 channel is the line

switched network connection.

### *Regarding claims, 37, 54, 55, 56, 58, 62 and 64:*

      The rejection was proposed by the third party requester in the request for reexamination,

and it <u>is adopted</u> for the reasons set forth in the request for reexamination at page 168 (claim

37/36 under Yoshida '516), page 172 (claim 54/36 under Yoshida '516), page 174 (claims

55/54/36 under Yoshida '516), page 175 (claim 56/54/36 under Yoshida '516), page 177 (claim

58/56/54/36 under Yoshida '516), page 180 (claim 62/54/36 under Yoshida '516) and pages 182-

183 (claim 64/54/36 under Yoshida '516) which are hereby incorporated by reference.

### *Regarding claim 68:*

      **Switching apparatus for selectively routing a telephone call from a first end**

**terminal to a second end terminal, comprising:**

      Yoshida discloses a system for use in access to ISDN (Integrated Services

Digital Network) from a packet data equipment. The ISDN comprises an ISDN switch including

a line switch and a packet switch, a plurality of subscriber's lines extending from the ISDN

switch, each of the subscriber's lines transmitting a TDM (Time Division Multiplex) signal

which comprises first and second communication information channels for conveying

communication information and a control channel for conveying a control signal for data link

establishment and call control, (col. 2, lines 15-25).

Application/Control Number: 95/001,001                                    Page 83
Art Unit: 3992

**a device that provides access to a packet switching network through which data can be sent for delivery to the second end terminal;**

Yoshida discloses a device (ISDN Access System of Fig. 1 including Switch 12 and related circuits) that provides access to a packet switching network through which data can be sent for delivery to a second end terminal. Yoshida discloses that B1 and B2 channels correspond to packet switch and the line switch, respectively, therefore, when the channel indicator is representative of the B1 channel in a single call control, the switch indicator is representative of the packet switch in the call control. On the other hand, when the channel indicator is representative of the B2 channel in a single call control, the switch indicator is representative of the line switch in the call control, (col. 5, lines 45-52). The control channel processor 27 produces the connection acknowledgment after the virtual circuit is made on B1 channel through the packet switch (step S8, FIG. 5). Thus, the packet data signal is transmitted to the destination address through the virtual circuit using B1 channel and the packet switch, (col. 7, lines 12-17).

**means for transferring first data of the telephone call originated by the first terminal through the packet switching network for delivery to the second end terminal;**

Yoshida discloses the control channel processor 27 produces a control channel signal having the telephone number, the channel indicator representative of B1 channel, and the switch indicator representative of the packet switch so as to perform the call connection on B1 channel (steps S1 and S7, FIG. 5). The control channel processor 27 produces the connection acknowledgment after the virtual circuit is made on B1 channel through the packet switch (step

Application/Control Number: 95/001,001                                          Page 84
Art Unit: 3992

S8, FIG. 5). Thus, the packet data signal is transmitted to the destination address through the

virtual circuit using B1 channel and the packet switch, (figs. 1 and 5).

**a device for establishing a connection to a line-switching network through which**

**data can be sent for delivery to the second end terminal;**

Yoshida discloses a device (ISDN Access System of Fig. 1 including Switch 12 and

related circuits) that establishes a connection to a line-switching network through which data can

be sent for delivery to a second end terminal. Yoshida discloses when the channel indicator is

representative of the B2 channel in a single call control, the switch indicator is representative of

the line switch in the call control, (col. 5, lines 45-52).

Yoshida discloses when the call connection is performed at time $t_2$ the control channel

processor 27 produces the connection acknowledge signal (step S4, FIG. 5). In response to the

connection acknowledge signal, the controller 28 produces the switching signal so that the

switching circuit 20 switches the input port from the first output port 22 to the second output port

23 at time $t_3$ (step S5, FIG. 5). As a result, the packet data signal is delivered as the second

switched signal to the interface circuit 30 and then transmitted in the B2 channel to the line

switch in the ISDN switch 12, (col. 6, lines 22-32; Figs. 4 and 5).

**means for transferring second data of the telephone call originated by the first**

**terminal over the connection through the line-switching network for delivery to the second**

**end terminal;**

Yoshida discloses when the channel indicator is representative of the B2 channel in a

single call control, the switch indicator is representative of the line switch in the call control,

(col. 5, lines 45-52).

Yoshida discloses during a time when transmission of data packets is performed through the B1 channel and the packet switch, the controller 28 produces the enabling signal when the channel changer 29 produces the channel change signal at time $t_1$ as shown in FIG. 4. In response to the enabling signal, the control channel processor 27 produces the control channel signal having the telephone number of the called party, the channel indicator representative of the B2 channel and the switch indicator representative of the line switch so as to perform call connection for B2 channel (steps S1- S3 in FIG. 5), (col. 6, lines 11-21).

**and means responsive to a control signal for changing-over from a packet-switching mode of transfer of the first data of the telephone call to a line-switching mode of transfer of the second data of the telephone call without interruption of a call-up procedure, wherein said control signal is produced by a network management system.**

Yoshida discloses when the call connection is performed at time $t_2$ the control channel processor 27 produces the connection acknowledge signal (step S4, FIG. 5). In response to the connection acknowledge signal, the controller 28 produces the switching signal so that the switching circuit 20 switches the input port from the first output port 22 to the second output port 23 at time $t_3$ (step S5, FIG. 5). As a result, the packet data signal is delivered as the second switched signal to the interface circuit 30 and then transmitted in the B2 channel to the line switch in the ISDN switch 12, (col. 6, lines 22-32; Figs. 4 and 5).

***Regarding claim 69:***

**Switching apparatus for selectively routing a telephone call from a first end terminal to a second end terminal, comprising:**

Yoshida discloses a system for use in access to ISDN (Integrated Services
Digital Network) from a packet data equipment. The ISDN comprises an ISDN switch including
a line switch and a packet switch, a plurality of subscriber's lines extending from the ISDN
switch, each of the subscriber's lines transmitting a TDM (Time Division Multiplex) signal
which comprises first and second communication information channels for conveying
communication information and a control channel for conveying a control signal for data link
establishment and call control, (col. 2, lines 15-25).

   **means for establishing a connection to a packet switching network through which
data can be sent to the second end terminal;**

Yoshida discloses a device (ISDN Access System of Fig. 1 including Switch 12 and
related circuits) that provides access to a packet switching network through which data can be
sent for delivery to a second end terminal.  Yoshida discloses that B1 and B2 channels
correspond to packet switch and the line switch, respectively, therefore, when the channel
indicator is representative of the B1 channel in a single call control, the switch indicator is
representative of the packet switch in the call control. On the other hand, when the channel
indicator is representative of the B2 channel in a single call control, the switch indicator is
representative of the line switch in the call control, (col. 5, lines 45-52). The control channel
processor 27 produces the connection acknowledgment after the virtual circuit is made on B1
channel through the packet switch (step S8, FIG. 5). Thus, the packet data signal is transmitted to
the destination address through the virtual circuit using B1 channel and the packet switch, (col. 7,
lines 12-17).

Application/Control Number: 95/001,001                                      Page 87
Art Unit: 3992

**means for transferring first data of the telephone call originated by the first end terminal over the connection through the packet switching network for delivery to the second end terminal,**

Yoshida discloses the control channel processor 27 produces a control channel signal having the telephone number, the channel indicator representative of B1 channel, and the switch indicator representative of the packet switch so as to perform the call connection on B1 channel (steps S1 and S7, FIG. 5). The control channel processor 27 produces the connection acknowledgment after the virtual circuit is made on B1 channel through the packet switch (step S8, FIG. 5). Thus, the packet data signal is transmitted to the destination address through the virtual circuit using B1 channel and the packet switch, (figs. 1 and 5).

**means for establishing a connection to a line-switching network through which data can be sent for delivery to the second end terminal;**

Yoshida discloses a device (ISDN Access System of Fig. 1 including Switch 12 and related circuits) that establishes a connection to a line-switching network through which data can be sent for delivery to a second end terminal. Yoshida discloses when the channel indicator is representative of the B2 channel in a single call control, the switch indicator is representative of the line switch in the call control, (col. 5, lines 45-52).

Yoshida discloses when the call connection is performed at time $t_2$ the control channel processor 27 produces the connection acknowledge signal (step S4, FIG. 5). In response to the connection acknowledge signal, the controller 28 produces the switching signal so that the switching circuit 20 switches the input port from the first output port 22 to the second output port 23 at time $t_3$ (step S5, FIG. 5). As a result, the packet data signal is delivered as the second

Application/Control Number: 95/001,001                                Page 88
Art Unit: 3992

switched signal to the interface circuit 30 and then transmitted in the B2 channel to the line

switch in the ISDN switch 12, (col. 6, lines 22-32; Figs. 4 and 5).

