IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TELES AG INFORMATIONSTECHNOLOGIEN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 06-197-SLR-LPS |
| | : | |
| QUINTUM TECHNOLOGIES, LLC, | : | |
| | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| TELES AG INFORMATIONSTECHNOLOGIEN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 09-72-SLR-LPS |
| | : | |
| CISCO SYSTEMS, INC., | : | |
| | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| CISCO SYSTEMS, INC. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 09-232-SLR-LPS |
| | : | |
| TELES AG INFORMATIONSTECHNOLOGIEN, | : | |
| | : | |
| Defendant. | : | |

## ORDER REGARDING DISCOVERY

Each of these three related patent infringement cases have been bifurcated, requiring separate trials for (i) liability and (ii) damages and willfulness. Only a limited amount of damages discovery will be permitted until after liability is determined. Paragraph 2.a of the Scheduling Orders entered in each of these cases provides: "Discovery on damages, except that required by a magistrate judge to support the ADR process, will be stayed. Trial on willfulness and damages shall be stayed."[1]

Both of the defendants – Cisco Systems, Inc. ("Cisco") and Quintum Technologies, LLC ("Quintum" and, together with Cisco, "Defendants") – have asserted as an affirmative defense to infringement that the patents-in-suit are invalid due to obviousness. *See* 06-197 D.I. 31; 09-72 D.I. 21. In response, the plaintiff, Teles AG Informationstechnologien ("Teles"), seeks discovery from Defendants regarding commercial success of the patented invention, which is a "secondary consideration" of non-obviousness. *See Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1996).

Judge Robinson held a teleconference with the parties on September 29, 2009 to consider (among other things) their dispute as to the proper scope of commercial success discovery in a case in which damages discovery has been essentially stayed. *See* Transcript of September 29, 2009 Hearing, 06-197 D.I. 146 ("Sept. Tr."). Judge Robinson directed the parties to meet and confer and thereafter submit a proposal or proposals as to what discovery Defendants should provide to Teles with respect to commercial success. Sept. Tr. at 22.

---

[1] The Scheduling Orders, all of which were entered on May 13, 2009, can be found at: *Teles AG Informationstechnologien v. Quintum*, 06-197-SLR-LPS (hereinafter "06-197") D.I. 113; *Teles AG Infromationstechnologien v. Cisco Systems, Inc.*, 09-72-SLR-LPS (hereinafter "09-72") D.I. 20; and *Cisco Systems, Inc. v. Teles AG Informationstechnologien*, 09-232-SLR-LPS (hereinafter "09-232") D.I. 106.

On October 13, 2009, the parties reported that they had been able to resolve some issues but that some disagreement remained as to the extent of Defendants' discovery obligations with respect to commercial success. (06-197 D.I. 141; 09-72 D.I. 92, D.I. 94; 09-232 D.I. 176, D.I. 178) On October 20, 2009, Judge Robinson referred this case to me for purposes of managing discovery, including resolution of the pending dispute regarding commercial success evidence. (06-197 D.I. 145; 09-072 D.I. 98; 09-232 D.I. 182) Having reviewed the parties' submissions, as well as the transcript of the September 29, 2009 hearing, I have concluded that, for reasons described below, neither side's proposal is entirely satisfactory.

Judge Robinson has already indicated, through entry of the Scheduling Orders and her comments during the September 29 teleconference, that Teles is entitled to some damages-related discovery, even though the damages issue has been bifurcated from liability and damages discovery has largely been stayed. As reflected in the Scheduling Orders, Teles may obtain damages discovery as "required by a magistrate judge to support the ADR process." *See also* Sept. Tr. at 21 (Judge Robinson stating, "I do believe that some fundamental discovery has . . . to be exchanged, number one, for settlement purposes.").[2] A second reason "there does have to be an exchange of information" is to enable all parties to formulate an informed "notion as to how valuable a patent is." Sept. Tr. at 21.

---

[2]*See also generally F & G Scrolling Mouse, L.L.C. v. IBM Corp.*, 190 F.R.D. 385, 392 (M.D.N.C. 1999) ("[D]iscovery on damages educates each party on the other's view of the damages. Damage discovery assists each party in evaluating essential elements of the matters in issue and in assessing the risks associated with an adverse decision and, consequently, can facilitate settlement discussions."); *Johns Hopkins University v. Cellpro*, 160 F.R.D. 30, 35 (D. Del. 1995) ("Discovery on damages not only assists the parties in preparing for trial, it also educates each party on the other's view of the damages, which, in turn, assists each party in evaluating essential elements of the matters in issue and in assessing the risks associated with an adverse decision in the action. Consequently, it can facilitate settlement discussions.").