**means for transferring second data of the telephone call originated by first end**

**terminal over the connection through the line-switching network for delivery to the second**

**end terminal; and**

Yoshida discloses when the channel indicator is representative of the B2 channel in a

single call control, the switch indicator is representative of the line switch in the call control,

(col. 5, lines 45-52).

Yoshida discloses during a time when transmission of data packets is performed through

the B1 channel and the packet switch, the controller 28 produces the enabling signal when the

channel changer 29 produces the channel change signal at time $t_1$ as shown in FIG. 4. In response

to the enabling signal, the control channel processor 27 produces the control channel signal

having the telephone number of the called party, the channel indicator representative of the B2

channel and the switch indicator representative of the line switch so as to perform call

connection for B2 channel (steps S1- S3 in FIG. 5), (col. 6, lines 11-21).

**means responsive to a control signal for changing-over from a packet-switching**

**mode of transfer of the first data of the telephone call to a line-switching mode of transfer**

**of the second data of the telephone call without interruption of a call set-up procedure.**

Yoshida discloses when the call connection is performed at time $t_2$ the control channel

processor 27 produces the connection acknowledge signal (step S4, FIG. 5). In response to the

connection acknowledge signal, the controller 28 produces the switching signal so that the

switching circuit 20 switches the input port from the first output port 22 to the second output port

Application/Control Number: 95/001,001                                    Page 89
Art Unit: 3992

23 at time $t_3$ (step S5, FIG. 5). As a result, the packet data signal is delivered as the second
switched signal to the interface circuit 30 and then transmitted in the B2 channel to the line
switch in the ISDN switch 12, (col. 6, lines 22-32; Figs. 4 and 5).

### Regarding claims 71 and 75:

The rejection was proposed by the third party requester in the request for reexamination,
and it is adopted for the reasons set forth in the request for reexamination at page 265 (claim 71
under Yoshida '516) and page 269 (claim 75 under Yoshida '516) which are hereby incorporated
by reference.


### Regarding claim 77:

**A method of selectively routing a telephone call from a first end terminal to a second
end terminal, comprising:**

Yoshida discloses a system for use in access to ISDN (Integrated Services
Digital Network) from a packet data equipment. The ISDN comprises an ISDN switch including
a line switch and a packet switch, a plurality of subscriber's lines extending from the ISDN
switch, each of the subscriber's lines transmitting a TDM (Time Division Multiplex) signal
which comprises first and second communication information channels for conveying
communication information and a control channel for conveying a control signal for data link
establishment and call control, (col. 2, lines 15-25).

**establishing access of said first end terminal to a packet switching network through
which data can be sent for delivery to the second end terminal;**

Yoshida discloses a device (ISDN Access System of Fig. 1 including Switch 12 and related circuits) that provides access to a packet switching network through which data can be sent for delivery to a second end terminal. Yoshida discloses that B1 and B2 channels correspond to packet switch and the line switch, respectively, therefore, when the channel indicator is representative of the B1 channel in a single call control, the switch indicator is representative of the packet switch in the call control. On the other hand, when the channel indicator is representative of the B2 channel in a single call control, the switch indicator is representative of the line switch in the call control, (col. 5, lines 45-52). The control channel processor 27 produces the connection acknowledgment after the virtual circuit is made on B1 channel through the packet switch (step S8, FIG. 5). Thus, the packet data signal is transmitted to the destination address through the virtual circuit using B1 channel and the packet switch, (col. 7, lines 12-17).

**transferring first data of the telephone call originated by the first end terminal over the packet switching network for delivery to the second end terminal,**

Yoshida discloses the control channel processor 27 produces a control channel signal having the telephone number, the channel indicator representative of B1 channel, and the switch indicator representative of the packet switch so as to perform the call connection on B1 channel (steps S1 and S7, FIG. 5). The control channel processor 27 produces the connection acknowledgment after the virtual circuit is made on B1 channel through the packet switch (step S8, FIG. 5). Thus, the packet data signal is transmitted to the destination address through the virtual circuit using B1 channel and the packet switch, (figs. 1 and 5).

Application/Control Number: 95/001,001                                    Page 91
Art Unit: 3992

**responding to a control signal for changing-over from a packet-switching mode of**

**transfer of the first data of the telephone call to a line-switching mode of transfer of second**

**data of the telephone call originated by the first end terminal without interruption of a call**

**set-up procedure,**

Yoshida discloses when the call connection is performed at time $t_2$ the control channel

processor 27 produces the connection acknowledge signal (step S4, FIG. 5). In response to the

connection acknowledge signal, the controller 28 produces the switching signal so that the

switching circuit 20 switches the input port from the first output port 22 to the second output port

23 at time $t_3$ (step S5, FIG. 5). As a result, the packet data signal is delivered as the second

switched signal to the interface circuit 30 and then transmitted in the B2 channel to the line

switch in the ISDN switch 12, (col. 6, lines 22-32; Figs. 4 and 5).

**by establishing a connection from said first end terminal to a line-switching network**

**through which data can be sent for delivery to the second end terminal and**

Yoshida discloses a device (ISDN Access System of Fig. 1 including Switch 12 and

related circuits) that establishes a connection to a line-switching network through which data can

be sent for delivery to a second end terminal. Yoshida discloses when the channel indicator is

representative of the B2 channel in a single call control, the switch indicator is representative of

the line switch in the call control, (col. 5, lines 45-52).

Yoshida discloses when the call connection is performed at time $t_2$ the control channel

processor 27 produces the connection acknowledge signal (step S4, FIG. 5). In response to the

connection acknowledge signal, the controller 28 produces the switching signal so that the

switching circuit 20 switches the input port from the first output port 22 to the second output port

Application/Control Number: 95/001,001                                    Page 92
Art Unit: 3992

23 at time $t_3$ (step S5, FIG. 5). As a result, the packet data signal is delivered as the second

switched signal to the interface circuit 30 and then transmitted in the B2 channel to the line

switch in the ISDN switch 12, (col. 6, lines 22-32; Figs. 4 and 5).

**establishing said line-switching mode of transfer of the second data of the telephone**

**call over the connection through the line-switching network for delivery to the second end**

**terminal.**

Yoshida discloses when the channel indicator is representative of the B2 channel in a

single call control, the switch indicator is representative of the line switch in the call control,

(col. 5, lines 45-52).

Yoshida discloses during a time when transmission of data packets is performed through

the B1 channel and the packet switch, the controller 28 produces the enabling signal when the

channel changer 29 produces the channel change signal at time $t_l$ as shown in FIG. 4. In response

to the enabling signal, the control channel processor 27 produces the control channel signal

having the telephone number of the called party, the channel indicator representative of the B2

channel and the switch indicator representative of the line switch so as to perform call

connection for B2 channel (steps S1- S3 in FIG. 5), (col. 6, lines 11-21).

***Regarding claims 79 and 82:***

The rejection was proposed by the third party requester in the request for reexamination,

and it is adopted for the reasons set forth in the request for reexamination at pages 293-294

(claim 79 under Yoshida '516) and page 297 (claim 82 under Yoshida '516) which are hereby

incorporated by reference.

### *Regarding claim 84:*

**Switching apparatus for switching data packets from multiple origin end terminals, the data packets containing headers including information identifying respective origin and destination end terminals, the switching apparatus comprising:**

Yoshida discloses, an ISDN access system for access from a packet data equipment 11 to an ISDN including ISDN switch 12 and a network terminal 13 connected to the ISDN switch 12 through a digital subscriber's line 14. The ISDN switch 12 includes a packet switch and a line switch. The packet data equipment 11 may be any equipment which transmits data packets as packet data sources. The packet data equipment may be equipment which can receive data packets as well as transmit data packets. Yoshida discloses the packet data equipment 11 is shown as a LAN 15 and a LAN terminal (LNT) 16 connected to the LAN 15, (col. 4, lines 23-35). Yoshida discloses the use of headers for the address information. In figure 2, Yoshida discloses an essential part of those packet data signals from the LAN interface 18 and the LAN terminal 16 comprises a destination address DA, a source address SA, and information to be transferred from the destination address to the source address, (col. 4, lines 45-49; fig. 2).

Yoshida discloses terminal equipment, such as digital telephones, for sending packet data by calling a distant phone number and setting up a call to transmit the packet data to a second end terminal. Yoshida discloses, the address converter 26 comprises a conversion list 261 for converting destination addresses into corresponding telephone numbers. When a called party has a plurality of terminal equipments, destination addresses of the plurality of terminal equipments are converted into a single telephone number of the called party, (fig. 3; col. 5, lines 20-26).