A third basis on which Teles may obtain discovery that may happen to relate to damages is with respect to its effort to prove the secondary consideration of non-obviousness of commercial success, in order to rebut a showing of obviousness by Defendants. *See* Sept. Tr. at 21. While Teles is entitled to some discovery regarding commercial success, Judge Robinson has stated that it should not be "the full-blown discovery" that would otherwise occur in a patent infringement case in which damages discovery has not been stayed. Sept. Tr. at 22. Then-Senior Judge Latchum expressed the same view in *Paine Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 587 F. Supp. 1112, 1116 (D. Del. 1984), writing:

> [T]he evidence introduced to show "commercial success" will be less extensive and of a different character from that to prove damages. The question of commercial success is not ordinarily determined by a detailed analysis of exhaustive and intricate financial data, such as is required for proof of damages, but rather by whether the claimed invention is, broadly speaking, an accepted product and a big seller.

Other courts have agreed that "detailed financial information is not necessary to prove commercial success." *Lemelson v. Apple Computer, Inc.*, 28 U.S.P.Q.2d 1412, 1423 (D. Nev. June 4, 1993); *see also Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*, 180 F.R.D. 254, 259 (D.N.J. 1997) (quoting *Merrill Lynch* and stating, "[s]ince defendant has agreed to produce its sales information to plaintiff, despite a stay of damages discovery, plaintiff will be equipped to evaluate this case for settlement even at the liability phase, as well as demonstrate the commercial success of this invention.").

With this background, I turn to the specific categories of commercial success evidence on which Teles seeks discovery.

### *Invoice level detail on the accused products from 1996 to present*

Teles seeks production of documents and responses to interrogatories establishing the revenues Defendants' obtained from sales of any products using or sold with the accused feature, "PSTN Fallback."[3] With respect to document discovery, Teles seeks invoice level detail "that is captured in the normal course of business, in sales and financial databases, each time a sale of any product or service is made to a customer." (09-72 D.I. 92 at 4)[4] Teles asserts that "[s]uch information is not burdensome for either Cisco or Quintum to provide" and that invoice-level detail is necessary to allow Teles "to verify that the numbers provided by Cisco and Quintum are accurate." (*Id.*)

Defendants "agree[] that production of information regarding . . . market share, internal marketing plans, product development plans and/or sales plans, and customer surveys could be relevant to the issue of commercial success if they relate specifically to the identified accused functionality in this case (sometimes referred to as 'PSTN Fallback') and provide or disprove a nexus between that functionality and the actual sales of the accused products that contain that functionality (i.e., certain Cisco routers)." (D.I. 94 at 2)

I have concluded that the discovery Teles seeks is too broad for a case in which the issue of damages has been bifurcated and damages discovery has been largely stayed. The type and amount of evidence that is required to establish the secondary consideration of non-obviousness

---

[3] According to the complaint, "Cisco manufactures and sells products and services (or components thereof) to facilitate transmission of data, such as Voice over Internet Protocol ('VoIP') data, over mobile packet switching networks or line switching networks." (09-72 D.I. 1 ¶ 10)

[4] Hereinafter, all D.I. references are to docket entries in case number 09-72.

of commercial success is simply not the same, nor as extensive, as that which is necessary to prove damages. I agree with Defendants that it is sufficient, in the context of this bifurcated case, to provide Teles with aggregate sales data, for the accused products for which Teles has provided infringement contentions, for a more limited period than Teles seeks.[5]

General sales information, rather than specific invoice-level detail, is sufficient. I am persuaded by Defendants' contention that "[f]or a company like Cisco, with thousands of products and complex accounting systems, it is burdensome to produce any financial data, let alone the detailed invoice level data that Teles requests." (D.I. 94 at 4) The burden that would be imposed on Defendants in providing invoice-level data is simply not justified in the circumstances of this case.[6]

I further agree with Defendants that "any financial data required to be produced for commercial success . . . should be limited to the products Teles has actually accused as part of its infringement contentions (i.e., the identified Cisco routers, as configured in a certain way and as equipped with certain software as identified in Teles' infringement contentions)." (*Id.*) This is appropriate because the point of the discovery at issue is to enable Teles to prove that its invention was not obvious; the task is <u>not</u> to measure to the last dollar the amount of infringing products that have been sold. The causal link between a "convoyed sale" and the commercial

---

[5]To the extent Teles practices the patents-in-suit, the success of its own products – a matter with respect to which it does not need any discovery – may also demonstrate the commercial success component of non-obviousness. *See Paine, Webber*, 587 F. Supp. at 1116 ("[W]hen commercial success is an issue and the patent owner practices the patent, such success is most easily demonstrated by the activities of the patentee.").