**a packet switching device for transferring data packets through a packet switching network through which data can be sent for delivery to destination end terminals;**

Yoshida discloses a device (ISDN Access System of Fig. 1 including Switch 12 and related circuits) that provides access to a packet switching network through which data can be sent for delivery to a second end terminal. Yoshida discloses that B1 and B2 channels correspond to packet switch and the line switch, respectively, therefore, when the channel indicator is representative of the B1 channel in a single call control, the switch indicator is representative of the packet switch in the call control. On the other hand, when the channel indicator is representative of the B2 channel in a single call control, the switch indicator is representative of the line switch in the call control, (col. 5, lines 45-52). The control channel processor 27 produces the connection acknowledgment after the virtual circuit is made on B1 channel through the packet switch (step S8, FIG. 5). Thus, the packet data signal is transmitted to the destination address through the virtual circuit using B1 channel and the packet switch, (col. 7, lines 12-17).

**a line switching device for establishing line connections through a line-switching network through which data can be sent to the destination end terminals; and**

Yoshida discloses a device (ISDN Access System of Fig. 1 including Switch 12 and related circuits) that establishes a connection to a line-switching network through which data can be sent for delivery to a second end terminal. Yoshida discloses when the channel indicator is representative of the B2 channel in a single call control, the switch indicator is representative of the line switch in the call control, (col. 5, lines 45-52).

Application/Control Number: 95/001,001                                                    Page 95
Art Unit: 3992

Yoshida discloses when the call connection is performed at time $t_2$ the control channel

processor 27 produces the connection acknowledge signal (step S4, FIG. 5). In response to the

connection acknowledge signal, the controller 28 produces the switching signal so that the

switching circuit 20 switches the input port from the first output port 22 to the second output port

23 at time $t_3$ (step S5, FIG. 5). As a result, the packet data signal is delivered as the second

switched signal to the interface circuit 30 and then transmitted in the B2 channel to the line

switch in the ISDN switch 12, (col. 6, lines 22-32; Figs. 4 and 5).

**a control device connected to the packet switching device and the line switching**

**device for directing the data packets from the multiple origin end terminals to either the**

**packet switching device or to the line switching device,**

Yoshida discloses according to the present invention, it is predetermined that B1 and B2

channels correspond to packet switch and the line switch, respectively. Therefore, when the

channel indicator is representative of the B1 channel in a single call control, the switch indicator

is representative of the packet switch in the call control. On the other hand, when the channel

indicator is representative of the B2 channel in a single call control, the switch indicator is

representative of the line switch in the call control, (col. 5, lines 45-52). Yoshida discloses

during a time when transmission of data packets is performed through the B1 channel and the

packet switch, the controller 28 produces the enabling signal when the channel changer 29

produces the channel change signal at time $t_1$ as shown in FIG. 4. In response to the enabling

signal, the control channel processor 27 produces the control channel signal having the telephone

number of the called party, the channel indicator representative of the B2 channel and the switch

Application/Control Number: 95/001,001                                    Page 96
Art Unit: 3992

indicator representative of the line switch so as to perform call connection for B2 channel (steps
S1- S3 in FIG. 5), (col. 6, lines 11-21).

**the control device being responsive to the data packet headers for controlling the**
**packet switching device and the line switching device for establishing and maintaining**
**respective communications connections for data transfer with real-time properties between**
**origin end terminals and destination end terminals,**

Yoshida discloses during a time when transmission of data packets is performed through
the B1 channel and the packet switch, the controller 28 produces the enabling signal when the
channel changer 29 produces the channel change signal at time $t_1$ as shown in FIG. 4. In response
to the enabling signal, the control channel processor 27 produces the control channel signal
having the telephone number of the called party, the channel indicator representative of the B2
channel and the switch indicator representative of the line switch so as to perform call
connection for B2 channel (steps S1- S3 in FIG. 5), (col. 6, lines 11-21).

**the control device also being responsive to a control signal for changing-over from**
**packet-switching transfer of first data of a communications connection to line-switching**
**transfer of second data of the communication connection without interruption of the**
**communications connection.**

Yoshida discloses when the call connection is performed at time $t_2$ the control channel
processor 27 produces the connection acknowledge signal (step S4, FIG. 5). In response to the
connection acknowledge signal, the controller 28 produces the switching signal so that the
switching circuit 20 switches the input port from the first output port 22 to the second output port
23 at time $t_3$ (step S5, FIG. 5). As a result, the packet data signal is delivered as the second

Application/Control Number: 95/001,001                                             Page 97
Art Unit: 3992

switched signal to the interface circuit 30 and then transmitted in the B2 channel to the line

switch in the ISDN switch 12, (col. 6, lines 22-32; Figs. 4 and 5).

***Regarding claims 87 and 90:***

     The rejection was proposed by the third party requester in the request for reexamination,

and it <u>is adopted</u> for the reasons set forth in the request for reexamination at page 319 (claim 87

under Yoshida '516) and page 322 (claim 90 under Yoshida '516) which are hereby incorporated

by reference.


***Regarding claim 92:***

     **A method of routing data packets from multiple origin end terminal in a data**

**network, the data packets containing headers including information identifying respective**

**origin and destination end terminals in the data network, the method comprising:**

     Yoshida discloses, an ISDN access system for access from a packet data equipment 11 to

an ISDN including ISDN switch 12 and a network terminal 13 connected to the ISDN switch 12

through a digital subscriber's line 14. The ISDN switch 12 includes a packet switch and a line

switch. The packet data equipment 11 may be any equipment which transmits data packets as

packet data sources. The packet data equipment may be equipment which can receive data

packets as well as transmit data packets. Yoshida discloses the packet data equipment 11 is

shown as a LAN 15 and a LAN terminal (LNT) 16 connected to the LAN 15, (col. 4, lines 23-

35). Yoshida discloses the use of headers for the address information. In figure 2, Yoshida

discloses an essential part of those packet data signals from the LAN interface 18 and the LAN

Application/Control Number: 95/001,001                                      Page 98
Art Unit: 3992

terminal 16 comprises a destination address DA, a source address SA, and information to be
transferred from the destination address to the source address, (col. 4, lines 45-49; fig. 2).

  Yoshida discloses terminal equipment, such as digital telephones, for sending packet data
by calling a distant phone number and setting up a call to transmit the packet data to a second
end terminal. Yoshida discloses, the address converter 26 comprises a conversion list 261 for
converting destination addresses into corresponding telephone numbers. When a called party has
a plurality of terminal equipments, destination addresses of the plurality of terminal equipments
are converted into a single telephone number of the called party, (fig. 3; col. 5, lines 20-26).

  **directing the data packets from the multiple end terminals to either a packet**
**switching device or to a line switching device by inspecting the data packet headers, and**

  Yoshida discloses inspecting the header for the destination address and using this
information to determine line switching or packet switching. Yoshida discloses the address
converter 26 comprises a conversion list 261 for converting destination addresses
into corresponding telephone numbers, (fig. 3). When a called party has a plurality of terminal
equipments, destination addresses of the plurality of terminal equipments are converted into a
single telephone number of the called party. Yoshida discloses a control channel processor 27 is
connected to the address converter 26 and a controller 28 and receives the telephone number of
the called party and an enabling signal. In response to the enabling signal from the controller 28,
the control channel processor 27 starts the D channel protocol for data link establishment and
call control according to layers 2 and 3 of CCITT recommendation Q.921 and Q931. In detail,
the control channel processor 27 generates a D channel signal of a frame format of LAPD (Link
Access Procedure on D channel) in which messages for call control are carried. The message

Application/Control Number: 95/001,001                                    Page 99
Art Unit: 3992

includes the telephone number of the called party, a channel indicator representative of a

particular one of the B1 and B2 channels, and a switch indicator representative of one of the

packet switch and the line switch, (col. 5, lines 45-52).

   **in response to the data packet headers, establishing and maintaining respective**

**communications connections for data transfer with real-time properties between origin end**

**terminals and destination end terminals, and**

   Yoshida discloses the control channel processor 27 produces the control channel signal

having the telephone number, the channel indicator representative of B1 channel, and the switch

indicator representative of the packet switch so as to perform the call connection on B1 channel

(steps S1 and S7, FIG. 5). The control channel processor 27 produces the connection

acknowledgment after the virtual circuit is made on B1 channel through the packet switch (step

S8, FIG. 5). Thus, the packet data signal is transmitted to the destination address through the

virtual circuit using B1 channel and the packet switch, (figs. 1 and 5).

   **responding to a control signal by changing-over from packet-switching transfer of**

**first data of at least one of the communications connections over a packet-switching**

**network to line-switching transfer of second data of said at least one of the communication**

**connections over a line-switching network without interruption of said at least one of the**

**communications connections.**

   Yoshida discloses when the call connection is performed at time $t_2$ the control channel

processor 27 produces the connection acknowledge signal (step S4, FIG. 5). In response to the

connection acknowledge signal, the controller 28 produces the switching signal so that the

switching circuit 20 switches the input port from the first output port 22 to the second output port

Application/Control Number: 95/001,001                                                                Page 100
Art Unit: 3992

23 at time $t_3$ (step S5, FIG. 5). As a result, the packet data signal is delivered as the second

switched signal to the interface circuit 30 and then transmitted in the B2 channel to the line

switch in the ISDN switch 12, (col. 6, lines 22-32; Figs. 4 and 5).