[6]Nor is there any basis at this point for Teles to doubt the veracity of the aggregate sales data Defendants will provide.

success of the accused functionality is too strained to justify the requested discovery in this bifurcated case.

The time frame covered by Teles' request is also overly broad. It appears undisputed that the Defendants introduced their PSTN Fallback feature in approximately 1999-2000 and that it is just one feature among thousands found on Defendants' accused products. (D.I. 94 at 3) While I agree with Teles that "[i]nformation about Cisco's total sales before and after the introduction of the accused products embodying PSTN Fallback would enable the Court to better understand the nexus of PSTN fallback to the commercial success of Cisco's products" (D.I. 92 at 5), this does not justify discovery covering the fourteen-year period (1996-2009) Teles seeks. Providing the requested discovery for the period beginning the year before the accused functionality was introduced (1998) through the first two years it was on the market (2001-02) should enable Teles to demonstrate "whether the claimed invention is, broadly speaking, an accepted product and a big seller."[7] Therefore, Defendants' obligation to provide commercial success discovery is limited to the period 1998-2002.

### *Comparison of sales of the accused products containing the patented invention vs. previous models*

Teles requests that it be provided the detailed discovery described above for a period well preceding the 1999-2000 introduction of the accused feature by the Defendants and extending through the present (i.e., 1996-2009). I have already explained why the Defendants' discovery obligation with respect to commercial success evidence will be limited to the period 1998-2002.

---

[7]There has been no suggestion that the patented invention was initially unsuccessful in the marketplace and only later proved to be a commercial success.

***Engineering design documents discussing implementation of the
patented invention and why PSTN fallback was needed, including failed
attempts at other designs to address the inventive steps in the patents-in-suit***

Teles argues that these documents "will show how Cisco values PSTN fallback." (D.I. 92 at 5) I agree with Teles that some level of inquiry into why Defendants provided the PSTN Fallback feature in some products but not in others should be permitted, as this is relevant to commercial success. Defendants insist that they have, in fact, "produced engineering design documents" and have "not withheld any such documents on the basis of the bifurcation order." (D.I. 94 at 6) It appears, thus, that this category of documents is not in dispute at this time.

***Internal and external information regarding Cisco's market share***

In addition to sales data, market share data is also relevant to commercial success. *See Nursery Supplies Inc. v. Lerio Corp.*, 45 U.S.P.Q.2d 1332, 1335 (M.D. Pa. 1997). But the relevance of market share data is dependent on a showing or at least a reasonable inference that it reflects the market's evaluation, at some meaningful level, of whether the accused functionality is valuable. This means, at a minimum, that such discovery should be limited to around the time the accused functionality was introduced. Accordingly, Defendants' must produce internal and external evidence regarding market share with respect to the accused products for which Teles has provided infringement contentions for the period 1998-2002.[8]

---

[8]Cisco insists it is "expressly prohibited" from disclosing certain market reports it purchased from third-parties, such as Gartner, Inc., as such disclosure "would violate Cisco's license." (D.I. 94 at 3) The Court is not in a position to assess the merits of this contention at this time. Cisco has not explained why the protective orders entered in this case do not provide adequate protection for Gartner. Nor has Cisco stated whether it has made any efforts to notify Gartner of Cisco's discovery obligations or whether Gartner wishes to be heard on this issue. Cisco is hereby directed to notify the Court and all parties no later than ten days following the date of this Order of its efforts to learn Gartner's position and whether Gartner wishes to be heard with respect to this dispute. In the absence of such a filing, Cisco will be required to produce the

*Internal marketing plans, product development plans, and/or sales plans*

Teles explains that marketing materials "communicate the beneficial aspects of the innovation to the purchasing public," which "show[s] how Cisco and Quintum value the PSTN fallback feature." (D.I. 92 at 6) I agree. Therefore, Defendants must product the requested marketing materials for the period 1998-2001.

*Customer surveys prepared during the normal*
*course of business showing comments and feedback*

Teles seeks production of Defendants' customer surveys showing comments and feedback. Defendants represent that they are not aware of the existence of any customer surveys. Thus, there is nothing responsive for Defendants to produce.

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

Defendants shall produce the discovery (documents and responses to interrogatories) described above within twenty (20) days of the date of this Order.

Dated: October 30, 2009

_____
Honorable Leonard P. Stark
UNITED STATES MAGISTRATE JUDGE

---

responsive Gartner documents.