> ### Regarding claims 95 and 98:

The rejection was proposed by the third party requester in the request for reexamination,

and it is adopted for the reasons set forth in the request for reexamination at page 340 (claim 95

under Yoshida '516) and page 343 (claim 98 under Yoshida '516) which are hereby incorporated

by reference.


## Claim Rejections - 35 USC § 103

11.     The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
> section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
> such that the subject matter as a whole would have been obvious at the time the invention was made to a person
> having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the
> manner in which the invention was made.

12.     The factual inquiries set forth in Graham v. John Deere Co., 383 U.S. 1, 148 USPQ 459

(1966), that are applied for establishing a background for determining obviousness under 35

U.S.C. 103(a) are summarized as follows:

1.     Determining the scope and contents of the prior art.
2.     Ascertaining the differences between the prior art and the claims at issue.
3.     Resolving the level of ordinary skill in the pertinent art.
4.     Considering objective evidence present in the application indicating obviousness
       or nonobviousness.


### Issue 7

### Requester Proposed Rejection (Not Adopted)

Application/Control Number: 95/001,001                                                    Page 101
Art Unit: 3992

13.      Claims 36, 37, 54-58, 60-62, 64, 66, 68, 69, 71, 75, 77, 79, 82, 84, 87, 90-92, 95, 98, 100,

102, 104 and 118-125 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Focsaneanu in view of Jonas and further in view of Lucent Press Release (hereinafter Lucent)

         The rejection was proposed by the third party requester in the request for reexamination,   .

and it is not adopted for the reasons set forth below.

         The Requester on page 387 of the request states that to the extent that the various

anticipatory references cited above fail to disclose ay element of the various claims, the claims

are nonetheless obvious under Section 103 because all of the elements of the claimed inventions

were discloses in one or more of the other references.

         In this case, the Requester relies upon Focsaneanu, Jonas and Lucent Press Release for

providing the teachings to the claim. The Requester showed how each of the prior art references

discloses each of the limitations. On page 402 (in reference to claim 36), the Requester states that

*Focsaneanu '910* discloses the structure of the claimed apparatus (including any means plus

function elements in Figures 8 and 14), and also describes the dynamic change-over method

from a packet switched telephone call over the Internet to a line-switched telephone call over the

PSTN in response to a control signal from the user or a network management system. *Jonas '792*

clearly discloses the apparatus and method for a change-over from packet switching of a

communication to line-switching of a communication during the existing transfer, in the middle

of an ongoing communications connection. *Jonas '792* also teaches establishing a bypass

connection over a line-switched network, and changing over to the bypass connection in the

middle of the ongoing connection. *The Lucent reference* similarly teaches automatically

changing over a telephone call over the Internet to a call on the traditional telephone

network in response to congestion.

The Examiner notes that under 35 U.S.C. 103(a) the factual inquiries set forth in *Graham*

v. *John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966), must be applied for establishing a

background for determining obviousness under 35 U.S.C. 103(a).

The factual inquires are summarized as follows:

1. Determining the scope and contents of the prior art.
2. Ascertaining the differences between the prior art and the claims at issue.
3. Resolving the level of ordinary skill in the pertinent art.
4. Considering objective evidence present in the application indicating obviousness or nonobviousness.

The Examiner agrees that the Requester has determined at least the scope and contents of

the prior art, however, the Requester has failed to ascertain the differences between the prior art

and the claims at issues. As can be seen, Focsaneanu and Jonas were both shown to anticipate the

claims as discussed in Issues 1 and 2, respectively. The claim chart under 103 does not show the

differences of Focsaneanu or Jonas to the claims at issue.

The Examiner thus, <u>does not adopt</u> the proposed rejection since the requester has not

followed the factual inquires as established in *Graham* v. *John Deere Co*, as shown above.

### *Issue 8*

#### *Requester Proposed Rejection (Not Adopted)*

14. Claims 36, 37, 41, 54-58, 60-62, 64, 66, 68, 69, 71, 75, 77, 79, 82, 84, 87, 90, 92, 95, 98,

100, 118 and 123 are rejected under 35 U.S.C. 103(a) as being unpatentable over Focsaneanu in

view of Farese and further in view of Lucent Press Release (hereinafter Lucent).

Application/Control Number: 95/001,001                                    Page 103
Art Unit: 3992

The rejection was proposed by the third party requester in the request for reexamination,
and it is not adopted for the reasons set forth below.

The Requester on page 387 of the request states that to the extent that the various
anticipatory references cited above fail to disclose ay element of the various claims, the claims
are nonetheless obvious under Section 103 because all of the elements of the claimed inventions
were discloses in one or more of the other references.

In this case, the Requester relies upon Focsaneanu, Farese and Lucent Press Release for
providing the teachings to the claim. The Requester showed how each of the prior art references
discloses each of the limitations. On page 426 (in reference to claim 36), the Requester states that
**Focsaneanu '910** discloses the structure of the claimed apparatus (including any means plus
function elements in Figures 8 and 14), and also describes the dynamic change-over method
from a packet switched telephone call over the Internet to a line-switched telephone call over the
PSTN in response to a control signal from the user or a network management system. **Farese**
clearly discloses the apparatus and method for a change-over from packet switching of a
communication to line-switching of a communication during the existing transfer, in the middle
of an ongoing communications connection. **The Lucent reference** also specifically provides a
motivation to improve on the switches of Focsaneanu and Farese by references that the change-
over form Internet traffic to PSTN traffic be made automatically in response to traffic and delays
on the packet-switch Internet connection.

The Examiner notes that under 35 U.S.C. 103(a) the factual inquiries set forth in *Graham*
v. *John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966), must be applied for establishing a
background for determining obviousness under 35 U.S.C. 103(a).

The factual inquires are summarized as follows:

1.  Determining the scope and contents of the prior art.
2.  Ascertaining the differences between the prior art and the claims at issue.
3.  Resolving the level of ordinary skill in the pertinent art.
4.  Considering objective evidence present in the application indicating obviousness
    or nonobviousness.

The Examiner agrees that the Requester has determined at least the scope and contents of

the prior art, however, the Requester has failed to ascertain the differences between the prior art

and the claims at issues. As can be seen, Focsaneanu and Farese were both shown to anticipate

the claims as discussed in Issues 1 and 3, respectively. The claim chart under 103 does not show

the differences of Focsaneanu or Farese to the claims at issue.

The Examiner thus, does not adopt the proposed rejection since the requester has not

followed the factual inquires as established in *Graham* v. *John Deere Co*, as shown above.

### *Issue 9*

### *Requester Proposed Rejection (Not Adopted)*

15.  Claims 36, 37, 66-69, 75, 77, 82, 84, 90-92, 98, 100, 102 and 118-125 are rejected under

35 U.S.C. 103(a) as being unpatentable over Focsaneanu in view of Arango and further in view

of Lucent Press Release.

The rejection was proposed by the third party requester in the request for reexamination,

and it is not adopted for the reasons set forth below.

The Requester on page 387 of the request states that to the extent that the various

anticipatory references cited above fail to disclose ay element of the various claims, the claims

are nonetheless obvious under Section 103 because all of the elements of the claimed inventions

were discloses in one or more of the other references.

In this case, the Requester relies upon Focsaneanu, Arango and Lucent Press Release for

providing the teachings to the claim. The Requester showed how each of the prior art references

disclose each of the limitations. On page 442 (in reference to claim 36), the Requester states that

***Focsaneanu '910*** discloses the structure of the claimed apparatus (including any means plus

function elements in Figures 8 and 14), and also describes the dynamic change-over method

from a packet switched telephone call over the Internet to a line-switched telephone call over the

PSTN in response to a control signal from the user or a network management system. ***Arango***

***'078*** clearly discloses the apparatus and method for a change-over from packet switching of a

communication to line-switching of a communication during the existing transfer, in the middle

of an ongoing communications connection. ***The Lucent reference*** also specifically provides a

motivation to improve on the switches of Focsaneanu and Arango by referencing that the

change-over form Internet traffic to PSTN traffic be made automatically in response to traffic

and delays on the packet-switch Internet connection.

The Examiner notes that under 35 U.S.C. 103(a) the factual inquiries set forth in *Graham*

**v.** *John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966), must be applied for establishing a

background for determining obviousness under 35 U.S.C. 103(a).

The factual inquires are summarized as follows:

1.  Determining the scope and contents of the prior art.
2.  Ascertaining the differences between the prior art and the claims at issue.
3.  Resolving the level of ordinary skill in the pertinent art.
4.  Considering objective evidence present in the application indicating obviousness or nonobviousness.

Application/Control Number: 95/001,001                                      Page 106
Art Unit: 3992

The Examiner agrees that the Requester has determined at least the scope and contents of

the prior art, however, the Requester has failed to ascertain the differences between the prior art

and the claims at issues. As can be seen, Focsaneanu and Arango were both shown to anticipate

the claims as discussed in Issues 1 and 4, respectively. The claim chart under 103 does not show

the differences of Focsaneanu or Arango to the claims at issue.

The Examiner thus, <u>does not adopt</u> the proposed rejection since the requester has not

followed the factual inquires as established in *Graham* v. *John Deere Co*, as shown above.

### *Issue 10*

#### *Requester Proposed Rejection (Not Adopted)*

16.    Claims 36, 68, 69, 71, 75, 77, 79, 82, 84, 87, 90, 92, 95, 98, 100, 118 and 123 are rejected

under 35 U.S.C. 103(a) as being unpatentable over Focsaneanu in view of Matsukawa and

further in view of Lucent Press Release.

The rejection was proposed by the third party requester in the request for reexamination,

and it is <u>not adopted</u> for the reasons set forth below.

The Requester on page 387 of the request states that to the extent that the various

anticipatory references cited above fail to disclose ay element of the various claims, the claims

are nonetheless obvious under Section 103 because all of the elements of the claimed inventions

were discloses in one or more of the other references.

In this case, the Requester relies upon Focsaneanu, Matsukawa '411 and Lucent Press

Release for providing the teachings to the claim. The Requester showed how each of the prior art

references disclose each of the limitations. On page 456 (in reference to claim 36), the Requester

Application/Control Number: 95/001,001                                          Page 107
Art Unit: 3992

states that *Focsaneanu '910* discloses the structure of the claimed apparatus (including any

means plus function elements in Figures 8 and 14), and also describes the dynamic change-over

method from a packet switched telephone call over the Internet to a line-switched telephone call

over the PSTN in response to a control signal from the user or a network management system.

*Matsukawa '411* clearly discloses the apparatus and method for a change-over from packet

switching of a communication to line-switching of a communication during the existing transfer,

in the middle of an ongoing communications connection. *The Lucent reference* also specifically

provides a motivation to improve on the switches of *Focsaneanu* and *Matsukawa '411* by

referencing that the change-over form Internet traffic to PSTN traffic be made automatically in

response to traffic and delays on the packet-switch Internet connection.

    The Examiner notes that under 35 U.S.C. 103(a) the factual inquiries set forth in *Graham*

**v.** *John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966), must be applied for establishing a

background for determining obviousness under 35 U.S.C. 103(a).

    The factual inquires are summarized as follows:

    1.    Determining the scope and contents of the prior art.
    2.    Ascertaining the differences between the prior art and the claims at issue.
    3.    Resolving the level of ordinary skill in the pertinent art.
    4.    Considering objective evidence present in the application indicating obviousness
          or nonobviousness.

    The Examiner agrees that the Requester has determined at least the scope and contents of

the prior art, however, the Requester has failed to ascertain the differences between the prior art

and the claims at issues. As can be seen, Focsaneanu and Matsukawa were both shown to

anticipate the claims as discussed in Issues 1 and 5, respectively. The claim chart under 103 does

not show the differences of Focsaneanu or Matsukawa to the claims at issue.

Application/Control Number: 95/001,001                                    Page 108
Art Unit: 3992

  The Examiner thus, <u>does not adopt</u> the proposed rejection since the requester has not

followed the factual inquires as established in *Graham* v. *John Deere Co*, as shown above.

## *Issue 11*

### *Requester Proposed Rejection (Not Adopted)*

17.  Claims 36, 37, 54-58, 64, 68, 69, 75, 71, 77, 79, 82, 84, 87, 90-92, 95, 98, 100, 118 and

123 are rejected under 35 U.S.C. 103(a) as being unpatentable over Focsaneanu in view of

Yoshida and further in view of Lucent Press Release.

  The rejection was proposed by the third party requester in the request for reexamination,

and it is <u>not adopted</u> for the reasons set forth below.

  The Requester on page 387 of the request states that to the extent that the various

anticipatory references cited above fail to disclose ay element of the various claims, the claims

are nonetheless obvious under Section 103 because all of the elements of the claimed inventions

were discloses in one or more of the other references.

  In this case, the Requester relies upon Focsaneanu, Yoshida and Lucent Press Release for

providing the teachings to the claim. The Requester showed how each of the prior art references

disclose each of the limitations. On page 472 (in reference to claim 36), the Requester states that

***Focsaneanu '910*** discloses the structure of the claimed apparatus (including any means plus

function elements in Figures 8 and 14), and also describes the dynamic change-over method

from a packet switched telephone call over the Internet to a line-switched telephone call over the

PSTN in response to a control signal from the user or a network management system. ***Yoshida***

***'516*** clearly discloses the apparatus and method for a change-over from packet switching of a

Application/Control Number: 95/001,001                                    Page 109
Art Unit: 3992

communication to line-switching of a communication during the existing transfer, in the middle

of an ongoing communications connection.

*The Lucent reference* also specifically provides a motivation to improve on the switches

of *Focsaneanu* and *Yoshida '516* by referencing that the change-over form Internet traffic to

PSTN traffic be made automatically in response to traffic and delays on the packet-switch

Internet connection.

The Examiner notes that under 35 U.S.C. 103(a) the factual inquiries set forth in *Graham*

v. *John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966), must be applied for establishing a

background for determining obviousness under 35 U.S.C. 103(a).

The factual inquires are summarized as follows:

1.    Determining the scope and contents of the prior art.
2.    Ascertaining the differences between the prior art and the claims at issue.
3.    Resolving the level of ordinary skill in the pertinent art.
4.    Considering objective evidence present in the application indicating obviousness
      or nonobviousness.

The Examiner agrees that the Requester has determined at least the scope and contents of

the prior art, however, the Requester has failed to ascertain the differences between the prior art

and the claims at issues. As can be seen, Focsaneanu and Yoshida were both shown to anticipate

the claims as discussed in Issues 1 and 6, respectively. The claim chart under 103 does not show

the differences of Focsaneanu or Yoshida to the claims at issue.

The Examiner thus, does not adopt the proposed rejection since the requester has not

followed the factual inquires as established in *Graham* v. *John Deere Co*, as shown above.

Application/Control Number: 95/001,001                              Page 110

Art Unit: 3992

### *Conclusion*

### *NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS*

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte* reexamination or an *inter partes* reexamination is designated as the correspondence address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 CFR 1.33(c), <u>automatically changed to that of the patent file</u> as of the effective date.**

This change is effective for any reexamination proceeding which is pending before the Office as of May 16, 2007, <u>including the present reexamination proceeding</u>, and to any reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

| | |
|---|---|
| Reexamination and Amendment Practice | (571) 272-7703 |
| Central Reexam Unit (CRU) | (571) 272-7705 |
| Reexamination Facsimile Transmission No. | (571) 273-9900 |

18.    In order to ensure full consideration of any amendments, affidavits or declarations, or

other documents as evidence of patentability, such documents must be submitted in response to

this Office action. Submissions after the next Office action, which is intended to be an Action

Closing Prosecution (ACP), will be governed by 37 CFR 1.116, which will be strictly enforced.

Application/Control Number: 95/001,001                                    Page 111
Art Unit: 3992

19.     Extensions of time under 37 CFR 1.136(a) will not be permitted in *inter partes*

reexamination proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant"

and not to the patent owner in a reexamination proceeding. Additionally, 35 U.S.C. 314(c)

requires that inter partes reexamination proceedings "will be conducted with special dispatch"

(37 CFR 1.937). Patent owner extensions of time in inter partes reexamination proceedings are

provided for in 37 CFR 1.956. Extensions of time are not available for third party requester

comments, because a comment period of 30 days from service of patent owner's response is set

by statute. 35 U.S.C. 314(b)(3).

20.     The Patent Owner is reminded of the continuing responsibility under 37 CFR 1.985(a) to

apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the

US Patent 7,145,902 throughout the course of this reexamination proceeding. The Third Party

Requester is also reminded of the ability to similarly apprise the Office of any such activity or

proceeding through the course of this reexamination proceeding. See MPEP § 2686 and

2686.04.

21.     All correspondence relating to this *inter partes* reexamination proceeding should be

directed as follows:

**By U.S. Postal Service Mail** to:

        Mail Stop *Inter Partes* Reexam
        ATTN: Central Reexamination Unit
        Commissioner for Patents
        P.O. Box 1450
        Alexandria, VA 22313-1450


By FAX to:    (571) 273-9900
              Central Reexamination Unit

Application/Control Number: 95/001,001                                   Page 112

Art Unit: 3992


By hand to:   Customer Service Window
              Randolph Building
              401 Dulany St.
              Alexandria, VA 22314

22.      Any inquiry concerning this communication or earlier communications from the

examiner, or as to the status of this proceeding, should be directed to the Central Reexamination

Unit at telephone number (571) 272-7705.

*Ovidio Escalante*

Ovidio Escalante
Primary Examiner
Central Reexamination Unit - Art Unit 3992
(571) 272-7537


Conferee:                                           Conferee:

| Substitute for form 1449/PTO | | | | **Complete if Known** | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY THIRD PARTY REQUESTER** | | | | Patent Number | 7,145,902 B2 |
| | | | | Issue Date | Dec. 5, 2006 |
| | | | | First Named Inventor | Sigram Schindler |
| | | | | Art Unit | N/A |
| | | | | Examiner Name | Not Yet Assigned |
| Sheet | 1 | of | 1 | Attorney Docket Number | CCO-001REX |

| | **U.S. PATENT DOCUMENTS** | | | | |
|---|---|---|---|---|---|
| **Examiner Initials\*** | **Exhibit No.¹** | **Document Number**<br>Number-Kind Code² (if known) | **Publication Date**<br>MM-DD-YYYY | **Name of Patentee or Applicant of Cited Document** | **Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear** |
| OE | 6 | US-5,610,910 | 03-11-1997 | Focsaneanu et al. | |
| OE | 7 | US-6,137,792 | 10-24-2000 | Jonas et al. | |
| OE | 9 | US-4,996,685 | 02-26-1991 | Farese et al. | |
| OE | 10 | US-5,598,411 | 01-28-1997 | Matsukawa | |
| OE | 29 | US-5,732,078 | 03-27-1998 | Arango | |
| OE | 31 | US-5,347,516 | 09-13-1994 | Yoshida | |

| | **FOREIGN PATENT DOCUMENTS** | | | | | |
|---|---|---|---|---|---|---|
| **Examiner Initials\*** | **Cite No.¹** | **Foreign Patent Document**<br>Country Code³-Number⁴-Kind Code⁵ (if known) | **Publication Date**<br>MM-DD-YYYY | **Name of Patentee or Applicant of Cited Document** | **Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear** | T⁶ |
| | | | | | | |

| | **NON PATENT LITERATURE DOCUMENTS** | | |
|---|---|---|---|
| **Examiner Initials\*** | **Exhibit No.¹** | Include name of the author ( in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T² |
| OE | 8 | Lucent Technologies Press Release dated 9/17/96, 2 pages. | |

| Examiner Signature | Oredio Ereslonte | Date Considered | 11/5/07 |
|---|---|---|---|

LIBC3100078

EXHIBIT 13

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/010,017 | 08/30/2007 | 6954453 | 8096.048.RXUS00 | 3139 |

28694        7590        11/23/2007

NOVAK DRUCE & QUIGG, LLP
1300 EYE STREET NW
SUITE 1000 WEST TOWER
WASHINGTON, DC  20005

| EXAMINER |
|---|
| |

| ART UNIT | PAPER NUMBER |
|---|---|
| | |

DATE MAILED: 11/23/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

GOODWIN PROCTER LLP
PATENT ADMINISTRATOR
EXCHANGE PLACE
BOSTON, MA 02109-2881

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/010,017*.

PATENT NO. *6954453*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. | Patent Under Reexamination | |
|---|---|---|---|
| | 90/010,017 | 6954453 | |
| | Examiner | Art Unit | |
| | Roland G. Foster | 3992 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>30 August 2007</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892,      b)☒ PTO/SB/08,      c)☒ Other: <u>see the attached Decision.</u>

1. ☒   The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐   The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181  ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

a) ☐  by Treasury check or,

b) ☐  by credit to Deposit Account No. _____,  or

c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

Roland  G. Foster
Primary Examiner
Art Unit: 3992

cc:Requester ( if third party requester )

U.S. Patent and Trademark Office
PTOL-471 (Rev. 08-06)                    Office Action in *Ex Parte* Reexamination                    Part of Paper No. 20071119

Application/Control Number: 90/010,017                                    Page 2
Art Unit: 3992

## DECISION GRANTING *EX PARTE* REEXAMINATION

### *Decision on Request for Reexamination*

A substantial new question of patentability affecting claims 34-36 and 38 of United

States Patent No. 6,954,453 B1 (hereafter the "Schindler" patent) is raised by the request for *ex*

*parte* reexamination, filed on August 30, 2007 (hereafter the "Request").


### *References Cited in the Request*

Requester asserts on page 1 of the Request that the following references, either alone or

in combination, raise a substantial new questions of patentability.


1.      U.S. Patent No. 5,610,910 (hereafter "Focsaneanu").

2.      U.S. Patent No. 6,069,890 (hereafter "White").

3.      U.S. Patent No. 6,137,792 (hereafter "Jonas").

4.      U.S. Patent No. 4,996,685 (hereafter "Farese").

5.      Lucent Technologies press Release (hereafter "Lucent").

Application/Control Number: 90/010,017                                    Page 3
Art Unit: 3992

### *Detailed Explanation of How the Cited Prior Art Is Applied*
### *To Every Claim for which Reexamination Is Requested*

Requester asserts on pages 39-42 of the Request the following issues.

Issue 1:     Whether a substantial new question of patentability is raised by
             Focsaneanu as applied to claims 34-36 and 38.

Issue 2:     Whether a substantial new question of patentability is raised by White as
             applied to claims 34, 36 and 38.

Issue 3:     Whether a substantial new question of patentability is raised by
             Focsaneanu in view of Jonas, and further in view of Lucent, as applied to
             claims 34-36 and 38.

Issue 4:     Whether a substantial new question of patentability is raised by
             Focsaneanu in view of Farese, and further in view of Lucent, as applied to
             claims 34-36 and 38.

Issue 5:     Whether a substantial new question of patentability is raised by White in
             view of Jonas, and further in view of Lucent, as applied to claims 34-36
             and 38.

Issue 6:     Whether a substantial new question of patentability is raised by White in
             view of Farese, and further in view of Lucent, as applied to claims 34-36
             and 38.

### *Summary*

It is agreed that the above references, when considered either alone or in combination,

raise a substantial new question of patentability regarding claims 34-36 and 38 of the Schindler

patent.

Application/Control Number: 90/010,017                                    Page 4
Art Unit: 3992

### *Prosecution History*

During the prosecution of 09/147,970 application (later issuing as the Schindler patent for

which reexamination is requested), the examiner gave the following reasons for allowing claims

68-70 and 72 (later renumbered and issuing as claims 34-36 and 38 respectively) in the Notice of

Allowance, mailed March 8, 2005:

> It is agreed that the arguments filed on 7/2/04 and 6/3/04 are persuasive. The present
> invention is directed to a system or a method for transferring data from a first end terminal to a
> second end terminal using a first switch and a second switch, selectively by line-switching or
> packet switching. Each independent claim identifies the uniquely distinct features as described
> on pages 23-26 of the Remarks filed on 6/3/04, and on pages 8-9 of the Remarks filed on 7/2/04.
> The closest prior art, Arango (US 5,732,078) and Jonas et al. (US 6,137,792) disclose
> conventional communication network systems, either singularly or in combination, fail to
> anticipate or render the claimed features obvious

In turn, pages 23-36 of the Remarks, filed June 3, 2004, state in part:

> Claim 68 sets forth a switching apparatus for routing a telephone call comprising non-packetized data from
> the first end terminal to a second end terminal. Neither Jonas nor Arango disclose the routing of a telephone
> call or of non-packetized data. They are limited to the transferring of data packets between computers.
> Accordingly, neither Jonas nor Arango disclose: means for line-switching transferring data received
> from the first end terminal as non-packetized data over the line-switching network to the second end
> terminal; and means for packet-switching transferring data received from the first end terminal as non-
> packetized data over the packet-switching network to the second end terminal.

Pages 8-9 of the Remarks, filed on July 2, 2004, state in part:

> Regarding the Jonas-switch not being located between a first end terminal and an access point of the
> packet-switching network but instead within the access point (POP) of the packet-switching network,
> reference is made to claims 1 and 10 of that patent indicating that the first and the second router (routers
> 20, 21) are permanently coupled to the packet-switching network via a packet-switched connection...
> Further, reference is made to page 11 of the Supplemental Response filed by the Applicants
> on June 2, 2004.

Application/Control Number: 90/010,017                                    Page 5
Art Unit: 3992

>Also in Arango, access point 220, 240 are access points of the packet-switching network. In Arango, the switches are located within access point 220, 240 and not between an end terminal and such access point. Further, the matter has been discussed in detail on page 15 of the Supplemental Response.
>
> .....
>
> The transmission of non-packetized data is alien to those Jonas and Arango.

### *The Schindler Patent Claims*

In view of the examiner's reasons for allowing claims 34-36 and 38 in the 09/147,970 application (later issuing as the Schindler patent) as discussed above, certain claim limitations in the Schindler patent should be considered especially relevant. Consider for example, the following limitations from independent claim 34, which is representative:

>**Switching apparatus for routing a telephone call comprising non-packetized data from a first end terminal located at a user's premises to a second end terminal located at another user's premises, selectively by line switching or packet switching, the switching apparatus comprising:**
>
>**means for establishing a connection through a line-switching network to the second end terminal;**
>
>**means for line-switching transferring data received from the first end terminal as non-packetized data over the line-switching network to the second end terminal;**
>
> ....
>
>**and means responsive to a control signal for transferring to a line-switching transfer or a packet-switching transfer to the second end terminal; said means responsive to a control signal changing-over to a line-switching data transfer or a packet-switching transfer during the existing transfer with the presence of said control signal.**

Therefore, all new prior art references applied in the Request that purport to teach the above limitations would not be <u>cumulative</u> to references previously considered by the examiner.

Application/Control Number: 90/010,017                                    Page 6
Art Unit: 3992

### *Issue 1: The Focsaneanu Patent*

In view of the Schindler claim limitations discussed above, a reasonable examiner would consider the Focsaneanu patent, either alone or in combination, important in making a decision as to the patentability of claims 34-36 and 38 in the Schindler patent.   For example, Focsaneanu teaches a switching apparatus (access module 208) for routing telephone calls (abstract) from a first end terminal located at a user's premises (see the customer premises equipment, or "CPE", such as a plain old telephone service, or "POTS", telephone, illustrated in Fig. 7) to a second end terminal located at another user's premises (see e.g., Figs. 9-11) selectively by line switching (PSTN 212) or packet switching (data network 214 and col. 11, ll. 1-6).  Furthermore, Focsaneanu teaches a means for establishing a connection through a line-switching network to a second terminal (e.g., Fig. 8, POTS & coder/decoder, or "CODEC" 242) and means for line switching data received from the first end terminal as non-packetized data over the line-switching network to the second terminal (transceiver 238).  See also col. 7, ll. 52-55 where "[v]oice signals from a telephone set and modem signals are sent over the local access" to the transceiver 238.  See also col. 13, ll. 41-47 and col. 14, ll. 12-20.  Finally, Focsaneanu teaches a means (processor 246), responsive to a determination made by an identifying circuit detecting a service request as a POTS service request or data service request (control signal), changing over to a packet-switching circuit or line-switching circuit (col. 7, l. 50 – col. 8, l. 44).   The control signal is also in the form of a request for change in service (col. 13, ll. 6-35).  The transfer occurs during "an established connection" (existing data transfer) (abstract and col. 13, ll. 5-34).

Application/Control Number: 90/010,017                                          Page 7
Art Unit: 3992

For additional reasons why the Focsaneanu patent raises a substantial new question of

patentability, see also pages 16-25, 45-51, 57-61 of the Request, which contains detailed claim

charts and is hereby incorporated by reference from the Request for their explanation of the

teachings provided in Focsaneanu that were not present in the prosecution of the application

which became the Schindler patent.


The Focsaneanu reference was cited, but not applied during prosecution of the

09/147,970 application (later issuing as the Schindler patent), and thus is being applied in a new

light for the first time in the Request.


Regarding applying a reference in a "new light," on November 2, 2002, Public Law 107-

273 was enacted. Title III, Subtitle A, Section 13105, part (a) of the Act revised the

reexamination statute by adding the following new last sentence to 35 U.S.C. 303(a) and 312(a):


> The existence of a substantial new question of patentability is not precluded by the fact
> that a patent or printed publication was previously cited by or to the Office or considered
> by the Office.


For any reexamination ordered on or after November 2, 2002, the effective date of the

statutory revision, reliance on previously cited/considered art, i.e., "old art," does not necessarily

preclude the existence of a substantial new question of patentability ("SNQ") that is based

exclusively on that old art. A SNQ may be based solely on old art where the old art is being

presented/viewed in a new light, or in a different way, as compared with its use in the earlier

Application/Control Number: 90/010,017                                    Page 8
Art Unit: 3992

concluded examination(s), in view of a material new argument or interpretation presented in the

request.  See MPEP § 2258.01.


There was also no final holding of invalidity by the Federal Courts regarding the

Schindler patent.


Thus, a reasonable examiner would view the teachings of the Focsaneanu patent, alone or

in combination, important in deciding to allow the claims being considered, thus raising a

substantial new question of patentability regarding claims 34-36 and 38 in the Schindler patent.


### Issue 2:  The White Patent

In view of the Schindler claim limitations discussed above, a reasonable examiner would

consider the White patent, either alone or in combination, important in making a decision as to

the patentability of claims 34, 36 and 38 in the Schindler patent.   For example, White teaches a

switching apparatus (Fig. 3, Internet module 83) for routing telephone calls from a first end

terminal located at a user's premises (Fig. 1, telephone 56 or PC 60) to a second end terminal

located at another user's premises (telephone 58 or PC 62) selectively by line switching (public

switching telephone network, or "PSTN" 57) or packet switching (Internet 84).  Furthermore,

White teaches a means for establishing a connection through a line-switching network to a

second terminal (PSTN 57) and means for line switching data received from the first end

terminal as non-packetized data over the line-switching network to the second terminal (central

offices 50 and 52).  Finally, White teaches a means (Fig. 2, Internet module 72 and CO 50,

Application/Control Number: 90/010,017                                    Page 9
Art Unit: 3992

responsive to, for example, a dialed prefix (a control signal), transferring the connection to the

packet-switching circuit or to the line-switching network (col. 5, ll. 57-63). The transfer occurs

during the existing data transfer, or after the call has been placed, such as when the user goes off-

hook and establishes a connection and then enters the dialed prefix, as discussed above.


     For additional reasons why the White patent raises a substantial new question of

patentability, see also pages 25-28, 51-57 and 60-62 of the Request, which contains detailed

claim charts and is hereby incorporated by reference from the Request for their explanation of

the teachings provided in White that were not present in the prosecution of the application which

became the Schindler patent.


     The White reference was not previously discussed by the examiner nor applied to claims

in the prior examination of the patent as discussed above.


     There was also no final holding of invalidity by the Federal Courts regarding the

Schindler patent.


     Thus, a reasonable examiner would view the teachings of the White patent, alone or in

combination, important in deciding to allow the claims being considered, thus raising a

substantial new question of patentability regarding claims 34, 36 and 38 in the Schindler patent.

Application/Control Number: 90/010,017                                      Page 10
Art Unit: 3992

### *Issue 3: Focsaneanu in view of Jonas, and further in view of Lucent*

In view of the Schindler claim limitations discussed above, a reasonable examiner would consider the Focsaneanu patent in combination with the cited secondary references important in making a decision as to the patentability of claim 34-36 and 38 in the Schindler patent. Specifically, Focsaneanu was previously determined, by itself, to have raised a substantial new question of patentability for the same claim, thus combination of Focsaneanu in view of Jonas, and further in view of Lucent, also raises a substantial new question of patentability for similar reasons.

As discussed above, a substantial new question is raised based on the sole teachings of Focsaneanu. Nonetheless, the Jonas patent was applied by the examiner of record during the prosecution of the 09/147,970 application (later issuing as the Schindler patent for which reexamination is requested) as an anticipatory reference to <u>different</u> claim 33 and 34. See pages 7 and 8 of the Office action, dated September 22, 2003, where claims 33 and 34 were directed to a patentably distinct, non-elected invention (see the restriction requirement of September 3, 2004 and the response on October 4, 2004). Thus, Jonas is being applied for the first time to the claims at issue in the instant reexamination proceeding. Furthermore, Jonas is being applied in a new light as a secondary reference. See Issue 1 above regarding a discussion of applying "old art" in a new light.

Application/Control Number: 90/010,017                                        Page 11
Art Unit: 3992

### *Issue 4: Focsaneanu in view of Farese, and further in view of Lucent*

In view of the Schindler claim limitations discussed above, a reasonable examiner would

consider the Focsaneanu patent in combination with the cited secondary references important in

making a decision as to the patentability of claim 34-36 and 38 in the Schindler patent.

Specifically, Focsaneanu was previously determined, by itself, to have raised a substantial new

question of patentability for the same claim, thus combination of Focsaneanu in view of Farese,

and further in view of Lucent, also raises a substantial new question of patentability for similar

reasons.

### *Issue 5:  White in view of Jonas, and further in view of Lucent*

In view of the Schindler claim limitations discussed above, a reasonable examiner would

consider the White patent in combination with the cited secondary references important in

making a decision as to the patentability of claim 34-36 and 38 in the Schindler patent.

Specifically, White was previously determined, by itself, to have raised a substantial new

question of patentability for most of the same claims, thus combination of White in view of

Jonas, and further in view of Lucent, also raises a substantial new question of patentability for

similar reasons.

Regarding claim 35, White was not determined, by itself, to have raised a substantial new

question of patentability, as discussed in Issue 2 above.  However, claim 35 depends from

independent claim 34, which White was determined, by itself, to have raised a substantial new

question of patentability.  See again Issue 2 above.  Thus, there is a substantial new question as

to whether dependent claim 35 is also patentable in view of White. Nonetheless, see pages 153-155 of the Request, which sets forth detailed reasons in a claim chart, and are hereby incorporated by reference from the Request, for their explanation of how the combination of White in view of Jonas, and further in view of Lucent, raises a substantial new question of patentability for dependent claim 35.

Jonas is being applied as a secondary reference, and thus in a new light, as discussed in Issue 3 above.

### Issue 6: White in view of Farese, and further in view of Lucent

In view of the Schindler claim limitations discussed above, a reasonable examiner would consider the White patent in combination with the cited secondary references important in making a decision as to the patentability of claim 34-36 and 38 in the Schindler patent. Specifically, White was previously determined, by itself, to have raised a substantial new question of patentability for most of the same claims, thus combination of White in view of Farese, and further in view of Lucent, also raises a substantial new question of patentability for similar reasons.

Regarding claim 35, White was not determined, by itself, to have raised a substantial new question of patentability, as discussed in Issue 2 above. However, claim 35 depends from independent claim 34, for which White was determined, by itself, to have raised a substantial new question of patentability. See again Issue 2 above. Thus, there is a substantial new question

Application/Control Number: 90/010,017                                            Page 13
Art Unit: 3992

as to whether dependent claim 35 is also patentable in view of White.  Nonetheless, see pages

155-159 of the Request, which sets forth detailed reasons in a claim chart, and are hereby

incorporated by reference from the Request, for their explanation of how the combination of

White in view of Farese, and further in view of Lucent, raises a substantial new question of

patentability for dependent claim 35.


### *Scope of Reexamination*

Since requester did not request reexamination of all the claims and did not assert the

existence of a substantial new question of patentability (SNQ) for all the claims (see 35 U.S.C. §

302); see also 37 CFR 1.510b and 1.515), such claims for which no SNQ was asserted will not

be reexamined. This matter was squarely addressed in <u>Sony Computer Entertainment America</u>

<u>Inc., et al. v. Jon W. Dudas</u>, Civil Action No. 1:05CV1447 (E.D.Va. May 22, 2006), Slip Copy,

2006 WL 1472462. The District Court upheld the Office's discretion to not reexamine claims in a

reexamination proceeding other than those claims for which reexamination had specifically been

requested. The Court stated:

> To be sure, a party may seek, and the PTO may grant,...review of each and every claim of a patent. Moreover,
> while the PTO in its discretion may review claims for which...review was not requested, nothing in the statute
> compels it to do so. To ensure that the PTO considers a claim for...review,...requires that the party seeking
> reexamination demonstrate why the PTO should reexamine each and every claim for which it seeks review.
> Here, it is undisputed that **Sony** did not seek review of every claim under the '213 and '333 patents.
> Accordingly, **Sony** cannot now claim that the PTO wrongly failed to reexamine claims for which **Sony** never
> requested review, and its argument that AIPA compels a contrary result is unpersuasive.

Application/Control Number: 90/010,017                                      Page 14
Art Unit: 3992

## Conclusion

### Service of Papers

After the filing of a request for reexamination by a third party requester, any document

filed by either the patent owner or the third party requester must be served on the other party (or

parties where two or more third party requester proceedings are merged) in the reexamination

proceeding in the manner provided in 37 CFR 1.248.  See 37 CFR 1.550(f).

### Waiver of Right to File Patent Owner Statement

In a reexamination proceeding, Patent Owner may waive the right under 37 C.F.R. 1.530

to file a Patent Owner Statement.  The document needs to contain a statement that Patent Owner

waives the right under 37 C.F.R. 1.530 to file a Patent Owner Statement and proof of service in

the manner provided by 37 C.F.R. 1.248, if the request for reexamination was made by a third

party requester, see 37 C.F.R 1.550(f).  The Patent Owner may consider using the following

statement in a document waiving the right to file a Patent Owner Statement:

### WAIVER OF RIGHT TO FILE PATENT OWNER STATEMENT

*Patent Owner waives the right under 37 C.F.R. 1.530 to file a Patent Owner Statement.*

### Extensions of Time

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings

because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a

reexamination proceeding.  Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination

Application/Control Number: 90/010,017                                           Page 15
Art Unit: 3992

proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)).  Extensions of time in

*ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

### *Amendment in Reexamination Proceedings*

Patent owner is notified that any proposed amendment to the specification and/or claims

in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally

presented pursuant to 37 CFR 1.52(a) and (b), and must contain any fees required by 37 CFR

1.20(c).

### *Submissions*

In order to insure full consideration of any amendments, affidavits or declarations or

other documents as evidence of patentability, such documents must be submitted in response to

the first Office action on the merits (which does not result in a close of prosecution).

Submissions after the second Office action on the merits, which is intended to be a final action,

will be governed by the requirements of 37 CFR 1.116, after final rejection and by 37 CFR 41.33

after appeal, which will be strictly enforced.

Application/Control Number: 90/010,017                                    Page 16
Art Unit: 3992

### *Notification of Concurrent Proceedings*

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a)

to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving

the Schindler patent throughout the course of this reexamination proceeding. The requester is

also reminded of the ability to similarly appraise the Office of any such activity or proceeding

throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

### *Notice Re Patent Owner's Correspondence Address*

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that the patent

owner's correspondence address for all communications in an *ex parte* reexamination or an *inter*

*partes* reexamination is designated as the correspondence address of the patent.

*Revisions and Technical Corrections Affecting Requirements for Ex Parte and
Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not having**

**the same correspondence address as that of the patent is, by way of this revision to 37 CFR**

**1.33(c), <u>automatically changed to that of the patent file</u> as of the effective date.**

This change is effective for any reexamination proceeding which is pending before the

Office as of May 16, 2007, <u>including the present reexamination proceeding</u>, and to any

reexamination proceeding which is filed after that date.

Application/Control Number: 90/010,017                                        Page 17
Art Unit: 3992

    Parties are to take this change into account when filing papers, and direct

communications accordingly.

    In the event the patent owner's correspondence address listed in the papers (record) for

the present proceeding is different from the correspondence address of the patent, it is strongly

encouraged that the patent owner affirmatively file a Notification of Change of Correspondence

Address in the reexamination proceeding and/or the patent (depending on which address patent

owner desires), to conform the address of the proceeding with that of the patent and to clarify the

record as to which address should be used for correspondence.

    Telephone Numbers for reexamination inquiries:

| | |
|---|---|
| Reexamination and Amendment Practice | (571) 272-7703 |
| Central Reexam Unit (CRU) | (571) 272-7705 |
| Reexamination Facsimile Transmission No. | (571) 273-9900 |

Application/Control Number: 90/010,017                                    Page 18
Art Unit: 3992

      **All** correspondence relating to this *ex parte* reexamination proceeding should be directed

as follows:


By **U.S. Postal Service Mail** to:

        Mail Stop *Ex Parte* Reexam
        ATTN:  Central Reexamination Unit
        Commissioner for Patents
        P.O. Box 1450
        Alexandria, VA  22313-1450


By FAX to:    (571) 273-9900
              Central Reexamination Unit


By hand to:    Customer Service Window
              Randolph Building
              401 Dulany St.
              Alexandria, VA  22314


      Any inquiry concerning this communication or earlier communications from the

Reexamination Legal Advisor or Examiner, or as to the status of this proceeding, should be

directed to the Central Reexamination Unit at telephone number (571) 272-7705.



Signed:                                                              Conferees:

Roland G. Foster
Central Reexamination Unit, Primary Examiner
Electrical Art Unit 3992
(571) 272-7538

| Substitute for form 1449/PTO | | | | Complete If Known | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY THIRD PARTY REQUESTER** | | | | Patent Number | 6,954,453 B1 |
| | | | | Issue Date | Oct. 11, 2005 |
| | | | | First Named Inventor | Sigram Schindler |
| | | | | Art Unit | N/A |
| | | | | Examiner Name | Not Yet Assigned |
| Sheet | 1 | of | 1 | Attorney Docket Number | CCO-002REX |

### U.S. PATENT DOCUMENTS

| Examiner Initials* | Exhibit No.¹ | Document Number Number-Kind Code² (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| R.L.F. | 2 | US-5,610,910 | 03-11-1997 | Focsaneanu et al. | |
| | 3 | US-6,069,890 | 01-30-2000 | White et al. | |
| | 4 | US-6,137,792 | 10-24-2000 | Jonas et al. | |
| ↓ | 5 | US-4,996,685 | 02-26-1991 | Farese et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.¹ | Foreign Patent Document Country Code³-Number⁴-Kind Code⁵ (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T⁶ |
|---|---|---|---|---|---|---|
| | | | | | | |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Exhibit No.¹ | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T⁷ |
|---|---|---|---|
| R.L.F. | 6 | Lucent Technologies Press Release dated 9/17/96, 2 pages. | |

| Examiner Signature | | Date Considered | 11/19/07 |
|---|---|---|---|
| LIBA1825055 | | | |